# EXHIBIT A

# EXHIBIT A

**IN THE CIRCUIT COURT OF THE NINETEENTH JUDICIAL CIRCUIT**
**LAKE COUNTY, ILLINOIS**

DONALD ASTAR
)
)
)
)
)
)
)
Plaintiff(s) )
vs. )
)
NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY, )
a Wisconsin Mutual Insurance Company )
)
)
)
)
)
Defendant(s) )

**18L453**

Gen No: _____

PLEASE SERVE:
Northwestern Mutual Life Insurance Company
c/o   Gregory Oberland
720 E. Wisconsin Ave.
Milwaukee, WI 53202

**SUMMONS**

To each defendant:

You are summoned and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, in the office of the Clerk of this Court, within 30 days after service of this summons, not counting the day of service. If you fail to do so, a judgment by default may be entered against you for the relief asked in the complaint.

To the officer:

This summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this summons shall be returned so indorsed.

This summons may not be served later than 30 days after its date.

**6/12/2018**

WITNESS _____

*Erin Cartwright Weinstein*
ERIN CARTWRIGHT WEINSTEIN, Clerk of Court  KC

Prepared by:
Name:  C. Jeffrey Thut, Nisen, Perillo & Thut _____   Pro Se ☐

Address:  25 N. County Street

City: Waukegan _____ State:  IL

Phone: 847-244-0111 _____ Zip Code:  60085

ARDC #:  6188219

Fax:  847-244-0513

E-mail address:  jthut@npt-law.com

(If service by facsimile transmission will be accepted, the telephone number of the plaintiff or plaintiff's attorney's facsimile machine is additionally required.)

**NOTICE**
PURSUANT TO LCR - 2-2.14
THIS CASE IS HEREBY SET FOR AN INITIAL CASE MANAGEMENT CONFERENCE
IN COURTROOM  C407
9/6/2018 _____ AT _____ 9:00 AM _____ A.M./P.M.
FAILURE TO APPEAR MAY RESULT IN THE CASE BEING DISMISSED OR
AN ORDER OF DEFAULT BEING ENTERED.

Date of Service _____, 20_____ (to be inserted by officer on copy left with defendant or other person).

171-138 Rev 12/17

FILED
6/12/2018 11:55 AM
ERIN CARTWRIGHT WEINSTEIN
Clerk of the Circuit Court
Lake County, Illinois

Hoffman

IN THE CIRCUIT COURT OF THE NINETEENTH JUDICIAL CIRCUIT
LAKE COUNTY, ILLINOIS, LAW DIVISION

| | | |
|---|---|---|
| DONALD ASTAR | ) | |
| | ) | |
| Plaintiff, | ) | No.   18L453 |
| vs. | ) | |
| | ) | |
| NORTHWESTERN MUTUAL | ) | |
| LIFE INSURANCE COMPANY, a | ) | |
| Wisconsin Mutual Insurance Company | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

NOW COMES Plaintiff, DONALD ASTAR, by and through his attorneys, Noonan, Perillo & Thut and complaining of Defendant, NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY, a Wisconsin Mutual Insurance Company, hereby states as follows:

1. At all times material hereto, Plaintiff, DONALD ASTAR was a resident of Antioch, Lake County, Illinois.

2. At all times material hereto, Defendant, NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY (hereinafter referred to as "NORTHWESTERN MUTUAL") was a mutual insurance company organized under the laws of the State of Wisconsin and doing business in Lake County, Illinois.

3. On or about August 1, 1981, Plaintiff, DONALD ASTAR purchased a disability income policy from Defendant, NORTHWESTERN MUTUAL known as policy number D227462. (A copy of said policy is attached hereto marked Exhibit 1 and by this reference made a part hereof.)

4. On or about October 2, 1985, Plaintiff, DONALD ASTAR purchased a disability income policy from Defendant, NORTHWESTERN MUTUAL known as policy number D429516. (A copy of said policy is attached hereto marked Exhibit 2 and by this reference made a part hereof.)

NOTICE
PURSUANT TO LCR - 2-2.14
THIS CASE IS HEREBY SET FOR AN INITIAL CASE MANAGEMENT CONFERENCE
09/06/2018   IN COURTROOM   C407   ON
AT   9:00AM   A.M./P.M.
FAILURE TO APPEAR MAY RESULT IN THE CASE BEING DISMISSED OR
AN ORDER OF DEFAULT BEING ENTERED.

5. On or about March 28, 1990, Plaintiff, DONALD ASTAR purchased a disability income policy from Defendant, NORTHWESTERN MUTUAL known as policy number D741687. (A copy of said policy is attached hereto marked Exhibit 3 and by this reference made a part hereof.)

6. On or about August 28, 1997, Plaintiff, DONALD ASTAR purchased a disability income policy from Defendant, NORTHWESTERN MUTUAL known as policy number D1255314. (A copy of said policy is attached hereto marked Exhibit 4 and by this reference made a part hereof.)

7. Each of the disability income policies attached hereto as Exhibits 1-4 contain the following language:

### SECTION 3. CONDITIONAL RIGHT TO RENEW TO AGE 75

"On each policy anniversary between the Insured's 65th and 75th birthdays, the Owner may renew this policy for one year if the Insured is actively and gainfully employed on a full-time basis. To renew this policy, the Owner must send a written request to the Company each year. This right to renew ends on the first anniversary on which the Insured is not so employed or on which the Owner chooses not to renew the policy.

For a policy that is renewed:
- benefits are payable only for total disability; and
- the premium for each year of renewal will be based on the Insured's age and the Company's rates in use at the time of renewal."

8. August 17, 2017, Plaintiff, DONALD ASTAR turned 65 years of age.

9. On August 29, 2017, Plaintiff, DONALD ASTAR exercised his conditional right to renew the disability income policies attached hereto as Exhibits 1-4. (A copy of said letter is attached hereto marked Exhibit 5 and by this reference made a part hereof.)

10. Plaintiff, DONALD ASTAR was receiving partial disability, however, he was actively and gainfully employed on a full-time basis with DEA, Inc. at the time he requested renewal of the disability income policies attached hereto as Exhibits 1-4.

11.    Defendant, NORTHWESTERN MUTUAL, breached the disability insurance policies attached hereto as Exhibits 1-4 in that it refused to conditionally renew these policies as provided by Section 3 "Conditional Right to Renew to Age 75".

12.    As a direct and proximate result of the breach of disability insurance policies as aforesaid, Plaintiff, DONALD ASTAR has been damaged in the amount of six hundred thousand one hundred twenty dollars ($625,122.00) through August 17, 2027.

13.    As a direct and proximate of the breach of the disability insurance policies attached hereto as Exhibits 1-4, Plaintiff, DONALD ASTAR has been damaged in an amount in excess of the minimal jurisdictional limits of the Law Division of the Nineteenth Judicial Circuit Lake County, Illinois.

WHEREFORE, Plaintiff, DONALD ASTAR, respectfully requests that this Honorable Court enter judgement in favor of Plaintiff and against Defendant, NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY in the amount of $625,122.00 together with a reasonable amount of attorney's fees and the costs of bringing this action.

## COUNT II
## VEXATIOUS DENIAL OF CLAIM

1-13.    Plaintiff restates and realleges Paragraphs 1 through 13 as and for Paragraphs 1 through 13 of Count II as though fully stated forth herein.

14.    At all times material hereto, there was in full force and effect 215 ILCS 5/155 which states as follows:

Sec. 155. Attorney fees.

(1)    In any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable, the court may allow as part of the taxable costs in the action reasonable attorney fees, other costs, plus an amount not to exceed any one of the following amounts:

3

(a) 60% of the amount which the court or jury finds such party is entitled to recover against the company, exclusive of all costs;

(b) $60,000;

(c) the excess of the amount which the court or jury finds such party is entitled to recover, exclusive of costs, over the amount, if any, which the company offered to pay in settlement of the claim prior to the action.

(2) Where there are several policies insuring the same insured against the same loss whether issued by the same or by different companies, the court may fix the amount of the allowance so that the total attorney fees on account of one loss shall not be increased by reason of the fact that the insured brings separate suits on such policies.

15. The failure of Defendant, NORTHWESTERN MUTUAL in refusing to renew the disability policies attached hereto as Exhibits 1-4 is unreasonable and vexatious.

WHEREFORE, Plaintiff, DONALD ASTAR respectfully request this Honorable Court enter judgment in favor of Plaintiff and against Defendant, NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY in the amount of $625,122.00 be together with punitive damages and attorney's fees pursuant to 155 ILCS 5/155.

Respectfully submitted,

C. JEFFREY THUT
Attorney for Plaintiff

C. JEFFREY THUT
Atty No. 6188219
Noonan, Perillo & Thut
25 N. County Street
Waukegan, IL 60085
P: (847) 244-0111
jthut@npt-law.com

# THE NORTHWESTERN MUTUAL LIFE
# INSURANCE COMPANY·MILWAUKEE



It is recommended that you . . .

**read your policy.**

**notify your NML agent or the Company at 720 E. Wisconsin Avenue, Milwaukee, Wis. 53202, of an address change.**

**call your NML agent for information — particularly on a suggestion to terminate or exchange this policy for another policy or plan.**

### Election of Trustees

The members of The Northwestern Mutual Life Insurance Company are its policyholders of insurance policies and deferred annuity contracts. The members exercise control through a Board of Trustees. Elections to the Board are held each year at the annual meeting of members. Members are entitled to vote in person or by proxy.

### Disability Income Policy

### Step Rate

### Eligible for Annual Dividends

Non-Cancellable and
Guaranteed Renewable to Age 65

Conditionally Renewable to Age 75

LLD2

Countersigned by _____

Licensed Resident Agent

DAVID E. KRUEGER, Special Agent
125 South Wilke Road, Suite 103
Arlington Heights, Illinois 60005
Office: 312-398-6030
Res: 312-698-3699
NORTHWESTERN MUTUAL LIFE · MILWAUKEE



HARRY P. HOOPIS, C.L.U., General Agent
1578 Sherman
Evanston, Ill. 60204
Office: 312-866-5400

Exhibit # 1

This policy is a legal contract between the Owner and The Northwestern Mutual Life Insurance Company.
Read your policy carefully.

## Guide To Policy Provisions

|  |  | Page |
|---|---|---|
| **SCHEDULE OF BENEFITS AND PREMIUMS** |  | 3 |
| **SECTION 1.** | **BENEFITS** <br> Description of general terms. Full Benefit payable for total disability. Proportionate Benefit payable for partial disability. How the Proportionate Benefit is determined. Lifetime benefit payable for Presumptive Disability. Premium Waiver Benefit. | 5 |
| **SECTION 2.** | **EXCLUSIONS** | 6 |
| **SECTION 3.** | **CONDITIONAL RIGHT TO RENEW TO AGE 75** | 7 |
| **SECTION 4.** | **CLAIMS** <br> How to notify the Company of a claim. Proof of disability. How the benefits will be paid. Physical examination may be required. Limits on when you may start a legal action. | 7 |
| **SECTION 5.** | **OWNERSHIP** <br> Rights of the Owner. Assignment as collateral. | 7 |
| **SECTION 6.** | **PREMIUMS AND REINSTATEMENT** <br> Payment of premiums. Grace Period of 31 days to pay premiums. Refund of unused premium at death. How to reinstate the policy. | 7 |
| **SECTION 7.** | **THE CONTRACT** <br> Changes. Incontestability. Misstatement of age. Dividends. Definition of dates. | 8 |
| **ADDITIONAL BENEFITS** (if any) |  | Following Page 8 |
| **APPLICATION** |  | Attached to the Policy |

### ENDORSEMENTS
To be made only by the Company at the Home Office

LL D 2



The Northwestern Mutual Life Insurance Company agrees to pay the benefits provided in this policy, subject to its terms and conditions. Signed at Milwaukee, Wisconsin on the Date of Issue.

This disability income policy is guaranteed renewable upon timely payment of premiums to the first policy anniversary after the Insured's 65th birthday and, during that period, can neither be cancelled nor have its terms or premiums changed by the Company.

*CHAIRMAN AND C.E.O*

*SECRETARY*

**Disability Income Policy**

**Step Rate**

**Eligible for Annual Dividends**

Non-Cancellable and
Guaranteed Renewable to Age 65

Conditionally Renewable to Age 75

**Right To Examine Policy**—Please examine this policy carefully. The Owner may return the policy for any reason within ten days after receiving it. If returned, the policy will be considered void from the beginning and any premium paid will be refunded.

DAVID E. KRUEGER, Special Agent
125 South Wilke Road, Suite 103
Arlington Heights, Illinois 60005
Office: 312-398-6030
Res: 312-698-3699
NORTHWESTERN MUTUAL LIFE • MILWAUKEE

LL D 2

# THE NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY·MILWAUKEE



# SECTION 1. BENEFITS

## 1.1 GENERAL TERMS

This policy provides benefits when the Insured is totally or partially disabled. Section 1 describes the benefits of the policy and tells when they are payable. It also gives the meaning of several important terms that are used in the policy.

**Disabilities Covered By The Policy.** Benefits are provided for the Insured's total or partial disability only if:

- the Insured becomes disabled while this policy is in force;
- the Insured is under the care of a licensed physician other than himself; and
- the disability results from an accident that occurs, or from a sickness that first appears, while this policy is in force . A sickness is considered to have appeared if it would have caused a prudent person to seek medical attention.

**Benefit Terms.** The Schedule of Benefits and Premiums (page 3) has a number of important terms that are used in this policy. These terms are:

**Full Benefit.** This is the maximum amount of monthly income payable under the policy.

**Beginning Date.** This is the date on which benefits begin to accrue after the Insured becomes disabled. Benefits are not payable for the time the Insured is disabled before the Beginning Date.

**Maximum Benefit Period.** This is the longest period of time that benefits are payable for disability. After the Beginning Date, benefits continue to be payable for as long as the Insured remains disabled or until the end of the Maximum Benefit Period, if sooner. In determining the maximum length of time for which benefits are payable, periods of total and partial disability are added together.

**Initial Period.** This is a period of time that starts on the Beginning Date and continues, while the Insured is disabled, for the length of time shown on page 3. The definition of total disability changes after the Initial Period.

**Occupation.** The words "his occupation" mean the occupation of the Insured at the time he becomes disabled. If the Insured is regularly engaged in more than one occupation, the words "his occupation" include all of the occupations of the Insured at the time he becomes disabled.

## 1.2 FULL BENEFIT FOR TOTAL DISABILITY

The Full Benefit is payable for each month of total disability between the Beginning Date and the end of the Maximum Benefit Period. During the Initial Period, the Insured is totally disabled when he is unable to perform the principal duties of his occupation. After the Initial Period, the Insured is totally disabled when he is unable to perform the principal duties of his occupation and is not gainfully employed in any occupation.

**Benefit Amount For Partial Month.** When a total disability lasts for a part of a month, 1/30th of the Full Benefit will be payable for each day of total disability.

## 1.3 PROPORTIONATE BENEFIT FOR PARTIAL DISABILITY

The Proportionate Benefit is payable for each month of partial disability between the Beginning Date and the end of the Maximum Benefit Period. The Insured is partially disabled when:

- he is unable to perform one or more of the principal duties of his occupation; or
- he is unable to spend as much time at his occupation as he did before the disability started.

After the Proportionate Benefit has been payable for six months, there is a 25% Loss of Earned Income requirement, as explained in Section 1.4.

If the Insured qualifies for both the Full and Proportionate Benefit, the Full Benefit only will be paid.

**Benefit Amount For Partial Month.** When a partial disability lasts for a part of a month, 1/30th of the Proportionate Benefit will be payable for each day of partial disability.

## 1.4 HOW THE PROPORTIONATE BENEFIT IS DETERMINED

The Proportionate Benefit is intended to compensate for a Loss of Earned Income to the extent it is caused by the Insured's disability. The Benefit is determined by comparing (a) the Insured's Earned Income while he is disabled with (b) his Earned Income before the disability started. The amount of the Benefit each month is the Full Benefit multiplied by the Loss of Earned Income and divided by the Earned Income Before Disability. The maximum amount payable is 100% of the Full Benefit.

**Choice of Benefit Amount for First Six Months.** For each of the first six months in which a Proportionate Benefit is payable, the Owner may choose either:

- to receive 50% of the Full Benefit; or
- to have the amount of the Benefit based on the Insured's Loss of Earned Income.

The Owner may alternate between these two choices as to each of the six months. However, the Owner may not change his choice after the Benefit is paid for that month.

**25% Loss of Earned Income Required After Six Months.** After the first six months in which a Proportionate Benefit is payable, the amount of Benefit is based only on the Loss of Earned Income. A Benefit is not payable unless the Loss of Earned Income is at least 25% of the Insured's Earned Income Before Disability.

**The Meaning of "Loss of Earned Income".** This is:

- the Insured's Earned Income Before Disability; less
- his Earned Income for the month for which the Benefit is claimed. Earned Income is credited to the period in which it is earned, not the period in which income is actually received.

**The Meaning of "Earned Income".** Earned Income is the sum of salary, wages, commissions, fees, bonuses, or other compensation earned by the Insured from all sources for work performed by him. It is determined before the deduction of federal, state and local income taxes. For a self-employed Insured, Earned Income means gross income less normal and customary business expenses.

**The Meaning of "Earned Income Before Disability".** This is the average monthly Earned Income of the Insured, determined by using the 12 consecutive month period with the greatest amount of Earned Income in the 24 month period before the start of disability.

**Proof of Earned Income.** The Company may require proof, including income tax returns, of the amount of Earned Income for periods before and after the start of the disability.

### 1.5 TRANSPLANT DONOR

If the Insured donates an organ for transplant to another person, a disability caused by the donation will be considered as caused by sickness.

### 1.6 LIFETIME BENEFIT FOR PRESUMPTIVE TOTAL DISABILITY

Even if the Insured is able to work, he will be considered totally disabled if he incurs the total and irrecoverable loss of any of the following:

- Sight in both eyes
- Use of both hands
- Use of both feet
- Use of one hand and one foot
- Speech
- Hearing in both ears

The Full Benefit is payable for this loss, provided: the loss occurs while this policy is in force; the loss occurs before the first policy anniversary that follows the 65th birthday of the Insured; and the loss results from an accident that occurs, or from a sickness that first appears, while this policy is in force. The Insured does not need to be under the care of a physician.

The Full Benefit for the loss:

- is payable monthly;
- starts with the date of loss, not the Beginning Date;
- is payable for as long as the loss continues during the lifetime of the Insured; and
- is in lieu of other benefits payable for total or partial disability.

### 1.7 WAIVER OF PREMIUM BENEFIT

The Company will waive premiums which become due on this policy while the Insured has a disability for which the Full or Proportionate Benefit is payable if:

- the disability lasts for at least 90 days; or
- the disability lasts beyond the Beginning Date, if sooner.

The Waiver of Premium Benefit is not limited by the Maximum Benefit Period.

If premiums are waived, the Company will also refund that portion of a premium paid which applies to a period of disability beyond the policy month in which the disability began. If a premium is to be waived on a policy anniversary, an annual premium will be waived.

When the disability ends, the Company will no longer waive the payment of premiums. The Owner may then keep the policy in force by resuming the payment of premiums as they become due.

### 1.8 REHABILITATION BENEFIT

If the Insured is receiving benefits under this policy, the Company will consider joining in a program to rehabilitate the Insured. The Company's role in the program will be determined by written agreement with the Insured. Benefits will continue during the program under the terms of the agreement.

### 1.9 DISABILITY WITH MULTIPLE CAUSES

If the Insured is disabled from more than one cause, the amount and duration of benefits will not be more than that for any one of the causes.

### 1.10 BENEFITS FOR SEPARATE DISABILITIES

Each separate time the Insured is disabled, a new Initial Period, Beginning Date and Maximum Benefit Period start. However, a disability is considered to be a continuation of one that started earlier, and is not separate, unless:

- the cause of the later disability is not medically related to the cause of the earlier one, and the Insured had resumed on a full-time basis the principal duties of an occupation for at least 30 consecutive days; or
- the cause of the later disability is related to the cause of the earlier one, and the later disability starts at least 6 months after the end of the earlier one.

# SECTION 2. EXCLUSIONS

### 2.1 PRE-EXISTING CONDITIONS

There will be no benefits for a disability that:
a. starts within two years after the Date of Issue; and
b. results from an accident that occurred or from a sickness that first appeared:
  - within five years before the Date of Issue; and
  - was not disclosed in the application.

A sickness is considered to have appeared if it would have caused a prudent person to seek medical attention.

### 2.2 OTHER EXCLUSIONS

There will be no benefits for a disability that:

- is caused or contributed to by an act or incident of war, declared or undeclared;
- is caused by a normal pregnancy or childbirth; or
- is excluded from coverage by an Agreement for Limitation of Coverage.

6

# SECTION 3. CONDITIONAL RIGHT TO RENEW TO AGE 75

On each policy anniversary between the Insured's 65th and 75th birthdays, the Owner may renew this policy for one year if the Insured is actively and gainfully employed on a full-time basis on the anniversary. This right to renew ends on the first anniversary on which the Insured is not so employed or on which the Owner chooses not to renew the policy.

For a policy that is renewed:
- a Full Benefit is payable if the Insured is totally disabled;
- the Proportionate Benefit is not payable;
- the Maximum Benefit Period is 24 months; and
- the premium for each year of renewal will be based on the Insured's age and the Company's rates in use at the time of renewal.

# SECTION 4. CLAIMS

### 4.1 NOTICE OF CLAIM

Written notice of claim must be given to the Company within 60 days after the start of any loss covered by this policy. If the notice cannot be given within 60 days, it must be given as soon as reasonably possible. The notice should:
- give the Insured's name and policy number; and
- be sent to the Home Office or be given to an authorized agent of the Company. The Home Office is located at:

720 East Wisconsin Avenue
Milwaukee, Wisconsin 53202.

### 4.2 CLAIM FORMS

The Company will furnish claim forms within 15 days after receiving notice of claim. If claim forms are not furnished within that period, written proof of disability may be made without the use of the Company's forms.

### 4.3 PROOF OF DISABILITY

Written proof of disability must be given to the Company within 90 days after the end of each monthly period for which benefits are claimed. If the proof is not given within this 90 days, the claim will not be affected if the proof is given as soon as reasonably possible.

### 4.4 TIME OF PAYMENT OF CLAIMS

Benefits due under this policy will be paid monthly.

### 4.5 PAYMENT OF CLAIMS

Benefits will be paid to the Owner or to his estate.

### 4.6 MEDICAL EXAMINATION

The Company, at its own expense, may have the Insured examined as often as reasonably necessary in connection with a claim. This will be done by a physician of the Company's choice.

### 4.7 LEGAL ACTIONS

No legal action may be brought for benefits under this policy within 60 days after written proof of disability has been given. No legal action may be brought after three years (or a longer period that is required by law) from the time written proof is required to be given.

# SECTION 5. OWNERSHIP

### 5.1 THE OWNER

The Owner is named on page 3. All policy rights may be exercised by the Owner, or his successor or transferee.

### 5.2 TRANSFER OF OWNERSHIP

The Owner may transfer the ownership of this policy. Written proof of transfer satisfactory to the Company must be received at its Home Office. The transfer will take effect as of the date it was signed. The Company may require that the policy be sent to its Home Office for endorsement to show the transfer.

### 5.3 COLLATERAL ASSIGNMENT

The Owner may assign this policy as collateral security. The Company is not responsible for the validity or effect of a collateral assignment. The Company will be charged with notice of the assignment only if a written assignment is received at the Home Office.

A collateral assignee is not an Owner. A collateral assignment is not a transfer of ownership. Ownership can be transferred only by complying with Section 5.2.

# SECTION 6. PREMIUMS AND REINSTATEMENT

### 6.1 PREMIUMS

**Payment.** All premiums after the first are payable at the Home Office or to an authorized agent. A premium must be paid on or before its due date. A receipt signed by an officer of the Company will be furnished on request.

**Frequency.** Premiums may be paid annually, semi-annually or quarterly at the published rates of the Company. A change in premium frequency will take effect on the Company's acceptance of the premium for the new frequency. Premiums may be paid on any other frequency approved by the Company.

**Grace Period.** A grace period of 31 days will be allowed for payment of a premium that is not paid on its due date. This policy will be in full force during this period.

If the premium is not paid within the grace period, the policy will terminate as of the due date.

**Premium Refund at Death.** The Company will refund that portion of any premium paid for a period beyond the date of the Insured's death.

## 6.2 REINSTATEMENT

**Within Late Payment Period.** The late payment period is the first 31 days after the grace period. Within the late payment period, the policy will be reinstated as of the date the overdue premium is paid. No evidence of insurability will be required.

**After the Late Payment Period.** After the late payment period, the cost to reinstate must be paid to the Company. The Company may also require an application for reinstatement and evidence of insurability. The policy will be reinstated as of the date the cost to reinstate was paid to the Company if:

- the application is approved by the Company; or
- notice that the application has been disapproved is not given within 45 days.

The policy will be reinstated as of the date the Company accepts payment of the cost to reinstate if the Company does not require an application.

**Coverage.** If no evidence of insurability is required, the reinstated policy will cover only a disability that starts after the date of reinstatement. If evidence of insurability is required:

- the reinstated policy will cover only a disability that results from an accident that occurs, or from a sickness that first appears, after the date of reinstatement; and
- the Company may attach new provisions and limitations to the policy at the time of reinstatement. All other rights of the Owner and the Company will remain the same.

**Duty With Armed Forces.** If the policy terminates while the Insured is on active duty with the armed forces of any nation or group of nations, the policy may be reinstated without evidence of insurability. The policy will be reinstated as of the date a written request and the cost to reinstate are received by the Company. The request must be received:

- no later than 90 days after the Insured's release from active duty; and
- no later than 5 years after the due date of the unpaid premium.

# SECTION 7. THE CONTRACT

## 7.1 ENTIRE CONTRACT; CHANGES

This policy with the application and attached endorsements is the entire contract between the Owner and the Company. No change in this policy is valid unless approved by an officer of the Company. The Company may require that the policy be sent to it to be endorsed to show a change. No agent has authority to change the policy or to waive any of its provisions.

## 7.2 INCONTESTABILITY

In issuing this policy, the Company has relied on the application. The Company may rescind the policy or deny a claim due to a misstatement in the application. However, after this policy has been in force for two years from the Date of Issue, no misstatement in the application may be used to rescind the policy or to deny a claim for a disability that starts after the two year period.

## 7.3 CHANGE OF PLAN

The Owner may change this policy to any plan of disability insurance agreed to by the Owner and the Company. The change will be subject to:

- payment of required costs; and
- compliance with other conditions required by the Company.

All premiums and dividends after the date of change will be the same as though the new plan had been in effect since the Policy Date.

## 7.4 MISSTATED AGE OR SEX

If the age or sex of the Insured has been misstated, the benefits will be those which the premiums paid would have purchased at the correct age and sex.

## 7.5 CONFORMITY WITH STATE STATUTES

Any provisions of this policy which, on the Date of Issue, are in conflict with the statutes of the state in which the Owner resides on that Date are amended to conform to such statutes.

## 7.6 DIVIDENDS

This policy will share in the divisible surplus, if any, of the Company. Divisible surplus is determined annually. This policy's share will be credited as an annual dividend.

Dividends will be:

- used to reduce premiums; or
- paid to the Owner when premiums are being waived.

## 7.7 DATES

The effective date of this policy is the Date of Issue. Policy months, years and anniversaries are computed from the Policy Date. Both dates are shown on page 3 of this policy.

## SCHEDULE OF BENEFITS AND PREMIUMS

### DATE OF ISSUE — AUGUST 1, 1981

| PLAN AND ADDITIONAL BENEFITS | FULL BENEFIT PER MONTH | ANNUAL PREMIUM | YEARS PAYABLE |
|---|---|---|---|
| STEP RATE DISABILITY INCOME | $ 750 | $ 121.80<br>238.05 | 6<br>NEXT 31 |
| SOCIAL SECURITY SUBSTITUTE BENEFIT | 800 | 146.96 | 36 |

RENEWAL OF COVERAGE BEYOND AGE 65 MAY REQUIRE AN INCREASE IN THE PREMIUM. SEE SECTION 3.

A PREMIUM IS PAYABLE ON THE POLICY DATE AND EVERY 12 MONTHS THEREAFTER.

THE FIRST PREMIUM IS $268.76.

BEGINNING DATE  181ST DAY OF DISABILITY IN THE FIRST 360 DAYS AFTER THE START OF DISABILITY.

MAXIMUM BENEFIT PERIOD TO AUGUST 1, 2018, BUT NOT LESS THAN 24 MONTHS OF BENEFITS.

INITIAL PERIOD  60 MONTHS OF BENEFITS, BUT NOT MORE THAN 24 MONTHS OF BENEFITS AFTER AUGUST 1, 2016.

OWNER  DONALD E ASTAR, THE INSURED

| | | | |
|---|---|---|---|
| INSURED | DONALD E ASTAR | AGE AND SEX | 29 MALE |
| POLICY DATE | AUGUST 1, 1981 | POLICY NUMBER | D 227 462 |
| EXCLUSIONS—SEE SECTION 2. | | | |

# SOCIAL SECURITY SUBSTITUTE BENEFIT

## 1. THE BENEFIT

The purpose of this Benefit is to increase the amount of monthly income payable under the policy when disability benefits are not available from Social Security. This increase can occur only while this Benefit is in force. When the Full Benefit is payable under the policy or is used to determine the amount of the Proportionate Benefit, it is increased by either:

- the amount of this Benefit when the Insured is not entitled to Social Security benefits based on his disability; or
- 40% of the amount of this Benefit when the Insured, but no member of his family, is entitled to Social Security benefits based on the Insured's disability.

The premium for and the amount of this Benefit are shown on page 3.

## 2. EXCEPTIONS

The Full Benefit is not increased by the terms of this Benefit:

- when both the Insured and at least one member of his family are entitled to Social Security benefits based on the disability of the Insured;
- when the Insured has elected to receive retirement benefits from Social Security; or
- after the first policy anniversary that follows the 65th birthday of the Insured. At that time, this Benefit will terminate.

## 3. PROOF OF SOCIAL SECURITY BENEFITS

For the Full Benefit to be increased by the terms of this Benefit, evidence as required by this section 3 must be given to the Company. These requirements are in addition to those set out in the Claims Section of the policy.

**Entitlement to Benefits.** At the request of the Company, written proof must be given to the Company that the Insured is not entitled at that time to Social Security benefits based on his disability. The proof must show:

- that the Insured has applied for Social Security benefits based on his disability; and
- the decision made by Social Security on the application.

If the Insured's application is denied and he appears to the Company to be entitled to Social Security benefits, the proof must show:

- that he has asked for a reconsideration of the decision; and
- if the decision is not changed, that he has appealed the decision further.

The Company must also be given the Insured's written authorization to obtain information from Social Security about his claim.

**Benefits Pending Decision by Social Security.** Once the Insured has applied for benefits from Social Security, the Full Benefit will be increased under the terms of this Benefit:

- for six months; or
- until he receives the decision from Social Security, if sooner.

If the increases have been stopped because the six months have passed and Social Security later denies the Insured's claim, the Company then will pay those increases that would have been paid under this Benefit had they not been stopped.

**Change in Status.** The Company must be notified at the time there is a change in the Insured's entitlement to Social Security benefits based on the status of his disability.

**Member of Family.** When a member of the Insured's family may be entitled to Social Security benefits based on the Insured's disability, the terms of this section 3 as to the Insured also apply to that member.

## 4. ADDITIONAL DEFINITIONS

**Social Security.** The words "Social Security" mean the program established under the federal Social Security Act in its present form or as it may be amended or replaced in whole or in part.

**Member of Family.** A member of the Insured's family is one who is entitled to Social Security benefits due to a relationship to the Insured.

## 5. TERMINATION

This Benefit will terminate:

- on the termination of this policy;
- on the first policy anniversary that follows the 65th birthday of the Insured;
- on receipt at the Home Office of the Owner's written request within 31 days of a premium due date.

*Peter W. Bruce*

Secretary
THE NORTHWESTERN MUTUAL LIFE
INSURANCE COMPANY

UD 1.2.5 SSR

# SOCIAL SECURITY SUBSTITUTE BENEFIT

## 1. THE BENEFIT

The purpose of this Benefit is to increase the amount of monthly income payable under the policy when disability benefits are not available from Social Security. This increase can occur only while this Benefit is in force. When the Full Benefit is payable under the policy or is used to determine the amount of the Proportionate Benefit, it is increased by either:

- the amount of this Benefit when the Insured is not entitled to Social Security benefits based on his disability; or
- 40% of the amount of this Benefit when the Insured, but no member of his family, is entitled to Social Security benefits based on the Insured's disability.

The premium for and the amount of this Benefit are shown on page 3.

## 2. EXCEPTIONS

The Full Benefit is not increased by the terms of this Benefit:

- when both the Insured and at least one member of his family are entitled to Social Security benefits based on the disability of the Insured;
- when the Insured has elected to receive retirement benefits from Social Security; or
- after the first policy anniversary that follows the 65th birthday of the Insured. At that time, this Benefit will terminate.

## 3. PROOF OF SOCIAL SECURITY BENEFITS

For the Full Benefit to be increased by the terms of this Benefit, evidence as required by this section 3 must be given to the Company. These requirements are in addition to those set out in the Claims Section of the policy.

**Entitlement to Benefits.** At the request of the Company, written proof must be given to the Company that the Insured is not entitled at that time to Social Security benefits based on his disability. The proof must show:

- that the Insured has applied for Social Security benefits based on his disability; and
- the decision made by Social Security on the application.

If the Insured's application is denied and he appears to the Company to be entitled to Social Security

benefits, the proof must show:

- that he has asked for a reconsideration of the decision; and
- if the decision is not changed, that he has appealed the decision further.

The Company must also be given the Insured's written authorization to obtain information from Social Security about his claim.

**Benefits Pending Decision by Social Security.** Once the Insured has applied for benefits from Social Security, the Full Benefit will be increased under the terms of this Benefit:

- for six months; or
- until he receives the decision from Social Security, if sooner.

If the increases have been stopped because the six months have passed and Social Security later denies the Insured's claim, the Company then will pay those increases that would have been paid under this Benefit had they not been stopped.

**Change in Status.** The Company must be notified at the time there is a change in the Insured's entitlement to Social Security benefits based on the status of his disability.

**Member of Family.** When a member of the Insured's family may be entitled to Social Security benefits based on the Insured's disability, the terms of this section 3 as to the Insured also apply to that member.

## 4. ADDITIONAL DEFINITIONS

**Social Security.** The words "Social Security" mean the program established under the federal Social Security Act in its present form or as it may be amended or replaced in whole or in part.

**Member of Family.** A member of the Insured's family is one who is entitled to Social Security benefits due to a relationship to the Insured.

## 5. TERMINATION

This Benefit will terminate:

- on the termination of this policy;
- on the first policy anniversary that follows the 65th birthday of the Insured;
- on receipt at the Home Office of the Owner's written request within 31 days of a premium due date.

*Peter W. Bruce*

Secretary
THE NORTHWESTERN MUTUAL LIFE
INSURANCE COMPANY

# AMENDMENT TO SECTION 1. BENEFITS
# AND SECTION 2. EXCLUSIONS

**As of the Date of Issue, Section 1.2 is amended to read as follows:**

## 1.2  FULL BENEFIT FOR TOTAL DISABILITY

The Full Benefit is payable for each month of total disability between the Beginning Date and the end of the Maximum Benefit Period. During the Initial Period, the Insured is totally disabled when he is unable to perform the principal duties of his occupation. After the Initial Period, the Insured is totally disabled when he is unable to perform the principal duties of his occupation and is not gainfully employed in any occupation..

If the Insured is retired when an accident occurs or a sickness first appears, the Insured is totally disabled when he is unable to perform the normal activities of a retired person who is the same age but in good health.

**Benefit Amount For Partial Month.**   When a total disability lasts for a part of a month, 1/30th of the Full Benefit will be payable for each day of total disability.

**As of the Date of Issue, Section 2. is amended to read as follows:**

## 2.1  PRE-EXISTING CONDITIONS LIMITATIONS

There will be no benefits for a disability that:

a. starts within two years after the Date of Issue;

b. results from a condition that was not disclosed in the application; and

c. results from an accident that occurred within two years before the Date of Issue or from a sickness that:

   • was diagnosed or treated within two years before the Date of Issue; or

   • first appeared within one year before the Date of Issue.

A sickness is considered to have appeared if it would have caused a prudent person to seek medical attention.

## 2.2  OTHER EXCLUSIONS

There will be no benefits for a disability that:

• is caused by an act or incident of war, declared or undeclared;

• is caused by a normal pregnancy or childbirth; or

• is excluded from coverage by an Agreement for Limitation of Coverage.

Secretary
THE NORTHWESTERN MUTUAL LIFE
INSURANCE COMPANY

LLD 225 (0181)
Illinois

# AMENDMENT OF APPLICATION

**THE NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY·MILWAUKEE** | NML |

720 East Wisconsin Avenue, Milwaukee, Wisconsin 53202·

Policy No.   D 227 462 CR          Date      July 1, 1981

Insured      Donald E. Astar       G.A. No.      21

                                    Sol. Agent No.      45710

Supplementing and amending this application    I understand that NML cannot issue this policy unless the insurance listed below is terminated on its premium due date. NML may rely on my agreement to terminate the insurance listed below on its premium due date.

| Insurer | Amount | Premium Due Date |
|---------|--------|------------------|
| Allstate | $1,100 | August 1, 1981 |

I authorize NML to contact the listed Insurer after the premium due date to confirm the above statement.

This amendment is to be attached to and made part of this application

Date Signed _____ |____|____|_____     Signed _____
                     Month   Day   Year                       Donald E. Astar

                                    Signature of Insured if other than Applicant _____
DH:pd

17-0055 (rev. 1/77)

**ATTACH THIS SIGNED DUPLICATE TO THE POLICY**

550099

**DISABILITY INSURANCE APPLICATION TO**
**THE NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY**
**MILWAUKEE, WISCONSIN**

No. 0227462

☐ Life & Disability
Insurance

---

101. INSURED
(Please Print)

First     Middle Initial     Last

Sex:
☒ Male
☐ Female

---

102. APPLICANT, if other
than Insured
(Please Print)_____

First    Middle Initial    Last

Relationship
to Insured _____

· If Business Organization: ☐ Corporation    ☐ Partnership    ☐ Other type of Business (specify)

---

103A. RESIDENCE of Insured: Print
Street & No.
or R.F.D. _____

City _____ State _____

County _____ Zip Code _____

This address will be used for all of Insured's policies.

103B. PREMIUM PAYER. Send premium notices to:
☐ Insured   ☐ Owner   ☐ Applicant

☐ Other _____
               Name

at: ☒ Insured's address (See 103A.) or:
☐ The following address:

_____
Street & No. or R.F.D.

---

104A. Insured's Date of Birth: ____
           Mo.   Day   Year

_____
City            State

104B. Place of Birth: (State or Country if other than U.S.A.)

_____
County         Zip Code

Unless directed otherwise, any notices will be sent to
the Owner at the Insured's address.

---

105. Has application or informal inquiry ever been made to the Northwestern Mutual for annuity, life, or disability insurance on the life of the Insured?   ☐ Yes   ☒ No   If "Yes," Last Policy Number is

---

**COMPLETE QUESTION 106 IF EXERCISING ADDITIONAL PURCHASE BENEFIT OPTION**

106A. Number of policy under which this privilege is being
exercised?

106B. Is Application?   ☐ Regular Purchase
                  ☐ Advance Purchase (see 106C.)

---

106C. If an advance purchase, event is the following:

☐ (1) Marriage

☐ (2) Birth of Child

☐ (3) Adoption of Child

Name of ☐ Spouse ☐ Child _____
               First     Middle Initial     Last
Place and Date of Marriage, Birth or Final Decree of Legal Adoption:

_____
City      County     State     Mo.   Day   Year

☐ (4) Increase in Annual Earned Income
Before Taxes within last
2 calendar years.

$ _____ Actual - Two Calendar Years Ago
$ _____ Actual - One Calendar Year Ago*
$ _____ Estimate - Current Calendar Year*
            *Should agree with answer to question 114A.

---

106D. (1) What is your occupation(s) and what are your duties?

(2) Employer(s)

_____
Name

_____
Street & No. or R.F.D.

_____
City     State     Zip Code

(3) How long so employed? _____
(If less than 2 years, explain)

---

90-1A D.I. (0880)

## DISABILITY INSURANCE (CONTINUED)

### INDICATE PLAN AND MONTHLY BENEFIT APPLIED FOR IN QUESTION 107

**107A. Plan**

| | Monthly Benefit | Maximum Benefit Period (e.g. 2 years, 5 years, to Age 65) | Beginning Date | Own Occupation to Age 65 |
|---|---|---|---|---|
| ☐ Level Premium | $ _____ | | | ☐ |
| ☒ Step Rate | $ 7⁵⁰ | 5⁵⁵ | _____ | ☐ |
| ☐ Disability Overhead Expense | $ _____ | | | |
|   ☐ Business ⎱ LL Series | | | | |
|   ☐ Professional ⎰ Only | | | | |

**LL Series Only:**

| | | | | |
|---|---|---|---|---|
| ☐ Employee Disability Income (EPIC) | $ _____ | | _____ | ☐ |
|   ☐ Guaranteed Acceptance | | | | |
|   ☐ Individually Underwritten | | | | |
| ☐ Social Security Substitute Policy | $ _____ | _____ | _____ | |

**107B.** ☐ Disability Income — Benefit Period Less Than One Year (KL Series only)

Maximum Benefit Period and Beginning Date (Select one)

Monthly Benefit $ _____

  ☐ 11 months; 31st day
  ☐ 10 months; 61st day
  ☐ 9 months; 91st day

**108. ADDITIONAL BENEFITS**

**KK AND KL SERIES ONLY:**

☐ Additional Purchase   $ _____ (Benefit Periods of 2 Years or More)   *Aggregate Amount*

☐ Additional Purchase   $ _____ (Benefit Periods of Less than One Year)   *Aggregate Amount*

☐ Lifetime Accident (available only with Benefit Period to age 65)

☐ Lifetime Sickness/Lifetime Accident (available only with Benefit Period to age 65)

**LL SERIES ONLY:**

☐ Additional Purchase   $ _____ (Plans other than Disability Overhead Expense)   *Amount on each Purchase Date*

☐ Lifetime

☑ Social Security Substitute Benefit   $ _____   *Monthly Benefit*

☐ Indexed Income

**109. SPECIAL DATING:**

Prepaid: ☐ Short Term to _____   Mo.   Day   Yr.

☐ Date to Save Age ☐ Backdate to _____   Mo.   Day   Yr.

Non-Prepaid: Specified Future Date _____   Mo.   Day   Yr.

☐ Date to Save Age ☐ Backdate to _____   Mo.   Day   Yr.

**110.** The OWNER of any Disability Insurance policy(ies) will be:

☑ A. The Insured    ☐ B. The Applicant

☐ C. Other _____   *(Full Name)*

**111. PREMIUM PAYABLE:**

☑ Annually    ☐ Semiannually    ☐ Quarterly

**112.** Has the premium for the policy applied for been paid to the agent in exchange for the Conditional Insurance Agreement with the same number as this application and if so, do you accept and agree to the terms and conditions thereof?   ☐ Yes   ☑ No

**113.** The following is required because Company underwriting rules limit the amount of disability insurance on Insured in this Company and elsewhere.

A. **Disability Coverages:** Indicate all disability insurance including group, disability and private and government retirement pensions, salary continuation plans, employee benefits, association, overhead expense and all other disability benefits. Identify In Force (I), Pending (P), or Contemplated (C). If none, check: ☐ NONE

| Insurer | Kind | Mo. Inc. Amount | Benefit Period Accident | Sick | I, P, or C | Check if offset by Soc. Sec. |
|---|---|---|---|---|---|---|
| ___ | ___ | 1165 | 65 | 65 | _ | |
| | | | | | | |
| | | | | | | |

B. Will the insurance applied for replace disability insurance on Insured in this Company or elsewhere? ☑ Yes ☐ No (If "Yes", submit required papers and complete the information at right and Question C. below.)

| Insurer | Monthly Income Amount | Premium Due Date |
|---|---|---|
| All-___ | 1100 | 5/1 |

C. Will the coverage to be replaced be terminated on the Premium Due Date(s) upon acceptance of a policy issued as a result of this application? ☑ Yes ☐ No

## DISABILITY INSURANCE (CONTINUED)

**TO BE COMPLETED BY THE INSURED OR INFORMANT**

INSURED (Please Print) [handwritten] First    Middle Initial    Last

| | Actual Prior Calendar Year | Estimate Current Calendar Year |
|---|---|---|
| **114. A.** Earned Income Before Taxes | | |
| (1) From Primary Occupation Salary and/or gross income minus business expenses | $ | $ 29,000 |
| (2) From Other Occupations Salary and/or gross income minus business expenses | | |
| (3) Regular Bonus | | |
| (4) Total Earned Income = (1) + (2) + (3) | | 29,000 |
| **B.** Unearned Income Before Taxes (Include dividends, interest, net rental income, pensions, annuities and other investments.) | | |
| **C.** Insurable Income (Earned Income minus Unearned Income.) (C) = (A) — (B) | | 29,000 |

**D.** Is financial net worth greater than $900,000? (In determining net worth, consider net assets exclusive of personal place of residence.)  ☐ Yes  ☑ No  (If "Yes," submit required information.)

### COMPLETE QUESTION 115 FOR DISABILITY OVERHEAD EXPENSE

**115. A.** What is Insured's share of the overhead expenses (or Insured's share of ownership if an incorporated business)? ___ %

**B.** Amount of Insured's share of typical monthly expenses:

| | | |
|---|---|---|
| $ _____ Electricity & other utilities | $ _____ Employees' salaries | $ _____ Depreciation |
| $ _____ Telephone | $ _____ Real Estate Tax | $ _____ Other normal expenses |
| $ _____ Heat | $ _____ Mortgage Interest | |
| | | $ _____ TOTAL |

---

The Insured consents to this application and declares that the foregoing answers and statements (contained on form 90-1A DI (0880), 90-1B DI (0880), and 90-2 DI (0880)) are correctly recorded, complete and true to the best of his knowledge and belief. He acknowledges receipt of the Fair Credit Reporting Act and MIB, Inc. notices, and authorizes the preparation and procurement of any investigative consumer reports required for the appraisal of this application.

It is agreed that:

(1) If the premium is not paid when the application is signed, no insurance will be in effect. If, however, a policy is delivered and the premium paid during the Insured's lifetime, the insurance will be in effect if at the time of the delivery and payment the answers and statements in the application are then true to the best of his knowledge and belief.

(2) If the premium is paid when the application is taken, no disability insurance will have been in effect if Section I. of the Conditional Insurance Agreement is applicable.

(3) It is understood and agreed that for each separate period of disability no benefits are payable until the Beginning Date specified in question 107. Receipt of an outline of coverage for the policy applied for is acknowledged.

(4) No agent is authorized to make or alter contracts or to waive any of the Company's rights or requirements.

---

Signature of INSURED (if other than Applicant)          Signature of APPLICANT

Signed at _____ Date ___ / ___ / ___          Signature of LICENSED AGENT
City, County & State          Month  Day  Year

## THE NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY

**TO BE COMPLETED BY THE INSURED OR INFORMANT**

INSURED  (Please Print) _____

First      Middle Initial      Last

If submitted for purpose other than a new insurance application, please indicate:
☐ Policy Change   ☐ Conversion   ☐ Adding _____ Benefit   ☐ Reinstatement   ☐ Rating Reduction

for Policy(ies) Number _____

☐ Payor Benefit for Applicant (Payor) _____ Relationship to Insured _____
First   Middle Initial   Last

Payor's Date of Birth _____ Policy Number _____
Mo.   Day   Yr.

| | |
|---|---|
| 20. Have you ever had life, disability, or hospital insurance declined, rated, modified, cancelled, or not renewed? *(If "Yes" explain in REMARKS)* ☐ Yes ☐ No | **COMPLETE QUESTIONS 27-31 IF INSURED AGE 10 OR OLDER**<br>27. Are you a member of, or do you contemplate joining any branch of the Armed Forces, the R.O.T.C., the National Guard or any other component of the Armed Forces Reserve either on an active or inactive status?<br>*(If "Yes," complete Military Section 90-5)* ☐ Yes ☒ No |
| 21. When was your last previous examination or application for life, disability, or accidental death insurance?<br>Month _____ Year _____ Company _____ | 28. Except as a fare paying passenger on a regularly scheduled flight, have you flown within the past 3 years, or do you contemplate flying in the future?<br>*(If "Yes," complete Aviation Section 90-5)* ☐ Yes ☒ No |

22. Indicate below whether any other Life Insurance on your Life is individual (Ind) or Group (Grp) and identify In Force (I), Pending (P) or Contemplated (C). If none check: ☐ NONE

| Insurer | Ind or Grp | Life Insurance Amount | Accidental Death Amount | I, P, or C |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |

29. Have you within the past 2 years participated in or do you contemplate participating in racing (automobile, snowmobile, motorcycle, boat or go-kart) scuba or skin diving, sky diving, hang gliding, mountain climbing or rodeos?
*(If "Yes," complete Avocation Section 90-6)* ☐ Yes ☐ No

30. A. What is your Automobile Driver's License Number?
# _____ State _____
or, ☐ I do not drive an automobile.

| | |
|---|---|
| 23. Marital Status: ☐ Single, Widowed or Divorced ☒ Married | B. In the past 3 years have you been in a motor vehicle accident, charged with a moving violation of any motor vehicle law, or had your license restricted or revoked? *(If "Yes" explain in C, D, and E or REMARKS)* ☐ Yes ☒ No |

24. Are you a citizen of the United States? *(If "No" give details and present status in REMARKS)* ☐ Yes ☐ No

C. Moving Violations within the past 3 years:

25. Do you contemplate leaving the United States of America for travel or residence?
*(If "Yes" explain in REMARKS)* ☐ Yes ☐ No

26. A. What is your occupation(s) and what are your duties?

| Date | Type and Details (Speeding, Reckless Driving, Driving While Intoxicated) | Action (Citation, Fine) | Accident (Yes or No) |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

B. Employer(s) _____
Name

_____
Street & No. or R.F.D.

_____
City   State   Zip Code

D. Details of any Accidents: (Include date, citations, damage amounts, injuries.)

C. How long so employed? _____
*(If less than 2 years, explain in REMARKS)*

31A. Have you smoked cigarettes within the past 10 years?
*(If "Yes," complete B or C and/or REMARKS)* ☒ Yes ☐ No

B. Present Cigarette Smokers
(1) How many cigarettes do you smoke per day? _____
*(Indicate number of cigarettes not number of packs)*
(2) For how many years have you smoked cigarettes?

C. Past Cigarette Smokers
(1) How many cigarettes did you smoke per day? _____
*(Indicate number of cigarettes not number of packs)*
(2) For how many years had you smoked cigarettes? _____
(3) When did you quit smoking cigarettes? _____
Mo.   Yr.

**REMARKS:**

I declare that my answers and statements are correctly recorded, complete and true to the best of my knowledge and belief.

Date _____
Month   Day   Year

Signature of Insured (or Informant)
(Signature not required if reverse side, 90-4 also completed)

90-3 (0880)

INSURED  D O N A L D    E.                    A S T A R                    SEX: Male ☒ Female ☐
Print.   First           Middle Initial       Last

**33. Have you ever been treated for or ever had any indication of:**

|  | Yes | No |
|---|---|---|
| A. Disorder of eyes, ears, nose, throat or mouth? | ☐ | ☒ |
| B. Recurrent dizziness, fainting, convulsions, recurrent headache; speech defect, paralysis or stroke; mental or nervous disorder? | ☐ | ☒ |
| C. Persistent shortness of breath, cough, blood spitting; bronchitis, bronchiectasis; pleurisy, asthma, emphysema, tuberculosis or chronic respiratory disorder? | ☐ | ☒ |
| D. Chest pain, discomfort or tightness, palpitation, high blood pressure, rheumatic fever, heart murmur, heart attack or other disorder of the heart or blood vessels? | ☐ | ☒ |
| E. Jaundice, intestinal bleeding; ulcer, hernia, colitis, diverticulitis, hemorrhoids, recurrent indigestion, or other disorder of the stomach, intestines, liver or gall bladder? | ☐ | ☒ |
| F. Sugar, albumin, blood or pus in urine; venereal disease; stone or other disorder of kidney, bladder, prostate or reproductive organs? | ☐ | ☒ |
| G. Diabetes; thyroid or other endocrine disorders? | ☐ | ☒ |
| H. Neuritis, sciatica, rheumatism, arthritis, gout, or disorder of the muscles or bones, spine, back or joints? | ☒ | ☐ |
| I. Deformity, lameness or amputation? | ☐ | ☒ |
| J. Disorder of skin, lymph glands, cyst, tumor, or cancer? | ☐ | ☒ |
| K. Allergies; anemia or other disorder of the blood? | ☐ | ☒ |

**34. Other than above, have you within the past 5 years:**

|  | Yes | No |
|---|---|---|
| A. Had any physician or practitioner, including your usual medical attendant, examine, advise, or treat you? | ☐ | ☒ |
| B. Been a patient in a hospital, clinic, or medical facility? | ☒ | ☐ |
| C. Had electrocardiogram, X-ray, other diagnostic test? | ☐ | ☒ |
| D. Been advised to have any diagnostic test, hospitalization, or surgery which was not completed? | ☐ | ☒ |
| 35. Have you ever had military service deferment, rejection, or discharge because of a physical or mental condition? | ☐ | ☒ |
| 36. Have you ever requested or received a pension, benefits, or payment because of an injury, sickness or disability? | ☐ | ☒ |
| 37. Have you ever regularly used barbiturates, narcotics, excitants or hallucinogens or ever sought treatment or been arrested for their use? | ☐ | ☒ |
| 38. Have you ever sought help or treatment for alcoholic habit? | ☐ | ☒ |
| 39. Family History: Tuberculosis, diabetes, cancer, high blood pressure, heart or kidney disease, mental illness or suicide? | ☒ | ☐ |

|  | Age, if Living | Cause of Death | Age at Death |
|---|---|---|---|
| Father | 66 | | |
| Mother | 60 | | |
| Brothers and ~~Sisters~~ | 32  33 | | |

**40. Have you lost any weight in the past year?** ☐ Yes ☒ No
Loss _____ lbs. How long present weight constant?

**41. Answer the following, if applicable:**
A. Have you had any disorder of menstruation or complication of pregnancy? ☐ Yes ☐ No
B. Are you now pregnant? ☐ Yes ☐ No
Anticipated delivery date:

**42. If Insured Under Age 1:**
Was the Insured's birth abnormal or premature? ☐ Yes ☐ No
If "Yes" weight at birth _____ lbs. _____ oz.
Number of months premature?

**DETAILS AND REMARKS**
Please complete Questions 33 through 42 and use additional space provided below as required for complete details (include signs, symptoms, and diagnosis of any illness). Identify question and circle applicable items.

33 (H) 1973 - Dislocation of (R) shoulder
- surgery or joint capsule

34 (A)
1978 - check for rectal polyps.
Everything was OK

34 (B) Budlong Central Hosp.
for shoulder surgery.

39 Grandmother died Jan. 1980
of pancreatic cancer at
age 84 yrs old

**43.** Name and address of your personal physician? (If NONE, check box) ☐ NONE
Name  Dr. Edward ABDERHOLDEN
Street No. or RFD  543 ORCHARD AVE.
City, State & Zip Code  Antioch, ILL  60002

**44. Identification of any attending physician consulted in connection with "yes" answers in questions 33-42.**

| QUESTION NUMBER | NAME AND ADDRESS OF ANY ATTENDING PHYSICIAN | REASON | DATE & DURATION | RESULTS |
|---|---|---|---|---|
| (H) | Dr. Magino  Libertyville Center Dr. | surgery on (R) shoulder | 1973 | No resulting problems |
| | | | | |
| | | | | |

**READ CAREFULLY BEFORE SIGNING**

(1) I declare that my answers and statements are correctly recorded, complete and true to the best of my knowledge and belief.

(2) I authorize any physician, hospital or other medically related facility, the MIB, Inc., or other insurance company, organization, institution or person, that has my records or knowledge concerning me or my health, including prior medical history, to give such information to The Northwestern Mutual Life Insurance Company, or its reinsurer.

Signed in my presence _____  Medical Examiner

Birthdate of Insured _____  Mo. Day Yr.  53

Date  July 20, 1981          X _____ Signature of Insured (or Informant)

DECLARATIONS TO MEDICAL EXAMINER

THE NORTHWESTERN MUTUAL LIFE
INSURANCE COMPANY • MILWAUKEE **NML**

## APPLICATION FOR
## POLICY CHANGE OR
## CORRECTION

720 East Wisconsin Avenue, Milwaukee, Wisconsin 53202

**Send through**
**General Agency to**
**Policy Change Division**

**To be used for:** reported or unreported change
reported or unreported correction
original date conversion

POLICY NO. (a) ~~D227462~~ D227462

INSURED
or Annuitant
(Please Print)    DONALD       E       ASTAR
First                          Middle Initial                Last

Check one:  ☑ Policy Change or Original Date Conversion
☐ Policy Correction

### CHANGE OR CORRECTION IN ADDITIONAL BENEFITS - LIFE OR ANNUITY

(POLICY NOT REQUIRED)

|  | Terminate | Attach | | Change | |
|---|---|---|---|---|---|
| 1A. Waiver of Premium | ☐ (b) | ☐ | | | |
| 1B. Additional Purchase | ☐ | ☐ (c) | $_____ (enter amount per option) | ☐ | $_____ (enter amount per option) |
| 1C. Accidental Death | ☐ | ☐ | $_____ (enter total amount) | ☐ | $_____ (enter total amount) |
| 1D. Decreasing Term | ☐ (d) | ☐ (e) | $_____ (initial amount and years) | ☐ | $_____ (initial amount and years) |
| 1E. { Increased Protection Convertible Protection 10 Yr. Term | ☐ (d) | | | ☐ | $_____ (term amount) |
| 1F. Payor Benefit | ☐ | ☐ (f) | | | |
| Applicant's Name _____ | | Date of Birth _____ Mo   Day   Year | | | |
| 1G. Retirement Income Benefit | ☐ (d) | ☐ | | | |
| 1H. Indexed Protection | ☐ | ☐ (g) | | | |

90-1279 (0381)

(a) Complete a form for each policy.
    For a merger, enter all policy numbers on this form.
(b) Any Additional Purchase also terminates.
(c) Policy must also have Waiver of Premium.
(d) Any related Accidental Death also terminates.
(e) Available only within 90 days of the issue date.
(f) Applicant must be person financially responsible for juvenile (presumably, a parent).
(g) Available only on policies dated 10/1/80 or later.

## THE NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY

### DIVIDEND ACCUMULATIONS/DIVIDEND ADDITIONS ⓑⓑ

22. Withdraw dividend accumulations
    - ☐ In full
    - ☐ For cash amount of $_____
    - ☐ For minimum amount to pay for change
    - ☐ For minimum amount to pay for change plus additional cash amount of $_____

23. Surrender paid-up additions ⓒⓒ
    - ☐ In full
    - ☐ For cash value of $_____
    - ☐ For face amount of additions of $_____
    - ☐ For minimum amount to pay for change

### CHANGE PROVISIONS

24. **Effective Date.** Any benefit attachment, change of insured, change from an annuity to insurance, increase in amount or any other change resulting in an increase in risk is effective as of the underwriting date defined in the Conditional Insurance Agreement bearing the same policy number and date as this application. Other changes are effective upon receipt by the Company of an Application for Policy Change acceptable to the Company. Applications for Policy Change will be acceptable subject to the conditions determined by the Company. This Application will be acceptable only if Company requirements place the Insured in the same or a lower premium classification than this policy or if the Owner agrees to pay any required extra premium or reserve charges.

25. **Incontestability and Suicide.** The incontestability paragraph of the policy and also the Suicide paragraph, if applicable, will apply to any increase in the amount at risk or change of insured or benefit attachment. For the purpose of these paragraphs, the date of issue will be considered to be the effective date of the change or attachment.

26. **Other Provisions and Assignments.** In all respects other than requested on this Application, the policy and any assignment of it will be unchanged.

27. **Tax Qualified change.** Check, if applicable ☐. Notwithstanding any provisions to the contrary, the annuity policy may not be changed at any time to a form of policy containing life insurance protection, nor may the policy be transferable by the Owner. The purpose of the latter provision is to qualify the policy as an annuity under section 401(g) of the Internal Revenue Code and will be so construed.

28. **Submission Waived.** Any provisions relating to submission of the policy will be deemed complied with when the Company has recorded this form and shown below that submission has been waived.

### OTHER CHANGES/CORRECTIONS/INSTRUCTIONS

29.

Signature of Owner(s)
or Applicant(s) ⓓⓓ _____

Signed on __8__ __28__ __81__ at __NORTH BROOK__ _____
    Mo   Day   Year       City             State

Signature of Licensed Agent _____ Agent's phone no. ( 312 ) 398 6030
                                                                     area code

District or detached agent stamp here
for direct mailing of correspondence.

### For Home Office Completion

FORM RECORDED AND SUBMISSION OF POLICY WAIVED      The Northwestern Mutual Life Insurance Company

Date _____      By _____

ⓑⓑ If the plan is Extra Ordinary Life and a reduction in amount has been requested, dividend additions will be continued in proportion to the reduction in amount. On plans other than Extra Ordinary Life, dividend accumulations or dividend additions will be continued unless withdrawal or surrender is requested. Dividend additions continued will be issued consistent with any plan change and without any increase in amount.

ⓒⓒ If the plan is Extra Ordinary Life, dividend additions may not be surrendered.

ⓓⓓ If the Owner or Applicant is a:
   a. corporation, the president, vice president, secretary or treasurer must sign unless a refund is payable to a party other than the corporation, then the president, vice president and the secretary or treasurer must sign. Enter the name of the corporation and titles of the officers.
   b. partnership, a partner other than the insured must sign.
   c. trustee, enter the full name of the trustee and title of the person signing.
   d. Applicant must sign if the first premium for this policy is being paid.

SCHEDULE OF BENEFITS AND PREMIUMS

DATE OF ISSUE — AUGUST 28, 1981

| PLAN AND ADDITIONAL BENEFITS | FULL BENEFIT PER MONTH | ANNUAL PREMIUM | YEARS PAYABLE |
|---|---|---|---|
| STEP RATE DISABILITY INCOME | $ 750 | $ 121.80 238.05 | 6 NEXT 30 |
| SOCIAL SECURITY SUBSTITUTE BENEFIT | 800 | 146.96 | 36 |

RENEWAL OF COVERAGE BEYOND AGE 65 MAY REQUIRE AN INCREASE IN THE PREMIUM.
SEE SECTION 3.

A PREMIUM IS PAYABLE ON THE POLICY DATE AND EVERY 12 MONTHS THEREAFTER.

THE FIRST PREMIUM IS    $271.67.   THIS INCLUDES A PREMIUM OF    $2.91 FOR
COVERAGE FROM THE DATE OF ISSUE TO THE POLICY DATE.

| | |
|---|---|
| BEGINNING DATE | 181ST DAY OF DISABILITY IN THE FIRST 360 DAYS AFTER THE START OF DISABILITY. |
| MAXIMUM BENEFIT PERIOD | TO SEPTEMBER  1, 2017, BUT NOT LESS THAN 24 MONTHS OF BENEFITS. |
| INITIAL PERIOD | 60 MONTHS OF BENEFITS, BUT NOT MORE THAN 24 MONTHS OF BENEFITS AFTER SEPTEMBER  1, 2015. |

OWNER                 DONALD E  ASTAR, THE INSURED

| INSURED | DONALD E  ASTAR | AGE AND SEX | 29    MALE |
|---|---|---|---|
| POLICY DATE | SEPTEMBER  1, 1981 | POLICY NUMBER | D 227 462 |
| EXCLUSIONS--SEE SECTION 2. | | | |

## SCHEDULE OF BENEFITS AND PREMIUMS

### DATE OF ISSUE — OCTOBER 8, 1981

| PLAN AND ADDITIONAL BENEFITS | FULL BENEFIT PER MONTH | ANNUAL PREMIUM | YEARS PAYABLE |
|---|---|---|---|
| STEP RATE DISABILITY INCOME | $ 750 | $ 121.80 238.05 | 6 NEXT 30 |
| INDEXED INCOME BENEFIT | | 54.83 | 36 |
| SOCIAL SECURITY SUBSTITUTE BENEFIT | 800 | 146.96 | 36 |
| INDEXED INCOME BENEFIT | | 35.12 | 36 |

RENEWAL OF COVERAGE BEYOND AGE 65 MAY REQUIRE AN INCREASE IN THE PREMIUM. SEE SECTION 3.

A PREMIUM IS PAYABLE ON THE POLICY DATE AND EVERY 12 MONTHS THEREAFTER.

THE FIRST PREMIUM IS   $358.71.

| | |
|---|---|
| BEGINNING DATE | 181ST DAY OF DISABILITY IN THE FIRST 360 DAYS AFTER THE START OF DISABILITY. |
| MAXIMUM BENEFIT PERIOD | TO SEPTEMBER 1, 2017, BUT NOT LESS THAN 24 MONTHS OF BENEFITS. |
| INITIAL PERIOD | 60 MONTHS OF BENEFITS, BUT NOT MORE THAN 24 MONTHS OF BENEFITS AFTER SEPTEMBER 1, 2015. |

OWNER              DONALD E  ASTAR, THE INSURED

| | | | |
|---|---|---|---|
| INSURED       : DONALD E  ASTAR | AGE AND SEX | 29     MALE |
| POLICY DATE      SEPTEMBER 1, 1981 | POLICY NUMBER | D 227 462 |
| EXCLUSIONS—SEE SECTION 2. | | |

THE NORTHWESTERN MUTUAL LIFE
INSURANCE COMPANY · MILWAUKEE 

720 East Wisconsin Avenue, Milwaukee, Wisconsin 53202

## APPLICATION FOR POLICY CHANGE OR CORRECTION

**Send through General Agency to Policy Change Division**

**To be used for:** reported or unreported change
reported or unreported correction
original date conversion

POLICY NO. ⓐ ___D Z Z 7 4 6 Z___

INSURED or Annuitant (Please Print) ___D O N A L D___ ___E___ ___A S T A R___
First      Middle Initial      Last

Check one: ☑ Policy Change or Original Date Conversion
☐ Policy Correction

### CHANGE OR CORRECTION IN ADDITIONAL BENEFITS - LIFE OR ANNUITY

(POLICY NOT REQUIRED)

| | Terminate | Attach | | Change | |
|---|---|---|---|---|---|
| 1A. Waiver of Premium | ☐ ⓑ | ☐ | | | |
| 1B. Additional Purchase | ☐ | ☐ ⓒ | $_____ (enter amount per option) | ☐ | $_____ (enter amount per option) |
| 1C. Accidental Death | ☐ | ☐ | $_____ (enter total amount) | ☐ | $_____ (enter total amount) |
| 1D. Decreasing Term | ☐ ⓓ | ☐ ⓔ | $_____ (initial amount and years) | ☐ | $_____ (initial amount and years) |
| 1E. Convertible Protection (Increased Protection) (10 Yr. Term) | ☐ ⓓ | | | ☐ | $_____ (term amount) |
| 1F. Payor Benefit | ☐ | ☐ ⓕ | | | |
|     Applicant's Name _____ Date of Birth ___/___/___ Mo Day Year | | | | | |
| 1G. Retirement Income Benefit | ☐ ⓓ | ☐ | | | |
| 1H. Indexed Protection | ☐ | ☐ ⓖ | | | |

90-1279 (0381)

ⓐ Complete a form for each policy.
    For a merger, enter all policy numbers on this form.
ⓑ Any Additional Purchase also terminates.
ⓒ Policy must also have Waiver of Premium.
ⓓ Any related Accidental Death also terminates.
ⓔ Available only within 90 days of the issue date.
ⓕ Applicant must be person financially responsible for juvenile (presumably, a parent).
ⓖ Available only on policies dated 10/1/80 or later.

# THE NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY

## DIVIDEND ACCUMULATIONS/DIVIDEND ADDITIONS (bb)

22. Withdraw dividend accumulations
☐ In full
☐ For cash amount of $ _____
☐ For minimum amount to pay for change
☐ For minimum amount to pay for change plus additional cash amount of $ _____

23. Surrender paid-up additions (cc)
☐ In full
☐ For cash value of $ _____
☐ For face amount of additions of $ _____
☐ For minimum amount to pay for change

## CHANGE PROVISIONS

24. **Effective Date.** Any benefit attachment, change of insured, change from an annuity to insurance, increase in amount or any other change resulting in an increase in risk is effective as of the underwriting date defined in the Conditional Insurance Agreement bearing the same policy number and date as this application. Other changes are effective upon receipt by the Company of an Application for Policy Change acceptable to the Company. Applications for Policy Change will be acceptable subject to the conditions determined by the Company. This Application will be acceptable only if Company requirements place the Insured in the same or a lower premium classification than this policy or if the Owner agrees to pay any required extra premium or reserve charges.

25. **Incontestability and Suicide.** The Incontestability paragraph of the policy and also the Suicide paragraph, if applicable, will apply to any increase in the amount at risk or change of insured or benefit attachment. For the purpose of these paragraphs, the date of issue will be considered to be the effective date of the change or attachment.

26. **Other Provisions and Assignments.** In all respects other than requested on this Application, the policy and any assignment of it will be unchanged.

27. **Tax Qualified change.** Check, if applicable ☐. Notwithstanding any provisions to the contrary, the annuity policy may not be changed at any time to a form of policy containing life insurance protection, nor may the policy be transferable by the Owner. The purpose of the latter provision is to qualify the policy as an annuity under section 401(g) of the Internal Revenue Code and will be so construed.

28. **Submission Waived.** Any provisions relating to submission of the policy will be deemed complied with when the Company has recorded this form and shown below that submission has been waived.

## OTHER CHANGES/CORRECTIONS/INSTRUCTIONS

29.

Signature of Owner(s) or Applicant(s) (dd) _____

Signed on __10__ __8__ __81__ at __NORTHBROOK,__ __IC__
Mo Day Year City State

Signature of Licensed Agent _David E. Young_ Agent's phone no. _312_ _398-6050_
area code

District or detached agent stamp here for direct mailing of correspondence.

### For Home Office Completion
FORM RECORDED AND SUBMISSION OF POLICY WAIVED    The Northwestern Mutual Life Insurance Company

Date _____ By _____

(bb) If the plan is Extra Ordinary Life and a reduction in amount has been requested, dividend additions will be continued in proportion to the reduction in amount. On plans other than Extra Ordinary Life, dividend accumulations or dividend additions will be continued unless withdrawal or surrender is requested. Dividend additions continued will be issued consistent with any plan change and without any increase in amount.

(cc) If the plan is Extra Ordinary Life, dividend additions may not be surrendered.

(dd) If the Owner or Applicant is a:
a. corporation, the president, vice president, secretary or treasurer must sign unless a refund is payable to a party other than the corporation; then the president, vice president and the secretary or treasurer must sign. Enter the name of the corporation and titles of the officers.
b. partnership, a partner other than the insured must sign.
c. trustee, enter the full name of the trustee and title of the person signing.
d. Applicant must sign if the first premium for this policy is being paid.

**INSURED**
(if not given on Form 90-3)

| D O N A L D | | | | E | | | | A S T A R |
|---|---|---|---|---|---|---|---|---|
| First | | | | Middle Initial | | | | Last |

## NONMEDICAL APPLICATIONS ONLY

To be completed by Insured or Informant

Details of "Yes" answers must be provided below in Details and Remarks section. Please provide all requested information including signs, symptoms, and diagnosis of any illness.

33. Have you ever been treated for or ever had any indication of: **Yes No**

A. Disorder of eyes, ears, nose, throat or mouth? ☐ ☒

B. Recurrent dizziness, fainting, convulsions, recurrent headache; speech defect, paralysis or stroke; mental or nervous disorder? . . . . . . . ☐ ☒

C. Persistent shortness of breath or cough, blood spitting; bronchitis, bronchiectasis, pleurisy, asthma, emphysema, tuberculosis or chronic respiratory disorder? . . . . . . . . . . . . . . . . . . ☐ ☒

D. Chest pain, discomfort or tightness, palpitation, high blood pressure, rheumatic fever, heart murmur, heart attack or other disorder of the heart or blood vessels? . . . . . . . . . . . ☐ ☒

E. Jaundice, intestinal bleeding; ulcer, hernia, colitis, diverticulitis, hemorrhoids, recurrent indigestion, or other disorder of the stomach, intestines, liver or gall bladder? . . . . . . . . . . ☐ ☒

F. Sugar, albumin, blood or pus in urine; venereal disease; stone or other disorder of kidney, bladder, prostate or reproductive organs? . . ☐ ☒

G. Diabetes; thyroid or other endocrine disorders? ☐ ☒

H. Neuritis, sciatica, rheumatism, arthritis, gout, or disorder of the muscles or bones, spine back or joints? . . . . . . . . . . . . . . . . . . . . . ☒ ☐

I. Deformity, lameness or amputation? . . . . . . . ☐ ☒

J. Disorder of skin, lymph glands, cyst, tumor, or cancer? . . . . . . . . . . . . . . . . . . . . . . . . ☐ ☒

K. Allergies; anemia or other disorder of the blood? ☐ ☒

34. Other than above, have you within the past 5 years:

A. Had any physician or practitioner, including your usual medical attendant, examine, advise, or treat you? . . . . . . . . . . . . . . . . . ☒ ☐

B. Been a patient in a hospital, clinic, or medical facility? . . . . . . . . . . . . . . . . . . . . . . . . ☒ ☐

C. Had electrocardiogram, X-ray, other diagnostic test? . . . . . . . . . . . . . . . . . . . . . . . **Yes** ☐ **No** ☒

D. Been advised to have any diagnostic test, hospitalization, or surgery which was not completed? ☐ ☒

35. Have you ever had military service deferment, rejection, or discharge because of a physical or mental condition? . . . . . . . . . . . . . . . . . . . ☐ ☒

36. Have you ever requested or received a pension, benefits, or payment because of an injury, sickness or disability? . . . . . . . . . . . . . . . . . . . . ☐ ☒

37. Have you ever regularly used barbiturates, narcotics, excitants or hallucinogens or ever sought treatment or been arrested for their use? . . . ☐ ☒

38. Have you ever sought help or treatment for alcoholic habit? . . . . . . . . . . . . . . . . . . . . . ☐ ☒

39. Family History: Tuberculosis, diabetes, cancer, high blood pressure, heart or kidney disease, mental illness or suicide? . . . . . . . . . . . . . ☒ ☐

| | Age if Living | Cause of Death | Age at Death |
|---|---|---|---|
| Father | | | |
| Mother | | | |
| Brothers and Sisters | | | |

40. A. Have you lost any weight in the past year? . . ☐ ☒
Loss _____ lbs. How long present weight constant? _____
B. Height 5 ft. 8 in. C. Weight 176 lbs.
Did agent measure? . . . . . . . . . . . . . . . . . ☐ ☒
Did agent weigh? . . . . . . . . . . . . . . . . . . . ☐ ☒

41. Answer the following, if applicable: **Yes No**
A. Have you had any disorder of menstruation or complication of pregnancy? . . . . . . . . . ☐ ☐
B. Are you now pregnant? . . . . . . . . . . . . . . . ☐ ☐
Anticipated delivery date:

42. If Insured Under Age 1
Was the Insured's birth abnormal or premature? ☐ ☐
If "Yes" Weight at birth: _____ lbs. _____ oz.
Number of months premature?

43. Name and address of your personal physician:
Name DR. Edward Abdulaldin
Street No. or RFD 543 Orchard Lane
City, State & Zip Code Antioch, Il 60002

If none, check: ☐ **NONE**

## 44. DETAILS AND REMARKS.

| QUESTION NUMBER | NAME AND ADDRESS OF ANY ATTENDING PHYSICIAN | REASON | DATE & DURATION | RESULTS |
|---|---|---|---|---|
| 33H, 34B | Dislocation @ Shoulder | Surgery | 1973 | AoK |
| 34A | Check for rectal polyp | nothing found | 1978 | AoK |
| 39 | Grandmother died 1980 from cancer | | | |
| | No medical consultation since end of care of 7/20/81 for NML Policy. | | | |

I, the Agent, declare that the Insured or Informant signed this document in my presence and that the Insured was present and seen by me at the time this form was completed.

_____
Signature of Licensed Agent

Signed at Northbrook Il on 10/14/81

(1) I declare that my answers and statements (contained on both sides of this page) are correctly recorded, complete and true to the best of my knowledge and belief.

(2) I authorize any physician, hospital, or other medically related facility, the MIB, Inc., or other insurance company, organization, institution or person, that has any records or knowledge concerning me or my health; including prior medical history, to give such information to The Northwestern Mutual Life Insurance Company, or its reinsurer.

125 S. Wilke, Suite 103
Arlington Heights, IL 60005
Telephones:
Office, 312 398-6030
Home, 312 698-3699

THE NORTHWESTERN MUTUAL LIFE
INSURANCE COMPANY ▪ MILWAUKEE  NML

**DAVID E. KRUEGER, Agent**

Harry P. Hoopis, CLU, General Agent
Gary W. Kaufman, CLU, District Agent

*11. 9. 81*

*Don —*

*Please Attach To Your Policy.*

*Dave*

# AMENDMENT OF APPLICATION

THE NORTHWESTERN MUTUAL LIFE
INSURANCE COMPANY·MILWAUKEE · NML

720 East Wisconsin Avenue, Milwaukee, Wisconsin 53202·

| | | | |
|---|---|---|---|
| Policy No. | D 227 462 CB | Date | July 1, 1981 |
| Insured | Donald E. Astar | G.A. No. | 21 |
| | | Sol. Agent No. | 45710 |

Supplementing and amending this application    I understand that NML cannot issue this
policy unless the insurance listed below is terminated on its premium due date.
NML may rely on my agreement to terminate the insurance listed below on its premium
due date.

| Insurer | Amount | Premium Due Date |
|---|---|---|
| Allstate | $1,100 | August 1, 1981 |

I authorize NML to contact the listed Insurer after the premium due date to confirm
the above statement.

This amendment is to be attached to and made part of this application

Date Signed _____|_____|_____          Signed _____ *Donald E. Astar* _____
                   Month    Day    Year                          Donald E. Astar

                    Signature of Insured if other than Applicant _____

DH:pd

17-0055 (rev. 1/77)

GENERAL AGENT'S FILE COPY

¶‡DISABILITY INCOME PLAN, NON-CANCELLABLE AND GUARANTEED RENEWABLE TO AGE 65
FOR DON ASTAR   AGE 37

FULL BENEFIT FOR TOTAL DISABILITY @
MONTHLY DISABILITY BENEFIT   $3,250

ANNUALIZED BENEFIT         $39,000

| AGE | BEG. OF YEAR | 1 ANNUAL PREMIUM | 2 DIVIDEND* | 3 CASH OUTLAY* | 4 AVERAGE CASH OUTLAY* |
|-----|------|--------|---------|---------|---------|
| 37 | 1 | $883 | $0 | $883 | $883 |
| 38 | 2 | 883 | 0 | 883 | 883 |
| 39 | 3 | 1509 | 150 | 1359 | 1042 |
| 40 | 4 | 1509 | 166 | 1343 | 1117 |
| 41 | 5 | 1509 | 181 | 1328 | 1159 |
| 45 | 9 | 1509 | 241 | 1268 | 1218 |
| 50 | 14 | 1509 | 316 | 1192 | 1219 |
| 55 | 19 | 1509 | 392 | 1117 | 1200 |
| 60 | 24 | 1509 | 468 | 1041 | 1174 |
| 65 | 29 | 0 | 543 | 543CR | 1130 |

STEP RATE PLAN - FORM NUMBER MM D1 @

| | |
|---|---|
| BENEFIT PERIOD........................... | TO AGE 65 |
| DAY OF DIS. WHEN BENEFITS BEGIN TO ACCRUE | 91 |
| INITIAL ANNUAL PREMIUM.................... | $883.35 |
| INITIAL MONTHLY ISA PAYMENT.............. | $75.87 |

| INITIAL ANNUAL PREMIUMS | TOTAL | PER $100 |
|---|---|---|
| BASE POLICY | | |
| MONTHLY BENEFIT | $3,250 | |
| PREMIUM PAYABLE TO AGE 39 | $883.35 | $27.18 |
| PREMIUM PAYABLE 39 TO 65 | $1509.30 | $46.44 |
| | | |
| INDEXED INCOME BENEFIT | | |
| INIT. BASE PREM. PAYABLE | 380.25 | 11.70 |
| ULTIMATE BASE PREMIUM | 462.15 | 14.22 |
| | | |
| ADDITIONAL PURCHASE BENEFIT | | |
| AMOUNT OF EACH OPTION | 2,000 | |
| PREMIUM PAYABLE TO AGE 50 | 122.40 | 6.12 |

------------------------------------------------------

INITIAL PREMIUMS FOR ALTERNATE BEGINNING DATES

| | 31 | 61 | 181 | 366 |
|---|---|---|---|---|
| TOTAL | $1,512.23 | $1,108.58 | $786.83 | $699.08 |
| BASE POLICY | 1,512.23 | 1,108.58 | 786.83 | 699.08 |

------------------------------------------------------
INITIAL PERIOD FOR OWN OCCUPATION TO AGE 65

*ILLUSTRATED DIVIDENDS (1990 SCALE) REFLECT CLAIM, EXPENSE AND INVESTMENT EXPERIENCE AND ARE NOT ESTIMATES OR GUARANTEES
 OF FUTURE RESULTS. THIS ILLUSTRATION DOES NOT REFLECT THAT MONEY IS PAID AND RECEIVED AT DIFFERENT TIMES. MUST BE
 ACCOMPANIED BY OUTLINE OF COVERAGE FOR FORM MM D1.
@ILLUSTRATED MONTHLY BENEFITS AND PREMIUMS SUBJECT TO UNDERWRITING GUIDELINES AND ISSUE LIMITS AS STATED IN THE RATEBOOK
MM90     4A+     INCLUDES NON-SMOKER DISCOUNT OF $88.34     3/13/90     SUBMITTED BY  GARY W KAUFMAN, CLU, CHFC

¶‡DISABILITY INCOME PLAN, NON-CANCELLABLE AND GUARANTEED RENEWABLE TO AGE 65
FOR DON ASTAR   AGE 37

FULL BENEFIT FOR TOTAL DISABILITY @
MONTHLY DISABILITY BENEFIT   $3,250

ANNUALIZED BENEFIT            $39,000

| AGE | BEG. OF YEAR | 1 ANNUAL PREMIUM | 2 DIVIDEND* | 3 CASH OUTLAY* | 4 AVERAGE CASH OUTLAY* |
|-----|------|--------|----------|---------|---------|
| 37 | 1 | $1381 | $0 | $1381 | $1381 |
| 38 | 2 | 1381 | 0 | 1381 | 1381 |
| 39 | 3 | 1381 | 138 | 1242 | 1335 |
| 40 | 4 | 1381 | 151 | 1229 | 1308 |
| 41 | 5 | 1381 | 165 | 1215 | 1289 |
| 45 | 9 | 1381 | 221 | 1160 | 1241 |
| 50 | 14 | 1381 | 289 | 1091 | 1197 |
| 55 | 19 | 1381 | 358 | 1022 | 1158 |
| 60 | 24 | 1381 | 428 | 953 | 1121 |
| 65 | 29 | 0 | 496 | 497CR | 1074 |

LEVEL PREMIUM PLAN - FORM NUMBER MM D1 @
BENEFIT PERIOD.......................... TO AGE 65
DAY OF DIS. WHEN BENEFITS BEGIN TO ACCRUE      91
INITIAL ANNUAL PREMIUM.................. $1,380.60
INITIAL MONTHLY ISA PAYMENT.............   $118.43

| INITIAL ANNUAL PREMIUMS | TOTAL | PER $100 |
|-------------------------|-------|----------|
| BASE POLICY | | |
| MONTHLY BENEFIT | $3,250 | |
| PREMIUM PAYABLE TO AGE 65 | $1380.60 | $42.48 |
| | | |
| INDEXED INCOME BENEFIT | | |
| BASE PREMIUM PAYABLE | 444.60 | 13.68 |
| | | |
| ADDITIONAL PURCHASE BENEFIT | | |
| AMOUNT OF EACH OPTION | 2,000 | |
| PREMIUM PAYABLE TO AGE 50 | 122.40 | 6.12 |

INITIAL PREMIUMS FOR ALTERNATE BEGINNING DATES

| | 31 | 61 | 181 | 366 |
|-------------|----------|----------|----------|----------|
| TOTAL | $2,231.78 | $1,661.40 | $1,222.65 | $1,082.25 |
| BASE POLICY | 2,231.78 | 1,661.40 | 1,222.65 | 1,082.25 |

INITIAL PERIOD FOR OWN OCCUPATION TO AGE 65

*ILLUSTRATED DIVIDENDS (1990 SCALE) REFLECT CLAIM, EXPENSE AND INVESTMENT EXPERIENCE AND ARE NOT ESTIMATES OR GUARANTEES
OF FUTURE RESULTS. THIS ILLUSTRATION DOES NOT REFLECT THAT MONEY IS PAID AND RECEIVED AT DIFFERENT TIMES. MUST BE
ACCOMPANIED BY OUTLINE OF COVERAGE FOR FORM MM D1.
@ILLUSTRATED MONTHLY BENEFITS AND PREMIUMS SUBJECT TO UNDERWRITING GUIDELINES AND ISSUE LIMITS AS STATED IN THE RATEBOOK
MM90      4A+      INCLUDES NON-SMOKER DISCOUNT OF $138.06      3/13/90      SUBMITTED BY  GARY W KAUFMAN, CLU, CHFC

¶⒊DISABILITY INCOME PLAN, NON-CANCELLABLE AND GUARANTEED RENEWABLE TO AGE 65
FOR DONALD ASTAR    AGE 38

FULL BENEFIT FOR TOTAL DISABILITY @
MONTHLY DISABILITY BENEFIT  $1,125

ANNUALIZED BENEFIT          $13,500

LEVEL PREMIUM PLAN - FORM NUMBER MN D1 @
BENEFIT PERIOD.......................... TO AGE 65
DAY OF DIS. WHEN BENEFITS BEGIN TO ACCRUE       91
INITIAL ANNUAL PREMIUM..................   $499.16
INITIAL MONTHLY ISA PAYMENT.............   $42.98

| AGE | BEG. OF YEAR | 1 ANNUAL PREMIUM | 2 DIVIDEND* | 3 CASH OUTLAY* |
|---|---|---|---|---|
| 38 | 1 | $499 | $0 | $499 |
| 39 | 2 | 499 | 0 | 499 |
| 40 | 3 | 499 | 49 | 449 |
| 41 | 4 | 499 | 54 | 444 |
| 42 | 5 | 499 | 59 | 439 |
| 45 | 8 | 499 | 74 | 424 |
| 50 | 13 | 499 | 99 | 399 |
| 55 | 18 | 499 | 124 | 374 |
| 60 | 23 | 499 | 149 | 349 |
| 65 | 28 | 0 | 174 | 175CR |

| INITIAL ANNUAL PREMIUMS | TOTAL | PER $100 |
|---|---|---|
| BASE POLICY | | |
| MONTHLY BENEFIT | $1,125 | |
| PREMIUM PAYABLE TO AGE 65 | $499.16 | $44.37 |
| INDEXED INCOME BENEFIT | | |
| BASE PREMIUM PAYABLE | 156.94 | 13.95 |
| ADDITIONAL PURCHASE BENEFIT | | |
| AMOUNT OF EACH OPTION | 1,125 | |
| PREMIUM PAYABLE TO AGE 50 | 71.89 | 6.39 |

INITIAL PREMIUMS FOR ALTERNATE BEGINNING DATES

| | 31 | 61 | 181 | 366 |
|---|---|---|---|---|
| TOTAL | $804.94 | $600.41 | $442.46 | $391.84 |
| BASE POLICY | 804.94 | 600.41 | 442.46 | 391.84 |

INITIAL PERIOD FOR OWN OCCUPATION TO AGE 65

*ILLUSTRATED DIVIDENDS (1990 SCALE) REFLECT CLAIM, EXPENSE AND INVESTMENT EXPERIENCE AND ARE NOT ESTIMATES OR GUARANTEES
OF FUTURE RESULTS. THIS ILLUSTRATION DOES NOT REFLECT THAT MONEY IS PAID AND RECEIVED AT DIFFERENT TIMES. MUST BE
ACCOMPANIED BY OUTLINE OF COVERAGE FOR FORM MN D1.
@ILLUSTRATED MONTHLY BENEFITS AND PREMIUMS SUBJECT TO UNDERWRITING GUIDELINES AND ISSUE LIMITS AS STATED IN THE RATEBOOK
MN90        4A+      INCLUDES NON-SMOKER DISCOUNT OF $49.92      3/26/90     SUBMITTED BY  GARY W KAUFMAN, CLU, CHFC

THE EQUITABLE

PREMIUM BREAKDOWN

DON ASTAR                                              AGE · 29

BASE BENEFIT:        $750 PER MONTH     180 DAY E.P. PLAN: PL65

ADDITIONAL BENEFITS: $800 SSS (180 EP)


BASE POLICY BENEFIT ............................     $198.00
OPTIONAL BENEFITS:
    $800  Social Security Suppl( 180EP) ...........     $119.20
POLICY FEE .....................................     $15.00

TOTAL ANNUAL PREMIUM BEFORE DISCOUNTS ...........     $332.20
Non-Smoker Discount ...........................     -$23.25
TOTAL ANNUAL PREMIUM ..........................     $308.95
TOTAL SEMI-ANNUAL PREMIUM .....................     $157.56
TOTAL QUARTERLY PREMIUM .......................     $80.33

TOTAL MONTHLY S/M PREMIUM .......................     $26.26


SELECT OCCUPATIONAL CLASS


-----------------------------------------------------------------

February  20, 1990          Page  1              The EQUITABLE
                            V3.00

THE EQUITABLE

PREMIUM BREAKDOWN

DON ASTAR

AGE   33

BASE BENEFIT:        $700 PER MONTH     180 DAY E.P. PLAN: PL65

ADDITIONAL BENEFITS: $1400 GIR

BASE POLICY BENEFIT ..............................        $212.10
OPTIONAL BENEFITS:
   $1400  Guaranteed Insurability ..................        $12.73
POLICY FEE .......................................        $15.00

TOTAL ANNUAL PREMIUM BEFORE DISCOUNTS .............        $239.83
Non-Smoker Discount ............................        -$16.79
TOTAL ANNUAL PREMIUM .............................        $223.04
TOTAL SEMI-ANNUAL PREMIUM ........................        $113.75
TOTAL QUARTERLY PREMIUM ..........................        $57.99

TOTAL MONTHLY S/M PREMIUM ........................        $18.96

THE   PREMIUM   SHOWN   FOR THE GUARANTEED INSURABILITY   RIDER   IS
PAYABLE   TO   THE   POLICY   ANNIVERSARY   FOLLOWING   YOUR   50TH
BIRTHDAY.

SELECT OCCUPATIONAL CLASS

-----------------------------------------------------------------

February   20, 1990              Page  1                 The EQUITABLE
                                 V3.00

POLICY DATA REVIEW

FOR

DONALD ASTAR

PREPARED BY

GARY W KAUFMAN, CLU CHFC
FLR1 FRT
520 S NW HIGHWAY
BARRINGTON      IL 60010

AUGUST 15, 1990

0001(0001)

POLICY DATA REVIEW    SUMMARY OF DISABILITY CONTRACTS

VALUES AS OF AUG 30, 1990

| ISA/POLICY NUMBERS | DIS BENEFIT/PLAN | | INSURED NAME | POLICY DATE |
|---|---|---|---|---|
| ISA 2 623 246 | | | | |
| D 227 462 | 1,550 | STEP RATE | DONALD E ASTAR | SEP 1, 1981 |
| D 429 516 | 700 | DI | DONALD E ASTAR | OCT 2, 1985 |
| D 741 687 | 1,125 | DI | DONALD E ASTAR | MAR 28, 1990 |

INSURANCE BENEFIT
  BASE POLICY                    2,575
  SOC SEC SUB BENEFIT/PLAN    800
      TOTAL MONTHLY BENEFIT   3,375

PAYMENT
  BASE POLICY                  909.88
  INDEXED INCOME            89.95
  ADDITIONAL PURCHASE BENEFIT  28.70
  SOC SEC SUB BENEFIT/PLAN    146.96

  TOTAL ANNUAL PAYMENTS    1,175.49
  LESS DIVIDENDS APPLIED TO
    REDUCE PREMIUMS*       48.84
  NET ANNUALIZED PAYMENT   1,126.65

MISCELLANEOUS INFORMATION
  *INCLUDES NEXT DIVIDEND. DIVIDEND REFLECTS
   CURRENT CLAIM, EXPENSE AND INVESTMENT
   EXPERIENCE AND IS NOT AN ESTIMATE OR
   GUARANTEE OF FUTURE RESULTS. DIVIDEND MAY
   BE LARGER OR SMALLER THAN THAT ILLUSTRATED.

PREPARED 08/15/90

Summary Illustration for Policy Numbers     D-227-462    D-429-516    D-741-687

| Calendar Year | 1 Monthly Benefit | 2 Annual Premium | 3 Divi-dend* | 4 Annual Cash Outlay* | 5 Average Outlay From 1991* |
|---|---|---|---|---|---|
| 1991 | 3375 | 1175 | 51 | 1124 | 1080 |
| 1992 | 3375 | 1175 | 104 | 1071 | 1076 |
| 1993 | 3375 | 1175 | 115 | 1060 | 1070 |
| 1994 | 3375 | 1175 | 127 | 1048 | 1065 |
| 1995 | 3375 | 1175 | 138 | 1037 | 1059 |
| 1996 | 3375 | 1175 | 150 | 1025 | 1054 |
| 1997 | 3375 | 1175 | 161 | 1014 | 1048 |
| 1998 | 3375 | 1175 | 173 | 1002 | 1042 |
| 1999 | 3375 | 1175 | 184 | 991 | 1036 |
| 2000 | 3375 | 1175 | 196 | 979 | 1031 |
| 2001 | 3375 | 1175 | 207 | 968 | 1025 |
| 2002 | 3375 | 1147 | 219 | 928 | 1017 |
| 2003 | 3375 | 1147 | 230 | 916 | 1009 |
| 2004 | 3375 | 1147 | 241 | 905 | 1002 |
| 2005 | 3375 | 1147 | 253 | 893 | 995 |
| 2006 | 3375 | 1147 | 264 | 882 | 987 |
| 2007 | 3375 | 1147 | 276 | 870 | 981 |
| 2008 | 3375 | 1147 | 287 | 859 | 974 |
| 2009 | 3375 | 1147 | 299 | 848 | 967 |
| 2010 | 3375 | 1147 | 310 | 836 | 961 |
| 2015 | 3375 | 1147 | 368 | 779 | 929 |

*Illustrated dividends (1990 Scale) reflect claim, expense and investment experience and are not estimates or guarantees of future results. They may be larger or smaller than those illustrated. This illustration does not reflect that money is paid and received at different times.

8/15/1990                                           Agent  GARY W KAUFMAN, CLU CHFC
0009(0009)

POLICY DATA REVIEW AS OF AUG 30, 1990

INSURED      DONALD E  ASTAR                    MISCELLANEOUS INFORMATION
OWNER        DONALD E  ASTAR                       DIVIDENDS REDUCE PREMIUMS

PLAN              STEP RATE DISABILITY INCOME    *INCLUDES 1990 DIVIDEND. DIVIDEND REFLECTS
POLICY NUMBER                      D 227 462      CURRENT CLAIM, EXPENSE AND INVESTMENT
POLICY DATE                     SEP 1, 1981       EXPERIENCE AND IS NOT AN ESTIMATE OR
PREMIUM PAID BY INSURANCE SERVICE ACCT 2623246    GUARANTEE OF FUTURE RESULTS. DIVIDEND MAY
AGE AT ISSUE                            29        BE LARGER OR SMALLER THAN THAT ILLUSTRATED.

INSURANCE BENEFIT                                OCCUPATIONAL CLASS 3A
   BASE POLICY                          750      INITIAL PERIOD - 5 YEARS
   SOC SEC SUB BENEFIT/PLAN             800
      TOTAL MONTHLY BENEFIT           1,550
   BEGINNING DATE                 181 DAYS
   BENEFIT PERIOD                  TO AGE 65

PAYMENT - POLICY YEAR BEGINNING 1989
   FREQUENCY                      ANNUAL/ISA
   BASE POLICY                        238.05
   INDEXED INCOME                      89.95
   SOC SEC SUB BENEFIT/PLAN           146.96

   TOTAL ANNUAL PAYMENT               474.96
   LESS 1990 DIVIDEND*                 35.40
   NET AMOUNT PAID                    439.56

PREPARED 08/15/90

0002(0002)

```
Illustration for Policy Number D-227-462      $750  Step Rate Disability Income
                                              $800  Social Security Substitute
Insured   DONALD E ASTAR                  Male Age 29   Policy Date  9/01/1981

Current Annual Premium $ 474.96 Including Indexed Income
```

| Beg. of Year | As of 9/01 | 1 Monthly Benefit | 2 Annual Premium | 3 Divi-dend* | 4 Annual Cash Outlay* | 5 Average Outlay From 1990* |
|---|---|---|---|---|---|---|
| 10 | 1990 | 1550 | 475 | 35 | 440 | 440 |
| 11 | 1991 | 1550 | 475 | 40 | 435 | 437 |
| 12 | 1992 | 1550 | 475 | 44 | 430 | 435 |
| 13 | 1993 | 1550 | 475 | 49 | 425 | 432 |
| 14 | 1994 | 1550 | 475 | 54 | 421 | 430 |
| 15 | 1995 | 1550 | 475 | 59 | 416 | 428 |
| 16 | 1996 | 1550 | 475 | 63 | 411 | 425 |
| 17 | 1997 | 1550 | 475 | 68 | 406 | 423 |
| 18 | 1998 | 1550 | 475 | 73 | 402 | 421 |
| 19 | 1999 | 1550 | 475 | 78 | 397 | 418 |
| 20 | 2000 | 1550 | 475 | 82 | 392 | 416 |
| 21 | 2001 | 1550 | 475 | 87 | 387 | 414 |
| 22 | 2002 | 1550 | 475 | 92 | 383 | 411 |
| 23 | 2003 | 1550 | 475 | 97 | 378 | 409 |
| 24 | 2004 | 1550 | 475 | 101 | 373 | 406 |
| 29 | 2009 | 1550 | 475 | 125 | 349 | 395 |
| | | | | | SUM FROM 1990 | |
| @60 | 2012 | 1550 | 475 | 139 | 8910 | 387 |
| @65 | 2017 | 1550 | 0 | 163 | 10039 | 359 |

```
Full Benefit for Total Disability
   Monthly Disability Benefit       750
   Social Security Substitute       800**
      Total Monthly Benefit       1,550**
   Annualized Benefit            18,600**
**Subject to terms of the Social Security
   Substitute Benefit


Occupation Class                        3A
Initial Period                     5 Years
Beginning Date                         181
Benefit Period                   To Age 65
```

*Illustrated dividends (1990 Scale) reflect claim, expense and investment experience and are not estimates or guarantees of future results. They may be larger or smaller than those illustrated. This illustration does not reflect that money is paid and received at different times.

```
    8/15/1990                          Agent  GARY W KAUFMAN, CLU CHFC
0003(0003)
```

Case: 1:18-cv-04895 Document #: 1-1 Filed: 07/18/18 Page 43 of 121 PageID #:48

POLICY DATA REVIEW AS OF AUG 30, 1990

INSURED        DONALD E  ASTAR
OWNER          DONALD E  ASTAR

PLAN                              DISABILITY INCOME
POLICY NUMBER                     D 429 516
POLICY DATE                       OCT  2, 1985
PREMIUM PAID BY INSURANCE SERVICE ACCT 2623246
AGE AT ISSUE                              33

INSURANCE BENEFIT
  BASE POLICY                            700
     TOTAL MONTHLY BENEFIT               700
  BEGINNING DATE                    181 DAYS
  BENEFIT PERIOD                    TO AGE 65

PAYMENT - POLICY YEAR BEGINNING 1989
  FREQUENCY                         ANNUAL/ISA
  BASE POLICY                          207.20
  ADDITIONAL PURCHASE BENEFIT           28.70

  TOTAL ANNUAL PAYMENT                 235.90
  LESS 1989 DIVIDEND                    13.44
  NET AMOUNT PAID                      222.46

MISCELLANEOUS INFORMATION
  DIVIDENDS REDUCE PREMIUMS
  AGGREGATE APB REMAINING 1,400
     NEXT PURCHASE DATE      OCT  2, 1997
     OPTION AMOUNT                      700
  EXCLUSION RIDER          MEDICAL

  ISSUED ON A SEX-NEUTRAL BASIS

  INCLUDES 1989 DIVIDEND. DIVIDEND REFLECTS
  CURRENT CLAIM, EXPENSE AND INVESTMENT
  EXPERIENCE AND IS NOT AN ESTIMATE OR
  GUARANTEE OF FUTURE RESULTS. DIVIDEND MAY
  BE LARGER OR SMALLER THAN THAT ILLUSTRATED.

  OCCUPATIONAL CLASS 3A
  INITIAL PERIOD - 5 YEARS

PREPARED 08/15/90

0004(0004)

Illustration for Policy Number D-429-516      $700   Disability Income

Insured    DONALD E ASTAR        Male Age 33     Policy Date 10/02/1985

Current Annual Premium $ 235.90 Including $700 Additional Purchase

| Beg. of Year | As of 10/02 | 1 Monthly Benefit | 2 Annual Premium | 3 Divi- dend* | 4 Annual Cash Outlay* | 5 Average Outlay From 1990* |
|---|---|---|---|---|---|---|
| 6 | 1990 | 700 | 236 | 8 | 227 | 227 |
| 7 | 1991 | 700 | 236 | 10 | 225 | 226 |
| 8 | 1992 | 700 | 236 | 13 | 223 | 225 |
| 9 | 1993 | 700 | 236 | 15 | 221 | 224 |
| 10 | 1994 | 700 | 236 | 17 | 219 | 223 |
| 11 | 1995 | 700 | 236 | 19 | 217 | 222 |
| 12 | 1996 | 700 | 236 | 21 | 215 | 221 |
| 13 | 1997 | 700 | 236 | 23 | 213 | 220 |
| 14 | 1998 | 700 | 236 | 25 | 210 | 219 |
| 15 | 1999 | 700 | 236 | 27 | 208 | 218 |
| 16 | 2000 | 700 | 236 | 29 | 206 | 217 |
| 17 | 2001 | 700 | 236 | 31 | 204 | 216 |
| 18 | 2002 | 700 | 207 | 33 | 173 | 212 |
| 19 | 2003 | 700 | 207 | 35 | 171 | 209 |
| 20 | 2004 | 700 | 207 | 37 | 169 | 207 |
| 25 | 2009 | 700 | 207 | 48 | 159 | 196 |
| | | | | | SUM FROM 1990 | |
| @60 | 2012 | 700 | 207 | 54 | 4381 | 190 |
| @65 | 2017 | 700 | 0 | 64 | 4906 | 175 |

Full Benefit for Total Disability
Monthly Disability Benefit     700
Annualized Benefit     8,400

Occupation Class         3A
Initial Period        5 Years
Beginning Date        181
Benefit Period     To Age 65

*Illustrated dividends (1990 Scale) reflect claim, expense and investment experience and are not estimates or guarantees of future results. They may be larger or smaller than those illustrated. This illustration does not reflect that money is paid and received at different times.

8/15/1990                             Agent   GARY W KAUFMAN, CLU CHFC
0005(0005)

POLICY DATA REVIEW AS OF AUG 30, 1990

INSURED        DONALD E  ASTAR                    MISCELLANEOUS INFORMATION
OWNER          DONALD E  ASTAR                      DIVIDENDS REDUCE PREMIUMS
                                                    EXCLUSION RIDER        MEDICAL
PLAN                          DISABILITY INCOME
POLICY NUMBER                        D 741 687     ISSUED ON A SEX-NEUTRAL BASIS
POLICY DATE                       MAR 28, 1990
PREMIUM PAID BY INSURANCE SERVICE ACCT 2623246     OCCUPATIONAL CLASS 3A
AGE AT ISSUE                                38     INITIAL PERIOD - 5 YEARS

INSURANCE BENEFIT
   BASE POLICY                         1,125
      TOTAL MONTHLY BENEFIT            1,125
   BEGINNING DATE                   181 DAYS
   BENEFIT PERIOD                  TO AGE 65

PAYMENT - POLICY YEAR BEGINNING 1990
   FREQUENCY                      ANNUAL/ISA
   BASE POLICY                       464.63
   TOTAL ANNUAL AMOUNT PAID          464.63

PREPARED 08/15/90

0006(0006)

Illustration for Policy Number D-741-687     $1,125  Disability Income

Insured   DONALD E  ASTAR                Male Age 38    Policy Date  3/28/1990

Current Annual Premium $ 464.63

| Beg. of Year | As of 3/28 | 1 Monthly Benefit | 2 Annual Premium | 3 Divi-dend* | 4 Annual Cash Outlay* | 5 Average Outlay From 1991* |
|---|---|---|---|---|---|---|
| 2 | 1991 | 1125 | 465 | 0 | 465 | 465 |
| 3 | 1992 | 1125 | 465 | 46 | 418 | 441 |
| 4 | 1993 | 1125 | 465 | 51 | 414 | 432 |
| 5 | 1994 | 1125 | 465 | 55 | 409 | 426 |
| 6 | 1995 | 1125 | 465 | 60 | 404 | 422 |
| 7 | 1996 | 1125 | 465 | 65 | 400 | 418 |
| 8 | 1997 | 1125 | 465 | 69 | 395 | 415 |
| 9 | 1998 | 1125 | 465 | 74 | 390 | 412 |
| 10 | 1999 | 1125 | 465 | 78 | 386 | 409 |
| 11 | 2000 | 1125 | 465 | 83 | 381 | 406 |
| 12 | 2001 | 1125 | 465 | 88 | 376 | 403 |
| 13 | 2002 | 1125 | 465 | 92 | 372 | 401 |
| 14 | 2003 | 1125 | 465 | 97 | 367 | 398 |
| 15 | 2004 | 1125 | 465 | 102 | 362 | 396 |
| 16 | 2005 | 1125 | 465 | 106 | 358 | 393 |
| 21 | 2010 | 1125 | 465 | 130 | 335 | 381 |
|  |  |  |  | SUM FROM 1991 |  |  |
| @60 | 2012 | 1125 | 465 | 139 | 8270 | 376 |
| @66 | 2018 | 1125 | 0 | 167 | 9659 | 345 |

Full Benefit for Total Disability
| | |
|---|---|
| Monthly Disability Benefit | 1,125 |
| Annualized Benefit | 13,500 |

| | |
|---|---|
| Occupation Class | 3A |
| Initial Period | 5 Years |
| Beginning Date | 181 |
| Benefit Period | To Age 65 |

*Illustrated dividends (1990 Scale) reflect claim, expense and investment experience and are not
estimates or guarantees of future results. They may be larger or smaller than those illustrated.
This illustration does not reflect that money is paid and received at different times.

8/15/1990                              Agent  GARY W KAUFMAN, CLU CHFC
0007(0007}



POLICY DATA REVIEW

FOR

DONALD ASTER

PREPARED BY

JAMES P NOE CLU
STE 103
125 S WILKE RD
ARLINGTON HTS    IL 60005

SEPTEMBER 25, 1985

0022

THE NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY • Milwaukee



**Northwestern Mutual Life**

POLICY DATA REVIEW AS OF LAST ANNIVERSARY DATE SEP 1, 1985

INSURED      DONALD E  ASTAR
OWNER       DONALD E  ASTAR

PLAN            STEP RATE DISABILITY INCOME
POLICY NUMBER              D 227 462
POLICY DATE               SEP 1, 1981
PREMIUM PAID BY INSURANCE SERVICE ACCT 2623246
AGE AT ISSUE                      29

INSURANCE BENEFIT
   BASE POLICY                     750
   SOCIAL SECURITY SUBSTITUTE      800
      TOTAL MONTHLY BENEFIT      1,550
   BENEFIT STARTS    181 DAYS AFTER DISABILITY
   BENEFIT PERIOD              TO AGE 65

PAYMENT - POLICY YEAR BEGINNING 1985
   FREQUENCY                 ANNUAL/ISA
   BASE POLICY                  121.80
   INDEXED INCOME                89.95
   SOCIAL SECURITY SUBSTITUTE   146.96

   TOTAL ANNUAL PAYMENT         358.71
   LESS 1985 DIVIDEND            41.78
   NET AMOUNT PAID              316.93

MISCELLANEOUS INFORMATION
   DIVIDENDS REDUCE PREMIUMS

   FIGURES MAY NOT REFLECT ACTUAL SEP 1, 1985
   VALUES DUE TO SUBSEQUENT TRANSACTIONS

   INCLUDES 1985 DIVIDEND.  NOT AN ESTIMATE OR
   GUARANTEE OF FUTURE RESULTS.

OCCUPATIONAL CLASS AAA
INITIAL PERIOD - 5 YEARS

$ 700/M
207.80/YR

APB  28.70/YR

235.90/YR

46.07/Month

PREPARED 09/25/85

0023

THE NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY • Milwaukee

101 S. Hough St.
Suite 1
Barrington, Illinois 60010
Telephone: 847-382-8600



**GARY W. KAUFMAN, CLU, ChFC**

Special Agent
NORTHWESTERN MUTUAL LIFE

Registered Representative
NORTHWESTERN MUTUAL INVESTMENT SERVICES, INC.
720 East Wisconsin Avenue
Milwaukee, WI 53202
(414) 271-1444

Harry P. Hoopis, CLU, ChFC, General Agent

October 20, 1997

Mr. Donald Astar
24140 Deer Ridge Lane
Antioch, Illinois 60002

Dear Don:

Enclosed is the new disability policy with Northwestern Mutual Life. Please take time to look through the contract and get back to me with any questions you may have.

Many thanks for your business and cooperation.

Sincerely,

Gary W. Kaufman, CLU, ChFC

GWK:aj
Encl.

The Northwestern Mutual Life Insurance Company agrees to pay the benefits provided in this policy, subject to its terms and conditions. Signed at Milwaukee, Wisconsin on the Date of Issue.

This disability income policy is guaranteed renewable upon timely payment of premiums to the first policy anniversary after the Insured's 65th birthday and, during that period, can neither be cancelled nor have its terms or premiums changed by the Company.

PRESIDENT AND C.E.O.                    SECRETARY

**Disability Income Policy**

**Eligible for Annual Dividends**

Non-Cancellable and
Guaranteed Renewable to Age 65

Conditionally Renewable to Age 75

**Right To Examine Policy** — Please examine this policy carefully. The Owner may return the policy for any reason within ten days after receiving it. If returned, the policy will be considered void from the beginning and any premium paid will be refunded.

MM D 1

591 - 9444

# Northwestern Mutual Life®

Exhibit # 2

This policy is a legal contract between the Owner and The Northwestern Mutual Life Insurance Company.

Read your policy carefully.

## Guide To Policy Provisions

|  |  |  | Page |
|---|---|---|---|
| **SCHEDULE OF BENEFITS AND PREMIUMS** |  |  | 3 |
| **SECTION 1.** | **BENEFITS** | Description of general terms. Full Benefit payable for total disability. Proportionate Benefit payable for partial disability. How the Proportionate Benefit is determined. Transition Benefit. Lifetime benefit payable for Presumptive Disability. Waiver of Premium Benefit. | 5 |
| **SECTION 2.** | **EXCLUSIONS** |  | 7 |
| **SECTION 3.** | **CONDITIONAL RIGHT TO RENEW TO AGE 75** |  | 8 |
| **SECTION 4.** | **CLAIMS** | How to notify the Company of a claim. Proof of disability. How the benefits will be paid. Physical examination may be required. Limits on when you may start a legal action. | 8 |
| **SECTION 5.** | **OWNERSHIP** | Rights of the Owner. Assignment as collateral. | 8 |
| **SECTION 6.** | **PREMIUMS AND REINSTATEMENT** | Payment of premiums. Grace Period of 31 days to pay premiums. Refund of unused premium at death. How to reinstate the policy. | 9 |
| **SECTION 7.** | **THE CONTRACT** | Changes. Incontestability. Misstatement of age. Dividends. Definition of dates. | 10 |
| **ADDITIONAL BENEFITS** (if any) |  |  | Following page 10 |
| **APPLICATION** |  |  | Attached to the policy |

MM D 1

BENEFITS AND PREMIUMS

DATE OF ISSUE - OCTOBER  2, 1985

| PLAN AND ADDITIONAL BENEFITS | FULL BENEFIT PER MONTH | ANNUAL PREMIUM | PAYABLE FOR |
|---|---|---|---|
| DISABILITY INCOME | $  700  $ | 207.20 | 32 YEARS |
| ADDITIONAL PURCHASE BENEFIT AMOUNT EACH PURCHASE DATE | 700 | 28.70 | 17 YEARS |

RENEWAL OF COVERAGE BEYOND AGE 65 MAY REQUIRE AN INCREASE IN THE PREMIUM. SEE SECTION 3.

A PREMIUM IS PAYABLE ON THE POLICY DATE AND EVERY 12 POLICY MONTHS THEREAFTER.

THE FIRST PREMIUM IS     $235.90.

THE PREMIUM FOR THIS POLICY IS ON A NONSMOKER BASIS.

| | |
|---|---|
| BEGINNING DATE | 181ST DAY OF DISABILITY IN THE FIRST 360 DAYS AFTER THE START OF DISABILITY. |
| MAXIMUM BENEFIT PERIOD | TO OCTOBER  2, 2017, BUT NOT LESS THAN 24 MONTHS OF BENEFITS. |
| INITIAL PERIOD | 60 MONTHS OF BENEFITS OR TO OCTOBER  2, 2017 IF LESS, BUT NOT LESS THAN 24 MONTHS OF BENEFITS. |

OWNER          DONALD E  ASTAR, THE INSURED

| | | | | |
|---|---|---|---|---|
| INSURED | DONALD E  ASTAR | AGE AND SEX | 33 | MALE |
| POLICY DATE | OCTOBER  2, 1985 | POLICY NUMBER | D 429 516 | |

EXCLUSIONS AND LIMITATIONS--SEE SECTION 2 AND THE ATTACHED AGREEMENT FOR LIMITATION OF COVERAGE.

# SECTION 1. BENEFITS

## 1.1 GENERAL TERMS

This policy provides benefits when the Insured is totally or partially disabled. Section 1 describes the benefits of the policy and tells when they are payable. It also gives the meaning of several important terms that are used in the policy.

**Insured and Owner.** The Insured and Owner are named on page 3. The male pronouns used in this policy for the Insured and Owner apply to both males and females.

**Disabilities Covered by the Policy.** Benefits are provided for the Insured's total or partial disability only if:

- the Insured becomes disabled while this policy is in force;
- the Insured is under the care of a licensed physician other than himself during the time he is disabled;
- the disability results from an accident or sickness; and
- the disablity is not excluded under Section 2.

**Benefit Terms.** The schedule of Benefits and Premiums (page 3) has a number of important terms that are used in this policy. These terms are:

**Full Benefit.** This is the maximum amount of monthly income payable under the policy.

**Beginning Date.** This is the date on which benefits begin to accrue after the Insured becomes disabled. Benefits are not payable for the time the Insured is disabled before the Beginning Date.

**Maximum Benefit Period.** This is the longest period of time that benefits are payable for disability. In determining the maximum length of time for which benefits are payable, periods of total and partial disability are added together. If page 3 provides that the Maximum Benefit Period has a lifetime benefit for total disability, then see Section 1.7.

**Initial Period.** This is a period of time that starts on the Beginning Date and continues, while the Insured is disabled, for the length of time shown on page 3. The definition of total disability changes after the Initial Period.

**Occupation.** The words "his occupation" mean the occupation of the Insured at the time he becomes disabled. If the Insured is regularly engaged in more than one occupation, all of the occupations of the Insured at the time he becomes disabled will be combined together to be "his occupation".

## 1.2 FULL BENEFIT FOR TOTAL DISABILITY

The Full Benefit is payable for each month of total disability between the Beginning Date and the end of the Maximum Benefit Period.

**Total Disability.** Until the end of the Initial Period, the Insured is totally disabled when he is unable to perform the principal duties of his occupation. After the Initial Period, the Insured is totally disabled when he is unable to perform the principal duties of his occupation and is not gainfully employed in any occupation.

If the Insured is retired when an accident occurs or a sickness first appears, the Insured is totally disabled when he is unable to perform the normal activities of a retired person who is the same age but in good health.

**Benefit Amount for Partial Month.** When a total disability lasts for a part of a month, 1/30th of the Full Benefit will be payable for each day of total disability.

## 1.3 PROPORTIONATE BENEFIT FOR PARTIAL DISABILITY

The Proportionate Benefit is payable for each month of partial disability between the Beginning Date and the end of the Maximum Benefit Period.

**Partial Disability.** The Insured is partially disabled when:

a. he is unable:

- to perform one or more of the principal duties of his occupation; or
- to spend as much time at his occupation as he did before the disability started; and

b. he has at least a 20% Loss of Earned Income.

Until the Proportionate Benefit has been payable for six months, the Insured need not have a 20% Loss of Earned Income to be partially disabled if:

- he is unable to perform one or more principal duties which accounted for at least 20% of the time he spent at his occupation before the disability started; or
- he has at least a 20% loss of time spent at his occupation.

If the Insured qualifies for both the Full and Proportionate Benefit, the Full Benefit only will be paid.

**Benefit Amount for Partial Month.** When a partial disability lasts for a part of a month, 1/30th of the Proportionate Benefit will be payable for each day of partial disability.

## 1.4 HOW THE PROPORTIONATE BENEFIT IS DETERMINED

The Proportionate Benefit is intended to compensate for a loss of earned income caused by the Insured's disability. The amount of each monthly benefit is the Full Benefit multiplied by the Insured's Loss of Earned Income and divided by his Base Earned Income. Thus, the Proportionate Benefit amount equals:

$$\text{Full Benefit} \quad \text{X} \quad \frac{\text{Loss of Earned Income}}{\text{Base Earned Income}}$$

The maximum amount payable is 100% of the Full Benefit.

**Choice of Benefit Amount for First Six Months.** For each of the first six months in which a Proportionate Benefit is payable, the Owner may choose:

- to receive 50% of the Full Benefit; or
- to receive a Benefit based on the Insured's Loss of Earned Income.

The Owner may alternate between these two choices as to each of the six months. However, the Owner may not change his choice after the Benefit is paid for that month.

The Choice of Benefit Amount does not apply to a Transition Benefit payable under Section 1.5.

**Loss of Earned Income.** This is:

- the Insured's Base Earned Income; less
- his Earned Income for the month for which the Benefit is claimed.

Earned Income is credited to the period in which it is earned, not the period in which income is actually received.

**Earned Income.** Earned Income is:

- the sum of salary, wages, commissions, fees, bonuses, and other compensation or income earned by the Insured from all sources for work performed by him; less
- normal and customary business expenses.

It is determined before the deduction of federal, state and local income taxes.

**Base Earned Income.** During the first 12 months of a disability, Base Earned Income is the average monthly Earned Income of the Insured for a 12 consecutive month period during the 24 month period before the start of disability. The 12 month period which generates the highest average (and therefore the highest benefit amount) will be used.

After the first 12 months of a disability, Base Earned Income is the average monthly Earned Income of the Insured multiplied by an Indexing Factor. The Indexing Factor is:

- the consumer price index for the current year of disability; divided by
- the consumer price index for the year the disability started.

Thus, after 12 months of a disability, Base Earned Income equals:

$$\text{average monthly Earned Income} \quad \text{X} \quad \frac{\text{consumer price index for the current year of disability}}{\text{consumer price index for the year disability started}}$$

In the event the Indexing Factor is less than one, a value of one will be used.

**Consumer Price Index.** The "consumer price index for the year the disability started" is the Consumer Price Index for All Urban Consumers, United States City Average, All Items ("CPI-U") for the fourth month before the start of disability. The "consumer price index for the current year of disability" is the CPI-U for the fourth month before the most recent anniversary of the start of disability.

The CPI-U is published by the Bureau of Labor Statistics. If the method for determining the CPI-U is changed, or if it is no longer published, it will be replaced by some other index found by the Company to serve the same purpose.

**Proof of Earned Income.** The Company may require proof, including income tax returns, of the amount of Earned Income for periods before and after the start of the disability.

## 1.5 TRANSITION BENEFIT

The Company will pay a Proportionate Benefit for up to the first three months after the Insured's recovery from a disability, provided:

- the Insured was disabled at least 12 months during the 24 month period after the start of disability;
- the Insured has returned to full-time employment;
- the Insured has at least a 20% Loss of Earned Income for the month for which the benefit is claimed; and
- the month for which the benefit is claimed is within the Maximum Benefit Period.

The amount of this Benefit will be determined under Section 1.4. Periods of total and partial disability may be added together to meet the 12 month requirement.

This Benefit is payable for up to three months for each separate disability. For any month this Benefit is payable, premiums will be waived.

MM D1                                  6

### 1.6 TRANSPLANT DONOR

If the Insured donates an organ for transplant to another person, a disability caused by the donation will be considered as caused by sickness.

### 1.7 LIFETIME BENEFIT FOR TOTAL DISABILITY

If page 3 provides that the Maximum Benefit Period has a lifetime benefit for total disability, then the Full Benefit is payable as long as total disability continues during the lifetime of the Insured, provided:

- the Insured is totally disabled on the policy anniversary that follows his 60th birthday; and
- the total disability continues beyond the policy anniversary that follows his 65th birthday.

### 1.8 LIFETIME BENEFIT FOR PRESUMPTIVE TOTAL DISABILITY

Even if the Insured is able to work, he will be considered totally disabled if he incurs the total and irrecoverable loss of:

- sight in both eyes;
- use of both hands;
- use of both feet;
- use of one hand and one foot;
- speech; or
- hearing in both ears.

The Full Benefit is payable for this loss provided: the loss occurs while this policy is in force; the loss occurs before the first policy anniversary that follows the 65th birthday of the Insured; the loss results from an accident or sickness; and the loss is not excluded under Section 2. The Insured does not need to be under the care of a physician.

The Full Benefit for the loss:

- is payable monthly;
- starts with the date of loss, not the Beginning Date;
- is payable for as long as the loss continues during the lifetime of the Insured; and
- is in lieu of other benefits payable for total or partial disability.

### 1.9 WAIVER OF PREMIUM BENEFIT

The Company will waive premiums which become due on this policy while the Insured is totally or partially disabled if:

- the disability lasts for at least 90 days; or
- the disability lasts beyond the Beginning Date, if sooner.

The Waiver of Premium Benefit is not limited by the Maximum Benefit Period.

If premiums are waived, the Company will also refund that portion of a premium paid which applies to a period of disability beyond the policy month in which the disability began. If a premium is to be waived on a policy anniversary, an annual premium will be waived.

The Company will not waive the payment of premiums after the end of the disability (except where the waiver continues under Section 1.5). The Owner may then keep the policy in force by resuming the payment of premiums as they become due.

### 1.10 REHABILITATION BENEFIT

At the Insured's request, the Company will consider joining in a program to rehabilitate the Insured. The Company's role in the program will be determined by written agreement with the Insured. Benefits will continue during the program under the terms of the agreement.

### 1.11 DISABILITY WITH MULTIPLE CAUSES

If the Insured is disabled from more than one cause, the amount and duration of benefits will not be more than that for any one of the causes.

### 1.12 BENEFITS FOR SEPARATE DISABILITIES

Each separate time the Insured is disabled, a new Initial Period, Beginning Date and Maximum Benefit Period start. A disability is separate, and not a continuation of one that started earlier, if:

- the cause of the later disability is not medically related to the cause of the earlier one, and the Insured had resumed on a full-time basis the principal duties of an occupation for at least 30 consecutive days; or
- the cause of the later disability is related to the cause of the earlier one, and the later disability starts at least 6 months after the end of the earlier one.

# SECTION 2. EXCLUSIONS

### 2.1 PRE-EXISTING CONDITIONS LIMITATIONS

There will be no benefits for a disability or loss that:
a. starts within two years after the Date of Issue;
b. results from a condition that was not disclosed in the application; and
c. results from an accident that occurred within two years before the Date of Issue or from a sickness that:
  - was diagnosed or treated within two years before the Date of Issue; or
  - appeared within one year before the Date of Issue.

A sickness is considered to have appeared if it would have caused a prudent person to seek medical attention.

### 2.2 OTHER EXCLUSIONS

There will be no benefits for a disability or loss that:

- is caused by an act or incident of war, declared or undeclared; or
- is excluded from coverage by an Agreement for Limitation of Coverage.

# SECTION 3. CONDITIONAL RIGHT TO RENEW TO AGE 75

On each policy anniversary between the Insured's 65th and 75th birthdays, the Owner may renew this policy for one year if the Insured is actively and gainfully employed on a full-time basis. To renew this policy, the Owner must send a written request to the Company each year. This right to renew ends on the first anniversary on which the Insured is not so employed or on which the Owner chooses not to renew the policy.

For a policy that is renewed:

- benefits are payable only for total disability; and
- the premium for each year of renewal will be based on the Insured's age and the Company's rates in use at the time of renewal.

# SECTION 4. CLAIMS

## 4.1 NOTICE OF CLAIM

Written notice of claim must be given to the Company within 60 days after the start of any loss covered by this policy. If the notice cannot be given within 60 days, it must be given as soon as reasonably possible. The notice should:

- give the Insured's name and policy number; and
- be sent to the Home Office or be given to an authorized agent of the Company. The Home Office is located at:

720 East Wisconsin Avenue
Milwaukee, Wisconsin 53202.

## 4.2 CLAIM FORMS

The Company will furnish claim forms within 15 days after receiving notice of claim. If claim forms are not furnished within that period, written proof of disability may be made without the use of the Company's forms.

## 4.3 PROOF OF DISABILITY

Written proof of disability must be given to the Company within 90 days after the end of each monthly period for which benefits are claimed. If the proof is not given within the 90 days, the claim will not be affected if the proof is given as soon as reasonably possible.

## 4.4 TIME OF PAYMENT OF CLAIMS

Benefits due under this policy will be paid monthly.

## 4.5 PAYMENT OF CLAIMS

Benefits will be paid to the Owner or to his estate.

## 4.6 MEDICAL EXAMINATION

The Company, at its own expense, may have the Insured examined as often as reasonably necessary in connection with a claim. This will be done by a physician of the Company's choice.

## 4.7 LEGAL ACTIONS

No legal action may be brought for benefits under this policy within 60 days after written proof of disability has been given. No legal action may be brought after three years (or a longer period that is required by law) from the time written proof is required to be given.

# SECTION 5. OWNERSHIP

## 5.1 POLICY RIGHTS

All policy rights may be exercised by the Owner, or his successor or transferee.

## 5.2 TRANSFER OF OWNERSHIP

The Owner may transfer the ownership of this policy. Written proof of transfer satisfactory to the Company must be received at its Home Office. The transfer will take effect as of the date it was signed. The Company may require that the policy be sent to its Home Office for endorsement to show the transfer.

## 5.3 COLLATERAL ASSIGNMENT

The Owner may assign this policy as collateral security. The Company is not responsible for the validity or effect of a collateral assignment. The Company will be charged with notice of the assignment only if a written assignment is received at the Home Office.

A collateral assignee is not an Owner. A collateral assignment is not a transfer of ownership. Ownership can be transferred only by complying with Section 5.2.

MM D1    8

# SECTION 6. PREMIUMS AND REINSTATEMENT

## 6.1 PREMIUMS

**Payment.** All premiums after the first are payable at the Home Office or to an authorized agent. A premium must be paid on or before its due date. A receipt signed by an officer of the Company will be furnished on request.

**Frequency.** Premiums may be paid annually, semi-annually or quarterly at the published rates of the Company. A change in premium frequency will take effect on the Company's acceptance of the premium for the new frequency. Premiums may be paid on any other frequency approved by the Company.

**Grace Period.** A grace period of 31 days will be allowed for payment of a premium that is not paid on its due date. This policy will be in full force during this period.

The policy will terminate at the end of the grace period if the premium is not paid.

**Premium Refund at Death.** The Company will refund that portion of any premium paid for a period beyond the date of the Insured's death.

## 6.2 REINSTATEMENT

**Within Late Payment Period.** The late payment period is the first 31 days after the grace period. Within the late payment period, the policy will be reinstated as of the date the overdue premium is paid. No evidence of insurability will be required.

**After the Late Payment Period.** After the late payment period, the cost to reinstate must be paid to the Company. The Company may also require an application for reinstatement and evidence of insurability. The policy will be reinstated as of the date the cost to reinstate was paid to the Company if:

- the application is approved by the Company; or

- notice that the application has been disapproved is not given within 45 days from the date the Company receives the application.

The policy will be reinstated as of the date the Company accepts payment of the cost to reinstate if the Company does not require an application.

**Coverage.** If no evidence of insurability is required, the reinstated policy will cover only a disability that starts after the date of reinstatement. If evidence of insurability is required:

- the reinstated policy will cover only a disability that results from an accident that occurs, or from a sickness that first appears, after the date of reinstatement; and

- the Company may attach new provisions and limitations to the policy at the time of reinstatement. All other rights of the Owner and the Company will remain the same.

**Duty with Armed Forces.** If the policy terminates while the Insured is on active duty with the armed forces of any nation or group of nations, the policy may be reinstated without evidence of insurability. The policy will be reinstated as of the date a written request and the pro-rata premium for coverage until the next premium due date are received by the Company. The request must be received:

- no later than 90 days after the Insured's release from active duty; and

- no later than 5 years after the due date of the unpaid premium.

# SECTION 7. THE CONTRACT

## 7.1 ENTIRE CONTRACT; CHANGES

This policy with the application and attached endorsements is the entire contract between the Owner and the Company. No change in this policy is valid unless approved by an officer of the Company. The Company may require that the policy be sent to it to be endorsed to show a change. No agent has authority to change the policy or to waive any of its provisions.

## 7.2 INCONTESTABILITY

In issuing this policy, the Company has relied on the application. The Company may rescind the policy or deny a claim due to a misstatement in the application. However, after this policy has been in force for two years from the Date of Issue, no misstatement in the application may be used to rescind the policy or to deny a claim for a disability or loss that starts after the two year period.

In addition, a claim may be denied on the basis that a disability or loss is caused by a Pre-Existing Condition (see Section 2.1). However, the Company may not reduce or deny a claim on that basis if the disability or loss:

- starts after two years from the Date of Issue; and

- is not excluded from coverage by an Agreement for Limitation of Coverage.

## 7.3 CHANGE OF PLAN

The Owner may change this policy to any plan of disability insurance agreed to by the Owner and the Company. The change will be subject to:

- payment of required costs; and

- compliance with other conditions required by the Company.

All premiums and dividends after the date of change will be the same as though the new plan had been in effect since the Policy Date.

## 7.4 MISSTATED AGE

If the age of the Insured has been misstated, the benefits will be those which the premiums paid would have purchased at the correct age.

## 7.5 CONFORMITY WITH STATE STATUTES

Any provisions of this policy which, on the Date of Issue, are in conflict with the statutes of the state in which the Owner resides on that Date are amended to conform to such statutes.

## 7.6 DIVIDENDS

This policy will share in the divisible surplus, if any, of the Company. Divisible surplus is determined annually. This policy's share will be credited as an annual dividend.

Dividends will be:

- used to reduce premiums; or

- paid to the Owner when premiums are being waived.

## 7.7 DATES

Provided the first premium is paid, this policy will take effect on the Date of Issue. Policy months, years and anniversaries are computed from the Policy Date. Both dates are shown on page 3 of this policy.

## 7.8 TERMINATION

If premiums are paid when due, this policy will not terminate until the first policy anniversary following the 65th birthday of the Insured or, if later, when the right to renew the policy ends (see Section 3). However, if the Insured is disabled on the date determined above, the termination will not take effect until benefits are no longer payable due to that disability.

MM D1

# ADDITIONAL PURCHASE BENEFIT

## 1. THE BENEFIT

The Company will issue additional disability income insurance policies on the Insured, subject to the terms and conditions below. The Company will not refuse to issue these new policies due to changes in the Insured's health, activities, or occupation that occur after the Date of Issue of this policy. However, as explained in section 4 of this Benefit, the issuing of these new policies is subject to the Company's financial underwriting standards.

In this Benefit, the words "this policy" mean the policy to which this Benefit is attached.

The premium for this Benefit is shown on page 3.

## 2. PURCHASE DATES

The Owner may purchase a new policy as of each Purchase Date that occurs after the Policy Date. There is a Purchase Date on each policy anniversary that is nearest the Insured's 25th, 30th, 35th, 40th, 45th, and 50th birthdays. The right to purchase a new policy as of a Purchase Date:

- expires on the 30th day after that Date; and
- may be used at an earlier time as an advance purchase.

The Company must receive an application and the first premium for each new policy not more than 60 days before, nor more than 30 days after, a Purchase Date.

## 3. ADVANCE PURCHASE

A new policy may be purchased before a Purchase Date, on the occurrence of certain events, if:

- this policy has been in force for at least one year; and
- the purchase is made more than one year after the last purchase of a new policy under this Benefit.

An advance purchase of a new policy may be made within 90 days after these events:

- the Insured's marriage;
- the birth of the Insured's child;
- the completion by the Insured of the legal adoption of a child; or
- an increase in the Insured's annual earned income of at least 20% since the Company last issued a disability income policy on the Insured.

To make an advance purchase of a new policy, there must be a future Purchase Date that has not been used. A new policy purchased in advance is in lieu of the new policy that otherwise could be purchased as of the next unused Purchase Date.

The Company must receive an application and the first premium for the new policy not more than 90 days after the marriage, birth, adoption or increase in income. The application must include proof of the marriage, birth, adoption or increase in income.

## 4. TERMS OF NEW POLICY

The terms below will apply to each new policy purchased under this Benefit.

**In General.** Each new policy will be in the form and have the same terms as policies being issued by the Company at the time of purchase. The terms available for each new policy will be based on the classification of risk of this policy. Subject to the limitations contained in the following paragraphs, the Owner may choose for each new policy:

- the amount of Full Benefit;
- the Maximum Benefit Period;
- the Beginning Date; and
- additional benefits.

**Limitations on Amount and Type of Coverage.** A new policy or additional benefit will be issued under this Benefit only if the Insured meets the Company's financial underwriting standards that are in effect at the time of the application for the new policy or benefit. These standards include the Insured's earned and unearned income, his net worth, the amount and types of disability coverage that the Insured has or for which he may be eligible after a qualifying period of employment, and the Company's issue limits.

**Full Benefit.** For each new policy:

- the minimum Full Benefit per month that may be purchased will be $200; and
- the maximum Full Benefit per month that may be purchased will be the Additional Purchase Benefit amount shown on page 3. For purposes of this paragraph, the amount of the Full Benefit issued will be deemed to include the amount of any Annually Renewable Disability Income Benefit or any Social Security Substitute Benefit issued as part of the new policy. The Owner may request a Full Benefit of up to twice the Additional Purchase Benefit amount shown on page 3 if there is an unused Purchase Date remaining. The purchase of the excess amount will be considered as an advance purchase of a new policy.

**Maximum Benefit Period.** The Owner may choose any Maximum Benefit Period for which the Insured qualifies under the Company's financial underwriting standards in effect at the time the new policy is purchased.

**Beginning Date.** The Owner may choose any Beginning Date offered at the time the new policy is purchased, provided the Beginning Date is not earlier than that of this policy.

MMD 1,2 APB

(over)

**Additional Benefits.** Other than the Additional Purchase Benefit, each new policy may be issued with additional benefits:

- which are then a part of this policy; and
- for which the Insured meets the Company's financial underwriting standards that are then in effect.

The amount of these additional benefits will be subject to the Company's issue rules then in effect.

**Limitations of Coverage.** Each new policy will include any Agreement for Limitation of Coverage that is a part of this policy.

**No Benefit for Existing Disability.** The new policy will cover a disability that starts after the new policy is issued if it is caused by an accident that occurs, or a sickness that first appears, after this policy was issued. The new policy will not cover a disability that exists at the time the new policy is issued.

**Premium.** The premium for each new policy is determined as of its date of issue by:

- the Company's premium rates then in effect;
- the plan and amount of insurance issued;
- the Insured's age at the time of issue of the new policy; and
- the classification of risk of this policy.

**Waiver of Premium.** If premiums are being waived for this policy at the time a new policy is purchased under this Benefit, premiums will also be waived for the new policy for as long as they continue to be waived for this policy.

**Effective Date.** Each new policy issued will take effect on the date the Company receives the application or the first premium, whichever is later.

## 5. PREMIUM REFUND

The Company will refund to the Owner all of the premiums paid for this Benefit if:

- the Owner applies for the refund within 90 days after the policy anniversary nearest the Insured's 50th birthday; and
- the Owner supplies proof that:
  - (1) the Insured has never qualified for a new policy under the limitations stated in section 4 of this Benefit; and
  - (2) the Insured has not purchased a disability income insurance policy from any company while this Benefit was in force.

## 6. TERMINATION

This Benefit will terminate on the earliest of the following dates:

- the date of termination of this policy;
- the policy anniversary that is nearest the Insured's 50th birthday;
- the date the final Purchase Date is used by advance purchase; or
- the date on which the Home Office receives the Owner's written request.

_Peter W. Brown_

Secretary
THE NORTHWESTERN MUTUAL LIFE
INSURANCE COMPANY

MMD 1,2 APB

# AGREEMENT FOR LIMITATION OF COVERAGE

INSURED: Donald E  Astar

POLICY NUMBER: D 429 516 CR

As of the Date of Issue, it is agreed that this policy is amended by the following limitations:

Except for a disability caused by a fracture, no benefits will be provided under this policy for disability resulting from any disease or disorder of the lumbar or sacral vertebrae (including the intervertebral discs and the lumbosacral and sacroiliac articulations and including complicating  sciatic neuritis and low back syndrome), including complications thereof, medical or surgical treatment therefor, or complications of such treatment.

_____          _____
Date                                                          Signature of Applicant

*Peter W. Bruce*

Secretary
THE NORTHWESTERN MUTUAL LIFE
INSURANCE COMPANY

GA No. 021
CS:wa

LLD 200
17-0713 (Rev. 9-83)

ATTACH THIS SIGNED DUPLICATE TO THE POLICY

879036

# NORTHWESTERN MUTUAL LIFE
INSURANCE COMPANY
MILWAUKEE, WISCONSIN 53202

No. 0429516

## DISABILITY INSURANCE APPLICATION

☐ Life & Disability Insurance

**101. INSURED**
(Print)

| D | O | N | A | L | D | | | | E | | | | A | S | T | A | R | | |

First · Middle Initial · Last

☑ Male
☐ Female

**102. A. INSURED'S DATE OF BIRTH** ▮▮ / 52
Month · Day · Year

**B. PLACE OF BIRTH** _ELMHURST_
(If other than USA, indicate country)

**103. APPLICANT,** if other than Insured

First · Middle Initial · Last

Relationship
to Insured _____

**104. RESIDENCE OF INSURED**
This address will be used for
all of the Insured's policies.

24140 _DEER RIDGE LANE_
Street & No. or RFD

_ANTIOCH_ _LAKE_ _ILLINOIS_ _60002_
City · County · State · Zip Code

**105. POLICY NOTICES** Send premium and other notices regarding this policy

to: ☑ Insured ☐ Applicant ☐ Owner in 113 ☐ Other _____
(Full Name)

at: ☑ Insured's address in 104, or _____
Street & No. or RFD

_____
City · State · Zip Code

**106.** Has an application or informal inquiry ever been made to Northwestern Mutual Life for annuity, life or disability insurance on the life of the Insured? ☑ Yes ☐ No If yes, the last policy number is _D 227 462_

**107. INSURED'S OCCUPATION**

**A.** What is the Insured's primary occupation? _DIRECT MARKETING MANAGER_

**B.** List any other occupations of the Insured: _NONE_

**C.** What are the Insured's duties and the percent of time spent at each duty for each occupation? _____
_MANAGEMENT AND TECHNICAL ANALYSIS_

**D.** Employer: Name _ALLSTATE INSURANCE CO._

Address _ALLSTATE PLAZA SOUTH_ _NORTHBROOK_ _IL_ _60062_
Street & No. or RFD · City · State · Zip Code

**E.** How long has the Insured been employed by this employer? _11 YR._

If less than 2 years, state the Insured's prior occupation and employer. _____

**F.** Is the Insured actively at work on a full-time basis without medical restrictions?
☑ Yes ☐ No If no, explain. _____

**G.** Does the Insured intend to change occupation(s) or employer(s) within the next six months?
☐ Yes ☑ No If yes, explain. _____

**108. Complete this question** *only* if exercising an ADDITIONAL PURCHASE BENEFIT OPTION.

**A.** State the policy number(s) under which the option is being exercised. _____

**B.** This application is: ☐ Regular Purchase ☐ Advance Purchase (Complete item C. below)

**C.** If this is an Advance Purchase, the event is:

☐ Marriage Name of: ☐ Spouse
☐ Child _____
First · Middle Initial · Last

☐ Birth of child Date and place of marriage, birth, or final decree of adoption:

☐ Adoption of child ___ / ___ / ___ _____
Month Day Year · City · County · State

☐ Increase in Annual Earned Income: $_____ Actual — One calendar year ago (Should agree with 118c)
$_____ Estimate — Current calendar year (Should agree with 118c)

90-1 D.I. (0385)

(page 1)

**109. POLICY APPLIED FOR**

| | Monthly Benefit | Maximum Benefit Period | Beginning Date | Initial Period To Age 65 | Initial Period To Age 70 | Guaranteed Acceptance (Prior Home Office approval required) |
|---|---|---|---|---|---|---|
| **DISABILITY INCOME POLICY** | | | | | | |
| ☑ Level premium | $ 700 | AGE65 | 181 ST | ☐ | ☐ | ☐ |
| ☐ Step rate premium | $ | | | ☐ | ☐ | ☐ |
| **SOCIAL SECURITY SUBSTITUTE POLICY** | | | | | | |
| ☐ Level premium | $ | to age 65 | | ☐ | | ☐ |
| ☐ Step rate premium | $ | to age 65 | | ☐ | | ☐ |
| **DISABILITY OVERHEAD EXPENSE POLICY** | | | | | | |
| ☐ Business | $ | | | | | |
| ☐ Professional | $ | | | | | |

**110. ADDITIONAL BENEFITS**

(If more than one policy is applied for, indicate to which policy(ies) each benefit should be attached.)

☑ Additional Purchase Benefit (APB)  $ _700_____
Amt. on each Purchase Date

☐ Social Security Substitute Benefit (SSS) $ _____
Monthly Benefit

☐ Annually Renewable Disability Income Benefit (ARDI) $ _____
Monthly Benefit

☐ Indexed Income Benefit (IIB)

☐ Annually Indexing Benefit (AIB)

**111.** If Northwestern Mutual Life is not able to issue the policy and any additional benefits as applied for, should the Company issue a policy if it can do so only in a smaller amount, or on a different plan, or without an additional benefit? ☑ Yes ☐ No

**112. SPECIAL DATING**

Prepaid: ☐ Short term to ___/___/___ Month Day Year    ☐ Date to save age    ☐ Backdate to ___/___/___ Month Day Year

Non-prepaid: ☐ Specified future date ___/___/___ Month Day Year    ☐ Date to save age    ☐ Backdate to ___/___/___ Month Day Year

**113.** The OWNER of the Disability Insurance policy(ies) will be:

☑ Insured    ☐ Applicant    ☐ Other _____
(Full Name)

**114. PREMIUM PAYABLE** ☑ Annually    ☐ Semiannually    ☐ Quarterly

**115.** Has the premium for the policy applied for been paid to the agent in exchange for the Conditional Disability Insurance Agreement with the same number as this application? ☑ Yes ☐ No

**116. A.** Will the Insured's employer pay for this disability insurance with no part of the premium included in the Insured's taxable income? ☐ Yes ☑ No

**B.** The Insured's employer is a: ☐ Sole Proprietor ☐ Partnership ☑ Corporation ☐ Subchapter S Corporation
☐ Other (Specify) _____

**C.** Does the Insured have an ownership interest in the business? ☐ Yes ☑ No
If yes, what is the percent? _____ %.

# DISABILITY INSURANCE APPLICATION

| INSURED | D | O | N | A | L | D | | | | E | | | | A | S | T | A | R | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | First | | | | | | | | | Middle Initial | | | | Last | | | | | | | |

The following information (pages 3, 4 and 5) is required because Northwestern Mutual Life's underwriting rules limit the amount of disability insurance on the Insured in this company and elsewhere.

**117.**

**A. DISABILITY COVERAGES** List and describe all disability benefits including:
- disability insurance;
- group disability insurance;
- private and government pension or retirement plans;
- salary continuation plans;
- association plans;
- credit insurance plans;
- overhead expense insurance;
- Northwestern Mutual Life disability insurance; and
- any other coverage which provides disability benefits.

Also include any coverage for which the Insured will become eligible within the next five years after a qualifying period of employment has been met.

Identify:   **(I)** In-force, **(P)** Pending or **(C)** Contemplated.     If none, check:   ☐ **NONE.**

| Insurer | Type | Benefit Amount | Benefit Period Accident | Sickness | I, P, or C | Check if Offset by Social Security | Check if Non-contributory |
|---|---|---|---|---|---|---|---|
| NML | STEP | 750 | 65 | 65 | I | | |
| NML | SSS | 800 | 65 | 65 | I | ✓ | |
| | | | | | | | |

**B.** Will the insurance applied for replace any Northwestern Mutual Life disability insurance?     ☐ Yes  ☑ No
If yes, complete the Conditional Surrender form 17-0789, and the agent should submit any required papers.

**C.** Will the insurance applied for replace disability insurance from a source other than Northwestern Mutual Life?  ☐ Yes  ☑ No
If yes, complete the information below, and the agent should submit any required papers.

*When issuing any insurance as a result of this application, Northwestern Mutual Life will rely on the fact that the coverage listed below can and will be terminated on the stated date (usually the next premium due date). If the coverage listed below is not terminated on that date, any policy issued and accepted will be rescinded and all premiums will be returned. Northwestern Mutual Life may contact any listed insurer after the stated date to confirm that the coverage has been terminated.*

| Insurance Company | Group or Association Name | Policy Number | Amount to be Replaced | Premium Due Date/ Termination Date |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |

118.

**A. EARNED INCOME**   State the Earned Income from the Insured's occupation(s) as reported on the **personal** federal income tax return, IRS Form 1040.   NOTE: Do not list undeclared income. Limit nontaxable fringe benefits to those which are asked for in 118 A.1. below.

| | Prior Calendar Year Jan. 1-Dec. 31 *1984* | Estimate Current Calendar Year Jan. 1-Dec. 31 *1985* |
|---|---|---|
| **1. From primary occupation:** | | |
| If the Insured is salaried, state the actual salary earned last year and the current salary. If the salary has recently changed, show the date the change took effect in "Remarks." | $ *39,000* | $ *43,000* |
| If the Insured is a commissioned salesperson, state the total commissions. | *0 —* | *0 —* |
| State any bonus(es) that the Insured receives on a regular basis. Do not state if included above. | *0 —* | *0 —* |
| If the Insured is an unincorporated sole proprietor or a partner in an unincorporated partnership, state the Insured's share of gross income less the cost of goods sold. | *0 —* | *0 —* |
| State any nontaxable fringe benefits which are not included above, such as deferred compensation or pension plan contributions, that would cease if the Insured were disabled. Give details and source of this income in "Remarks." | *0 —* | *0* |
| **2. From any other occupation:** If none, so state. | *0 —* | *0 —* |
| **3. Total earned income:** Add lines A.1 through A.2. | *39,000* | *43,000* |
| **B. EXPENSES**   State the Insured's tax deductible business expenses from all occupations. If none, so state. | *0 —* | *0 —* |
| **C. NET EARNED INCOME**   Line A.3 minus line B. | *39,000* | *43,000* |
| **D. UNEARNED INCOME**   State that part of the Insured's net personal unearned income in excess of $5000. This includes capital gains, interest, dividends, tax exempt unearned income, income from other investments, net rental income, pensions, annuities, and alimony. If none, so state. | *- 0 -* | *- 0 -* |
| **E. INSURABLE INCOME**   Line C minus line D. | *39,000* | *43,000* |

**F. NET WORTH**   Is the Insured's net worth, exclusive of primary residence, greater than $2,000,000? (Include the Insured's assets less liabilities such as mortgages, loans and debts.)   ☐ Yes   ☑ No

If "Yes" complete section below. State fair market value less any associated indebtedness.

| | | | |
|---|---|---|---|
| Cash savings, stocks, bonds | $_____ | Real estate (exclude primary residence) | $_____ |
| Business equity (exclude goodwill) | $_____ | Other (Give details in "Remarks" below) | $_____ |
| Personal property | $_____ | | |

**G. REMARKS**

_____

_____

_____

## DISABILITY INSURANCE APPLICATION

**INSURED** | D O N A L D | | | E | | | A S T A R | | |
First         Middle Initial         Last

**119. Complete this question only if applying for a DISABILITY OVERHEAD EXPENSE POLICY.**

A. What is the Insured's share of the overhead expenses or the Insured's share of ownership if this is an incorporated business? _____%

B. What is the amount of the Insured's share of the typical monthly expenses?

$_____ Rent      $_____ Maintenance      $_____ Accountant's Fees

$_____ Heat      $_____ Real Estate Taxes      $_____ Insurance Premiums

$_____ Telephone      $_____ Other Taxes (Specify)      $_____ Employees' Salaries (Professional DOE)

$_____ Electricity      _____      $_____ Other Normal Expenses (Itemize)

$_____ Professional Dues and License Fees      $_____ Interest on Business Loans      _____

     $_____ Depreciation      $_____ **TOTAL**

C. How many people are employed by this firm? (Do not include the Insured in the total.)
_____ Full time      _____ Part time

D. How many of the employees are in the same occupation as the Insured? (Do not include the Insured in the total.)
_____ Full time      _____ Part time

The Insured consents to this application and declares that the answers and statements made on this application are correctly recorded, complete and true to the best of his knowledge and belief. Statements in this application are representations and not warranties.

It is agreed that:

(1) If the premium is not paid when the application is signed, no insurance will be in effect. The insurance will take effect at the time the policy is delivered and the premium is paid if the answers and statements in the application are still true to the best of the Insured's knowledge and belief.

(2) If the premium is paid when the application is taken, no disability insurance will have been in effect if Section 1. of the Conditional Disability Insurance Agreement applies.

(3) For each separate period of disability no benefits will be payable until the Beginning Date in question 109. Receipt of an outline of coverage for the policy applied for is acknowledged.

(4) No agent is authorized to make or alter contracts or to waive any of the Company's rights or requirements.

_____      x _Donald E. Astar_
Signature of Insured (if other than Applicant)          Signature of Applicant

Signed at _NORTHBROOK_ _COOK_, _ILLINOIS_     Date _10_ / _02_ / _85_
City      County      State         Month   Day   Year

_James P. ____
Signature of Licensed Agent

90-1 D.I. (0385)                                                (page 5)

## THE NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY

**TO BE COMPLETED BY THE INSURED OR INFORMANT**

INSURED (Please Print) | DONALD | E | ASTAR
First | | Middle Initial | Last

If submitted for purpose other than a new insurance application, please indicate:
☐ Policy Change   ☐ Conversion   ☐ Adding _____ Benefit   ☐ Reinstatement   ☐ Rating Reduction

for Policy(ies) Number _____

☐ Payor Benefit for Applicant (Payor) _____ _____ _____ Relationship to Insured _____
First | Middle Initial | Last

Payor's Date of Birth ___/-/___ Policy Number _____
Month Day Year

**20.** Have you ever had life, disability, or health insurance declined, rated, modified, cancelled, or not renewed?
(If "Yes" explain in REMARKS)   ☐ Yes   ☑ No

**21.** When was your last previous examination or application for life, disability, or accidental death insurance?
Month 6   Year 83   Company EQUITABLE

**22.** Indicate below whether any other Life Insurance on your Life is Individual (Ind) or Group (Grp) and identify In Force (I), Pending (P) or Contemplated (C).
If none check: ☐ NONE

| Insurer | Ind or Grp | Life Insurance Amount | Accidental Death Amount | I, P, or C |
|---|---|---|---|---|
| ALLSTATE | GRP | /00,000 | | I |
| EQUITABLE | IND | 100,000 | | I |
| CENTURY Co. | IND | 20,000 | | I |

**23.** Marital Status:   ☐ Single, Widowed or Divorced   ☑ Married

**24.** Citizen of: ☑ U.S.A.   ☐ Other _____
if other: Visa Type _____ Visa No. _____

**25.** Do you contemplate leaving the United States of America for travel or residence?
(If "Yes" explain in REMARKS)   ☐ Yes   ☑ No

**26.** (Omit for disability insurance)

A. What is your occupation(s)? _____

What are your duties? _____

_____

B. Employer(s) _____
Name

_____
Street & No. or R.F.D.

_____
City          State          Zip Code

C. How long so employed? _____
(If less than 2 years, explain in REMARKS)

**COMPLETE QUESTIONS 27-31 IF INSURED AGE 10 OR OLDER**

**27.** Are you a member of, or do you contemplate joining any branch of the Armed Forces, the R.O.T.C., the National Guard, the U.S. Public Health Service, the Coast Guard, or any component of the Armed Forces Reserve either on an active or inactive status?
(If "Yes," complete Military Section 90-5)   ☐ Yes   ☑ No

**28.** Except as a fare paying passenger on a regularly scheduled flight, have you flown within the past 3 years, or do you contemplate flying in the future?
(If "Yes," complete Aviation Section 90-5)   ☐ Yes   ☑ No

**29.** Have you within the past 2 years participated in or do you contemplate participating in racing (automobile, snowmobile, motorcycle, boat or go-kart) scuba or skin diving, sky diving, hang gliding, mountain climbing or rodeos?
(If "Yes," complete Avocation Section 90-6)   ☐ Yes   ☑ No

**30.** A. What is your Automobile Driver's License Number?
_____ -2234   State Illinois
or, ☐ I do not drive an automobile.
B. In the past 3 years have you been in a motor vehicle accident, charged with a moving violation of any motor vehicle law, or had your license restricted or revoked?
(If "Yes," explain in C., D. and/or REMARKS)   ☐ Yes   ☑ No
C. Moving Violations within the past 3 years:

| Date | Type and Details (Speeding, Reckless Driving, Driving While Intoxicated) | Action (Citation, Fine) | Accident (Yes or No) |
|---|---|---|---|
| | | | |

D. Details on any Accidents: (Include date, citations, damage amounts, injuries.)

**REMARKS:**

I declare that my answers and statements are correctly recorded, complete and true to the best of my knowledge and belief. Statements in this application are representations and not warranties.

Date _____
Month Day Year

_____
Signature of Insured (or Informant)
(Signature not required if reverse side, 90-4 also completed)

90-3 (0983)

| INSURED (if not given on Form 90-3) | | | |
|---|---|---|---|
| | First | Middle Initial | Last |

## NONMEDICAL APPLICATIONS ONLY

**31. A.** Have you smoked cigarettes in the past 10 years? ☑ Yes ☐ No

**B.** Present cigarette smokers:
(1) How many cigarettes do you smoke per day? _____
(Number of cigarettes not number of packs)
(2) How many years have you smoked? _____

**C.** Past cigarette smokers:
(1) How many cigarettes did you smoke per day? _85_
(Number of cigarettes not number of packs)
(2) How many years did you smoke? _6_
(3) When did you quit smoking? _1-81_ Mo. Yr.

**D.** Are you using tobacco in any other form?
If "Yes," specify _____ ☐ Yes ☑ No

**32.** Are you now using any medication or drugs? ☐ Yes ☑ No

**33.** Have you ever been treated for or ever had any indication of:

**A.** Disorder of eyes, ears, nose or throat? ☐ Yes ☑ No

**B.** Dizzy or fainting spells, seizures or convulsions, recurrent headache, paralysis or stroke, mental or nervous disorder? ☐ Yes ☑ No

**C.** Persistent shortness of breath, cough, blood spitting; bronchitis, asthma, emphysema, tuberculosis or other lung or respiratory disorder? ☐ Yes ☑ No

**D.** Chest pain, discomfort or tightness, palpitation, high blood pressure, rheumatic fever, heart murmur, heart attack or other disorder of the heart or blood vessels? ☐ Yes ☑ No

**E.** Jaundice, intestinal bleeding; ulcer, hernia, colitis, diverticulitis, hemorrhoids, recurrent indigestion or other disorder of the stomach, intestines, liver, gall bladder or pancreas? ☐ Yes ☑ No

**F.** Sugar, albumin, blood in urine; venereal disease; stone or other disorder of kidney, bladder, prostate or reproductive organs? ☐ Yes ☑ No

**G.** Diabetes; thyroid or other endocrine disorders? ☐ Yes ☑ No

**H.** Rheumatism, arthritis, gout, or disorder of the muscles or bones, spine, back or joints? ☑ Yes ☐ No

**I.** Deformity, lameness or amputation? ☐ Yes ☑ No

**J.** Disorder of skin, lymph glands, cyst, tumor or cancer? ☐ Yes ☑ No

**K.** Allergies; anemia or other disorder of the blood? ☐ Yes ☑ No

**L.** Alcohol or drug habit? ☐ Yes ☑ No

**34.** Other than above, have you within the past 5 years:

**A.** Had any physician or practitioner examine, advise or treat you? ☑ Yes ☐ No

**B.** Been a patient in a hospital, clinic or medical facility? ☑ Yes ☐ No

**C.** Had EKG, X-ray, other test? ☑ Yes ☐ No

**D.** Been advised to have any test, hospitalization, or surgery which was not completed? ☐ Yes ☑ No

**35.** Have you ever had military service deferment, rejection or discharge because of a physical or mental condition? ☐ Yes ☑ No

**36.** Have you ever requested or received a pension, benefits or payment because of an injury, sickness or disability? GㆍMOTHER ☐ Yes ☑ No

**39. Family History:** Diabetes, cancer, high blood pressure, heart or kidney disease, mental illness or suicide? ☑ Yes ☐ No

| | Age if Living | Family History or Cause of Death | Age at Death |
|---|---|---|---|
| Father | 69 | | |
| Mother | 64 | | |
| Brothers and Sisters | 37-36 | | |

**40. A.** Have you lost weight in the past year? ☐ Yes ☑ No
If "Yes," loss was _____ lbs.

**B.** How long have you been at your present weight? _15 yr_

**C.** Height _5_ ft. _8_ in. **D.** Weight _170_ lbs.

**E.** Did agent measure? ☐ Yes ☑ No

**F.** Did agent weigh? ☐ Yes ☑ No

**42.** If the Insured is under age 1, what was the weight at birth? _____ lbs. _____ ozs.

**43.** Do you have a personal physician? ☐ Yes ☑ No

Name _____

Address _____

City _____ State _____ Zip _____

Date last seen _____ Reason _____
Mo. Day Yr.

**Remarks.** Give details of "Yes" answers. Identify question number. State signs, symptoms and diagnosis of illness and name and full address of any attending physician(s) consulted and dates:

34 ABC   LUTHERAN GENERAL HOSPITAL   7 DAY.
10/84   FOR HERNIATED DISC
        APFELBACH
DR. HENRY ~~APFHALBACH~~   (234-2710)
LAKE FOREST ORTHOPEDICS
800 N. WESTMORELAND RD.
LAKE FOREST, IL. 60045

TREATED W/ INJECTED OF CHEMOPAPATE
MARCH, 1985 - CLEAN BILL OF HEALTH

34 A.   DR. WILLIAM MAUER (D.O.)
        1819 27TH
2/82    ZION, IL. 60099        746-5959

TREATED LOWER BACK PAIN CAUSED BY
MUSCLE SPASMS

NO PROBLEMS AFTER TREATMENTS

I declare that my answers and statements on both sides of this page are correctly recorded, complete and true to the best of my knowledge and belief. Statements in this application are representations and not warranties.

X _Donald M. Aaten_
Signature of Insured (or Informant)

Signed at _NORTHBROOK, IL._   on _10_, _2_, _85_    _James P. Koe_
City   State      Mo. Day Yr.    Signature of Licensed Agent

90-4 (0983)

## NOTICE OF INSURANCE INFORMATION PRACTICES

**To the Applicant and Proposed Insured:**

Thank you for applying for insurance with Northwestern Mutual Life. Some personal information was furnished by you in the application and we may get information from other sources. We may call you from our Home Office in Milwaukee to confirm or add to this information. The questions asked during the phone interview will be detailed so you may wish to have records about your income and health history at hand.

We need such information to see if you qualify for the insurance. When signed, the Authorization below will allow us to obtain this information and to share information with others when necessary. No unnecessary disclosures will be made and all information will be treated as confidential by us and by our reinsurers. However, in some cases, information may have to be disclosed to others, such as your doctor or an insurance regulator, without your prior consent.

You have the right to review and to correct this information. You have the right to get a copy of any investigative consumer report which is done. If you want to know more about our practices and your rights, a full notice can be obtained from the Director of New Business, Northwestern Mutual Life, 720 East Wisconsin Avenue, Milwaukee, WI 53202.

**Medical Information Bureau Notice**

We or our reinsurers may make a brief report to the MIB, Inc. MIB, Inc. is a non-profit organization of life insurance companies. It operates as an information exchange on behalf of its members. MIB, Inc. will give a member company information in its file when:

- you apply or submit a claim to that company for life or health insurance; and
- that company has your signed authorization.

MIB, Inc. will give you information from your file on receipt of a request from you. Medical information will be disclosed only to a medical professional of your choice. Under the provisions of the Fair Credit Reporting Act, you may question the accuracy of information in the file and seek a correction by contacting the MIB, Inc. The address of MIB, Inc. is:

MIB, Inc.
P.O. Box 105, Essex Station
Boston, Massachusetts 02112
Telephone: (617) 426-3660

**Fair Credit Reporting Act Notice**

We may request an investigative consumer report from a consumer reporting agency. These reports contain information about your character, general reputation, personal characteristics, mode of living and health. The information may be obtained through interviews with you, your neighbors, friends and others who know you. On request, we will disclose to you whether or not such a report was done. We will give you the name and address of the consumer reporting firm so that you may request a copy of the report.

## AUTHORIZATION TO OBTAIN AND DISCLOSE INFORMATION

I authorize Northwestern Mutual Life, its agents, employees, reinsurers, insurance support organizations and their representatives to obtain information about me to evaluate this application. This information may be about: (a) age; (b) medical history, condition and care; (c) physical and mental health; (d) occupation; (e) income; (f) avocations; (g) driving record; (h) other personal characteristics; and (i) other insurance. It includes the use of alcohol, drugs and tobacco.

I authorize any physician, medical professional, hospital, clinic, medical facility, the Veterans Administration, the MIB, Inc., employer, consumer reporting agency or other insurance company, to release information about me to Northwestern Mutual Life or its representatives on receipt of this Authorization. Northwestern Mutual Life or its representative may also release this information about me to its reinsurer, to the MIB, Inc., or to another insurance company to whom I have applied or to whom a claim has been made. No other release may be made except as allowed by law or as I further authorize.

This form is valid for 30 months from the date it is signed. I have received copies of this form and the Medical Information Bureau and Fair Credit Reporting Act notices. I authorize Northwestern Mutual Life to obtain an investigative consumer report on me.

☑ I request to be interviewed if an investigative consumer report is done.

Name(s) of Minor Child(ren) or other insured(s) if a parent or guardian is providing authorization:

_____     _____

_____     _____

Signed at *NORTHBROOK, ILLINOIS*
        City & State

Date *10 - 2 - 85*
   Month  Day  Year

Signed X _____
        Proposed Insured or Guardian (Parent if Minor)

### SEND SIGNED FORM WITH APPLICATION — GIVE COPY TO PROPOSED INSURED

90-0721 (0783)

# Northwestern Mutual Life®

## It is recommended that you...

read your policy.

notify your NML agent or the Company at 720 E. Wisconsin Avenue, Milwaukee, Wis. 53202, of an address change.

call your NML agent for information — particularly on a suggestion to terminate or exchange this policy for another policy or plan.

### Election of Trustees

The members of The Northwestern Mutual Life Insurance Company are its policyholders of insurance policies and deferred annuity contracts. The members exercise control through a Board of Trustees. Elections to the Board are held each year at the annual meeting of members. Members are entitled to vote in person or by proxy.

### Disability Income Policy

### Eligible for Annual Dividends

Non-Cancellable and
Guaranteed Renewable to Age 65

Conditionally Renewable to Age 75

MM D 1

Countersigned by _James P. Lee, CLU_

Licensed Resident Agent

R. SCOTT FIRTH, District Agent
125 S. Wilke Road - Suite 103
Arlington Heights, IL 60005
Office: 312-398-6030

**Northwestern Mutual Life**

HARRY P. HOOPIS, C.L.U., General Agent
790 Frontage Rd.
Northfield, IL 60093
Office: 312-441-7850
Res: 312-295-5457

**Northwestern Mutual Life**

The Northwestern Mutual Life Insurance Company agrees to pay the benefits provided in this policy, subject to its terms and conditions. Signed at Milwaukee, Wisconsin on the Date of Issue.

This disability income policy is guaranteed renewable upon timely payment of premiums to the first policy anniversary after the insured's 65th birthday and, during that period, can neither be cancelled nor have its terms or premiums changed by the Company.



CHAIRMAN AND C.E.O.               SECRETARY

## DISABILITY INCOME POLICY

**Eligible For Annual Dividends.**

Non-Cancellable and
Guaranteed Renewable to Age 65

Conditionally Renewable to Age 75

**Right To Return Policy --** Please read this policy carefully. The policy may be returned by the Owner for any reason within ten days after it was received. The policy may be returned to your agent or to the Home Office of the Company at 720 East Wisconsin Avenue, Milwaukee, WI 53202. If returned, the policy will be considered void from the beginning and any premium paid will be refunded.

MMD1

# Northwestern Mutual Life®

| INSURED | DONALD E ASTAR | AGE AND SEX | 33    MALE |
|---------|----------------|-------------|------------|
| POLICY DATE | OCTOBER 2, 1985 | POLICY NUMBER | D 429 516 |

EXCLUSIONS AND LIMITATIONS--SEE SECTION 2 AND THE ATTACHED AGREEMENT FOR LIMITATION OF COVERAGE.

MM D1 (O187)

This policy is a legal contract between the Owner and The Northwestern Mutual Life Insurance Company.
Read your policy carefully.

# GUIDE TO POLICY PROVISIONS

**BENEFITS AND PREMIUMS**

**SECTION 1. BENEFITS**

Description of general terms. Full Benefit payable for total disability. Proportionate Benefit payable for partial disability. How the Proportionate Benefit is determined. Transition Benefit. Lifetime benefit payable for Presumptive Disability. Waiver of Premium Benefit.

**SECTION 2. EXCLUSIONS**

**SECTION 3. CONDITIONAL RIGHT TO RENEW TO AGE 75**

**SECTION 4. CLAIMS**

How to notify the Company of a claim. Proof of disability. How the benefits will be paid. Physical examination may be required. Limits on when you may start a legal action.

**SECTION 5. OWNERSHIP**

Rights of the Owner. Assignment as collateral.

**SECTION 6. PREMIUMS AND REINSTATEMENT**

Payment of premiums. Grace Period of 31 days to pay premiums. Refund of unused premium at death. How to reinstate the policy.

**SECTION 7. THE CONTRACT**

Changes. Incontestability. Misstatement of age. Dividends. Definition of dates.

**ADDITIONAL BENEFITS** (if any)

**APPLICATION**

MMD1

AMENDMENT TO POLICY SPECIFICATIONS

DATE OF ISSUE - OCTOBER 2, 1985

| PLAN AND ADDITIONAL BENEFITS | FULL BENEFIT PER MONTH | | ANNUAL PREMIUM | PAYABLE FOR |
|---|---|---|---|---|
| DISABILITY INCOME | $ | 700 $ | 202.30 | 32 YEARS |
| ADDITIONAL PURCHASE BENEFIT AMOUNT EACH PURCHASE DATE | | 700 | 28.70 | 17 YEARS |

RENEWAL OF COVERAGE BEYOND AGE 65 MAY REQUIRE AN INCREASE IN THE PREMIUM. SEE SECTION 3.

A PREMIUM IS PAYABLE ON THE POLICY DATE AND EVERY 12 POLICY MONTHS THEREAFTER.

THE CURRENT PREMIUM IS $231.00.

THE PREMIUM FOR THIS POLICY IS ON A NONSMOKER BASIS.

| | |
|---|---|
| BEGINNING DATE | 181ST DAY OF DISABILITY IN THE FIRST 360 DAYS AFTER THE START OF DISABILITY. |
| MAXIMUM BENEFIT PERIOD | TO OCTOBER 2, 2017, BUT NOT LESS THAN 24 MONTHS OF BENEFITS. |
| INITIAL PERIOD | TO OCTOBER 2, 2017, BUT NOT LESS THAN 24 MONTHS OF BENEFITS. |

INSURED          DONALD E ASTAR                    AGE AND SEX          33   MALE
POLICY DATE      OCTOBER 2, 1985                   POLICY NUMBER        D 429 516
AMENDMENT DATE   SEPTEMBER 1, 1990
EXCLUSIONS AND LIMITATIONS--SEE SECTION 2 AND THE ATTACHED AGREEMENT FOR
LIMITATION OF COVERAGE.

MM D1 (0187)                                                           021

PC 013510

## DISABILITY INCOME
## APPLICATION FOR POLICY CHANGE
### THE NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY
### MILWAUKEE, WISCONSIN 53202

Send through General Agency to Policyowner Services Dept.

For Unreported or Reported Policy Changes

**POLICY NUMBER:** D 737 462 D429 516

**INSURED:** DONALD E. ASTAR

(Complete one form for each policy, except mergers)

## PLAN AMOUNT CHANGES

1. New Base Policy **Amount**

   $ _____

2. Change in **Base Policy Plan** to: (Any additional benefits not available on the new plan will automatically be terminated.)

   ☐ Disability Income — Level Premium

   ☐ Disability Income — Step Rate
   (Available only in 1st policy year)

   ☐ Social Security Substitute Policy — Level Premium
   (LL & MM Series Only)

   ☐ Social Security Substitute Policy — Step Rate
   (MM series only — Available only in 1st policy year)

   ☐ Small Business Disability Income — Level Premium

   ☐ Small Business Disability Income — Step Rate
   (Available only in 1st policy year)

   ☐ Interim Term _____ Years of Coverage
   (Available only in 1st policy year)

3. New Maximum Benefit Period: _____

4. New Beginning Date:

   Base Policy _____

   Social Security Substitute Benefit _____
   (MN Series Only. SSS Benefit beginning date can be different from base policy only in CA, HI, NJ, NY, & RI)

5. New Occupation Class: 4A 65

6. Initial Disability Period
   (AAAA Risks Only)

   Own Occupation Change:

   ☐ 5 years

   ☒ to age 65

   ☐ to age 70 (MM & MN Series Only)

## BENEFIT CHANGES

7. **Additional Benefits:**

   Circle { A — to attach
            T — to terminate
            C — to change amount

   T   Lifetime Accident Benefit

   T   Lifetime Sickness Benefit

   A T   Lifetime Benefit (LL & prior series only. Complete item 3 for MM and MN Series)

   A T C   Additional Purchase Benefit $ _____ New Amount
   Is this an exchange for the current series APB?
   ☐ Yes   ☐ No

   A T C   Business Additional Purchase Benefit
   $ _____ New Amount

   A T   Proportionate Disability Benefit
   (JJ Series Only)

   A T   Proportionate/Transition Benefit
   (MN Small Business Disability Income Only)

   A T C   Indexed Income Benefit
   Is this an exchange for MM Indexed Income?
   ☐ Yes   ☐ No

   A T   Annually Indexing Benefit

   A T   Future Increase Benefit
   (MN Small Business Disability Income Only)

   A T C   Social Security Substitute Benefit
   $ _____ New Monthly Benefit

   A T C   Small Business Social Security Substitute Benefit
   (Small Business Disability Only)
   ☐ Same as Base Policy (Level or Step Rate)
   ☐ Annually Renewable
   $ _____ Monthly Benefit

   A T C   Annually Renewable Disability Income Benefit
   $ _____ Monthly Benefit

   A T C   Other

PC 013519

NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY

POLICY NUMBER          D 429516          INSURED          Donald E. Astas

**Effective Date.** Attachment of a benefit, change of insured, increase in amount or any change which results in an increase in risk will take effect as of the Underwriting Date. The Underwriting Date is the later of: the date the application is signed, or the date of the required medical examination or nonmedical or paramedical declarations, whichever is required. The increase in risk will be acceptable only if Company requirements place the Insured in the same or a lower premium classification than this policy or if the Owner agrees to pay the extra premium and any reserve charge. Changes which do not result in an increase in risk will take effect on receipt by the Company of an acceptable Application for Policy Change. Applications for Policy Change will be deemed acceptable based on conditions determined by the Company.

**Incontestability.** The Incontestability section in the policy will apply to any increase in risk. For the purpose of that section and with regard to any increase in risk, the date of issue will be the date the change or attachment of a benefit takes effect, and the term "application" will be deemed to include the Application for Policy Change and any related medical information submitted over the insured's signature.

**Other Provisions and Assignments.** In all respects other than the changes stated above or requested in this form, the policy and any assignment will remain the same.

**Submission Waived.** Any provision in the policy about submitting the policy will be deemed complied with when the Company has recorded this form below.

## INSURED'S AUTHORIZATION TO OBTAIN AND DISCLOSE INFORMATION

I authorize Northwestern Mutual Life, its agents, employees, reinsurers, insurance support organizations and their representatives to obtain information about me to evaluate this application. This information may be about (a) age; (b) medical history, condition and care; (c) physical and mental health; (d) occupation; (e) income; (f) avocations; (g) driving record; (h) other personal characteristics; and (i) other insurance. It includes the use of alcohol, drugs and tobacco.

I authorize any physician, medical professional, hospital, clinic, medical facility, the Veterans Administration, the MIB, Inc., employer, consumer reporting agency or other insurance company, to release information about me to Northwestern Mutual Life or its representatives on receipt of this Authorization. Northwestern Mutual Life or its representative may also release this information about me to its reinsurer, to the MIB, Inc., or to another insurance company to whom I have applied or to whom a claim has been made. No other release may be made except as allowed by law or as I further authorize.

This form is valid for 30 months from the date it is signed. A copy will be provided on request. A copy of this Authorization will be as valid as the original. I have received a copy of the Medical Information Bureau and Fair Credit Reporting Act notices. I authorize Northwestern Mutual Life to obtain an investigative consumer report on me.

☐ I request to be interviewed if an investigative consumer report is done.

**No agent is authorized to make or alter contracts or to waive any of the Company's rights or requirements.**

REMARKS:

K.A.B.

_____          X Donald E. Astas
Signature of INSURED if other than Owner(s)          Signature of OWNER(S)*

Date ___9___ / ___1___ / ___90___          Signed at DEERFIELD IL. COOK COUNTY
        Month    Day    Year                                  City, County, & State

* If the Owner is:

● a corporation — The president, vice president, secretary, or treasurer must sign. Enter the name of the corporation and officer's title.

● a partnership — A partner other than the Insured must sign.

● a trustee — Enter the full name and official title of the trustee signing.

_____
Signature of LICENSED AGENT

**For Home Office Completion**

FORM RECORDED AND SUBMISSION OF POLICY WAIVED

The Northwestern Mutual Life Insurance Company

Date _____ SEP 19 1990 _____          By _____

**POLICY NUMBER** _____ **INSURED** _____

## DISABILITY INSURANCE SUPPLEMENT TO APPLICATION FOR POLICY CHANGE

## 7. INSURED'S OCCUPATION

**A.** What is the Insured's primary occupation? _SR. ACCT MGR_

**B.** List any other occupations of the Insured: _NONE_

**C.** What are the Insured's duties and the percent of time spent at each duty for each occupation? _____
_100% MANAGERIAL/ADMINISTRATIVE_
_( NO SALES INVOLVED )_

**D.** Employer's Name: _ALLSTATE LIFE INSURANCE CO._
_1415 LAKE COOK RD._
                                   Street & No. or RFD
_DEERFIELD_          _IL_
        City              State              Zip Code

**E.** How long has the Insured been employed by this employer? _14 yrs' plus_

If less than 5 years, state the Insured's prior occupation(s) and employer(s). _____

**F.** What is the Insured's state of employment? _IL_
                                               (Give name of state)

**G.** Is the Insured actively at work on a full-time basis without medical restrictions?

[✓] Yes  [ ] No   If no, explain. _____

**H.** Does the Insured intend to change occupation(s) or employer(s) within the next six months?

[ ] Yes  [✓] No   If yes, explain. _____

## 14. PREMIUM INFORMATION

**A.** Has the premium for the policy applied for been paid in exchange for the Conditional Disability Insurance Agreement with the same number as this application? [✓] Yes [ ] No

**B.** Payable: [✓] Annually _monthly 15 M_ [ ] Semiannually  [ ] Quarterly

**C.** Will the Insured's employer pay the entire premium for this disability insurance?
[ ] Yes  [✓] No   If yes, answer D. and E.

**D.** Will any part of the premium be included in the Insured's taxable income? [ ] Yes [✓] No

**E.** Will the Insured reimburse the employer for any part of the premium? [ ] Yes [✓] No

**15A.** The Insured's employer is a: [ ] Sole Proprietor  [ ] Partnership  [✓] Corporation
[ ] S Corporation — Date of election ___/___/___  [ ] Other, Specify _____
                                    Month Day  Year

**B.** Does the Insured have an ownership interest in the business? [ ] Yes [✓] No
If yes, what is the percent of ownership? _____ %.

Insured's signature required on page 5B.

Questions 16 to 19 are required because Northwestern Mutual Life's underwriting rules limit the amount of disability insurance on the Insured in this company and elsewhere.

**(A) DISABILITY COVERAGES** List and describe all disability benefits, including:

- disability insurance in all companies, including Northwestern Mutual Life;
- group disability insurance in all companies, including Northwestern Mutual Life;
- private and government pension or retirement plans;
- salary continuation plans;
- association plans;
- credit insurance plans;
- overhead expense insurance; and
- any other coverage which provides disability benefits.

Also include any coverage for which the Insured will become eligible within the next five years after a qualifying period of employment has been met.

Identify: **(I)** In force, **(P)** Pending or **(C)** Contemplated.     If none, check: ☐ **NONE.**

| Insurer | Type Disability Income, Overhead, Buyout, Keyperson etc. | Benefit Amount | Benefit Period Accident | Sickness | I, P, C, or Date of Eligibility | Check if Offset by Social Security | Check if Non-contributory |
|---|---|---|---|---|---|---|---|
| NML | LTD | 1,530 | 65 | 65 | I | or 1565 600.11 555 | |
| NML | LTD | 700 | 65 | 65 | I | | |
| NML | LTD | 1,125 | 65 | 15 | I | | |

B. Will the insurance applied for replace any Northwestern Mutual Life disability insurance?  ☐ Yes  ☒ No
If yes, complete the Conditional Surrender form 17-0789, and the agent should submit any required papers.

C. Will the insurance applied for replace disability insurance from a source other than Northwestern Mutual Life?  ☐ Yes  ☒ No
If yes, complete the information below, and the agent should submit any required papers.

*When issuing any insurance as a result of this application, Northwestern Mutual Life will rely on the fact that the coverage listed below can and will be terminated on the stated date (usually the next premium due date). If the coverage listed below is not terminated on that date, any policy issued and accepted will be rescinded and all premiums will be returned. Northwestern Mutual Life may contact any listed insurer after the stated date to confirm that the coverage has been terminated.*

| Insurance Company | Type Disability Income, Overhead, Buyout, Keyperson etc. | Group or Association Name | Policy Number | Amount to be Replaced | Premium Due Date/ Termination Date |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |

Insured's signature required on page 5B.

RC 013510

**POLICY NUMBER** **INSURED** *Donald Ostar*

**17A. EARNED INCOME** For the prior calendar year, state the income and tax deductible business expense figures from the Insured's occupation(s) as reported on the individual and business income tax returns (including supporting schedules and forms). Figures for the current calendar year should be the Insured's best estimates of what will be reported for federal income tax purposes for the current year. Best estimates on this basis may also be used for the prior calendar year only if the Insured has not yet completed a tax return for that year. Entries which do not agree with tax return information should be explained in Remarks. NOTE: Do not list undeclared income. Limit fringe benefits to those which are asked for in 17A. 1 below.

| | Prior Calendar Year Jan. 1–Dec. 31 | Estimate Current Calendar Year Jan. 1–Dec. 31 |
|---|---|---|

**1. EARNED INCOME from primary occupation:**
If the Insured is salaried, state the actual salary earned last year and the current salary this year. If the salary has recently changed, show the date the change took effect in Remarks.
$ 61,100   $ 64,200

If the Insured is a commissioned salesperson, state the total commissions.
N/A   N/A

State any bonus(es) that the Insured receives on a regular basis. Do not state if included above.
N/A   N/A

If the Insured owns 20% or more of the corporation employing the Insured, state the Insured's share of before-tax net corporate earnings. If the corporation had a loss for the year, put parentheses around the figures in each column, i.e. (losses). Give details of any unusual losses in Remarks.
N/A   N15

If the Insured is an unincorporated sole proprietor or a partner in an unincorporated partnership, state the Insured's share of gross income less the cost of goods sold.
N/A   N/A

State any pension plan contributions or deferred compensation amounts that would cease if the Insured were disabled. Give details and source of this income in Remarks.
± 1,000   ± 1,000

**2. EARNED INCOME from other occupations listed in question 7B:** If none, so state.
N/A   N/A

**3. Total Earned Income:** Add amounts in 17A. 1 and 17A. 2.
61,100   65,200

**B. EXPENSES** State the Insured's tax deductible business expenses from all occupations. If none, so state.
N/A   N/A

**C. NET EARNED INCOME** Line 17A. 3 minus line 17B.
61,100   65,200

**D. UNEARNED INCOME** State the Insured's net personal unearned income. This includes capital gains, interest, dividends, tax exempt unearned income, income from other investments, net rental income, pensions, annuities, and alimony. If none, so state.
± 500   ± 500

**E. NET WORTH** Is the Insured's net worth, exclusive of primary residence, greater than $4,000,000? (Include the Insured's assets less liabilities such as mortgages, loans and debts.)  ☐ Yes  ☒ No

If yes, complete section below. State fair market value less any associated indebtedness.

| Cash savings, stocks, bonds | $_____ | Real estate (Exclude primary residence) | $_____ |
| Business equity (Exclude goodwill) | $_____ | Other (Give details in Remarks) | $_____ |
| Personal property | $_____ | | |

**18.** Has the Insured or any business owned in whole or in part by the Insured ever been in bankruptcy or named as debtor in a credit committee, composition agreement, or receivership action?  ☐ Yes  ☒ No

If yes, give details in Remarks, including whether a bankruptcy or other action involved a business or was personal. If bankruptcy, also state whether proceedings involved Chapter 7, 11, or 13.

Date Discharged: ___/___/___ Where _____
Month Day Year                City          County          State

The Insured consents to this application and declares that the answers and statements made on this application are correctly recorded, complete and true to the best of his knowledge and belief. Statements in this application are representations and not warranties.

Date 9 / 1 / 98
Month Day Year

Signature of Insured _____

DEERFIELD        COOK        IL.
City              County      State

Signature of Licensed Agent _____

☐ Check here if applying for both Life and Disability Insurance

## UNDERWRITING QUESTIONS TO BE ANSWERED BY INSURED

**20.** Have you ever had life, disability, or health insurance declined, rated, modified, cancelled, or not renewed?
*(If yes, explain in REMARKS)* ☒ Yes ☐ No

**21.** When was your last previous examination or application for life, disability or accidental death insurance?
Month _6_ Year _90_ Company _NML_

**22.** (Do not complete for disability insurance)
Indicate below whether any other life insurance on your life is Individual (Ind) or Group (Grp) and identify In Force (I), Pending (P) or Contemplated (C).
If none, check: ☐ **NONE**

| Insurer | Ind or Grp | Life Insurance Amount | Accidental Death Amount | I, P, or C |
|---------|-----------|----------------------|------------------------|------------|
| Equitable | Ind | 100,000 | | I |
| | | | | |
| | | | | |
| | | | | |

**23.** Marital Status: ☐ Single, Widowed or Divorced ☒ Married

**24.** Citizen of: ☒ U.S.A. ☐ Other _____
If other: Visa Type _____ Visa No. _____

**25.** Do you contemplate leaving the United States of America for travel or residence?
*(If yes, explain in REMARKS)* ☐ Yes ☒ No

**26.** (Do not complete for disability insurance)
A. What is your occupation(s)? _____
   What are your duties? _____
B. Employer(s) _____
   Name
   _____
   Street & No. or R.F.D.
   _____
   City    State    Zip Code
C. How long so employed? _____
   *(If less than 2 years, explain in REMARKS)*

**27.** Are you a member of, or do you contemplate joining any branch of the Armed Forces or reserve military unit?
*(If yes, complete Military Section 90-5)* ☐ Yes ☒ No

**28.** Except as a passenger of a regularly scheduled flight, have you flown within the past 2 years, or do you contemplate flying in the future?
*(If yes, complete Aviation Section 90-5)* ☐ Yes ☒ No

**29.** Have you within the past 2 years participated in or do you contemplate participating in racing (automobile, snowmobile, motorcycle, boat or go-kart) underwater or sky diving, hang gliding, mountain or rock climbing or rodeos?
*(If yes, complete Avocation Section 90-6)* ☐ Yes ☒ No

**30** A. What is your Automobile Driver's License Number?
_____ State _____
or, ☐ I do not have a driver's license.
B. In the past 5 years have you been in a motor vehicle accident, charged with a moving violation of any motor vehicle law, or had your license restricted or revoked?
*(If yes, explain in C., D. and/or REMARKS)* ☐ Yes ☒ No
C. Moving Violations within the past 5 years:

| Date | Type and Details (Speeding, Reckless Driving, Driving While Intoxicated, etc.) | Action (Citation, Fine, etc.) | Accident (Yes or No) |
|------|------|------|------|
| | N/A | | |
| | | | |

D. Details on any accidents: (Include date, citations, damage amounts, injuries.)

N/A

**REMARKS.** Give details of "Yes" answers. Identify question number.

20: Has BACK RIDER on NML DI

PC 12519

## UNDERWRITING QUESTIONS TO BE ANSWERED BY INSURED - NON-MEDICAL APPLICATIONS ONLY

INSURED

**31 A.** Have you ever smoked cigarettes? ☐ Yes ☐ No
- ☐ Current smoker
- ☐ Past smoker — Date last smoked a cigarette __/__/__ Mo. Day Yr.

**B.** Are you using tobacco in any other form?
If yes, specify _____ ☐ Yes ☐ No

**32.** Are you using any medication or drugs? ☐ Yes ☒ No

**33.** In the last 10 years, have you been treated for or had any indication of:

**A.** Disorder of eyes, ears, mouth, nose or throat? ☐ Yes ☒ No

**B.** Fainting spells, seizures or convulsions, recurrent headaches, paralysis or stroke, mental, nervous or psychiatric disorder? ☐ Yes ☒ No

**C.** Persistent shortness of breath, cough, blood spitting; bronchitis, asthma, emphysema, tuberculosis or other lung or respiratory disorder? ☐ Yes ☒ No

**D.** Chest pain, discomfort or tightness, palpitation, high blood pressure, heart murmur, heart attack or other disorder of the heart or blood vessels? ☐ Yes ☒ No

**E.** Jaundice, intestinal bleeding; ulcer, hernia, colitis, diverticulitis, recurrent indigestion or other disorder of the stomach, intestines, liver, gall bladder or pancreas? ☐ Yes ☒ No

**F.** Sugar, albumin, blood in urine; venereal disease; stone or other disorder of kidney, bladder, prostate or reproductive organs? ☐ Yes ☒ No

**G.** Diabetes; thyroid or other endocrine disorders? ☐ Yes ☒ No

**H.** Rheumatism, arthritis, gout, or disorder of the muscles or bones, spine, back or joints? ☒ Yes ☐ No

**I.** Deformity, lameness or amputation? ☐ Yes ☒ No

**J.** Disorder of the skin or lymph glands, unexplained fevers, tumor or cancer? ☐ Yes ☒ No

**K.** Allergies; anemia or other disorder of the blood? ☐ Yes ☒ No

**34 A.** In the last 10 years, have you sought or received advice or treatment for use of alcohol or drugs? ☐ Yes ☒ No

**B.** In the last 10 years have you used cocaine, heroin or any other narcotic drug except as legally prescribed by a physician or practitioner? ☐ Yes ☒ No

**C.** In the last 10 years, have you used legally prescribed drugs in excess of dosages prescribed by a physician or practitioner? ☐ Yes ☒ No

**35.** Are you pregnant? ☐ Yes ☒ No

**36.** Other than above, have you within the past 5 years

**A.** Had any physician or practitioner examine, advise or treat you? ☒ Yes ☐ No

**B.** Been a patient in a hospital, clinic or medical facility? ☐ Yes ☐ No

**C.** Had EKG, X-ray, other test? ☒ Yes ☐ No

**D.** Been advised to have any test, hospitalization, or surgery which was not completed? ☐ Yes ☒ No

**37.** Have you ever requested or received a pension, benefits or payment because of an injury, sickness or disability? ☐ Yes ☒ No

**38 A.** Do you have a family history of diabetes, cancer, melanoma, heart or kidney disease, mental illness or suicide? ☐ Yes ☒ No

**B.** Family History

| | Age if Living | Family History or Cause of Death | Age at Death |
|---|---|---|---|
| Father | 72 | | |
| Mother | 69 | | |
| Brothers and Sisters | 2 bros | | |

**39 A.** Height 5 ft. 8 in. **B.** Weight 175 lbs.
**C.** Have you lost weight in the past 6 months? ☐ Yes ☒ No
If yes, loss was ____ lbs.

**40.** If the Insured is under age 1, what was the weight at birth? ____ lbs. ____ ozs.

**41.** Have you ever had a medical diagnosis of or have you received medical advice or treatment for Acquired Immune Deficiency Syndrome (AIDS) or Aids Related Complex (ARC) or any disorder of the immune system? ☐ Yes ☒ No

**42.** Do you have a personal physician or practitioner? ☐ Yes ☒ No

Name _____

Address _____

City _____ State _____ Zip _____

Date last seen __/__/__ Reason _____
Mo Day Yr.

Phone number (____) _____

---

**REMARKS.** Give details of "Yes" answers. Identify question number. State signs, symptoms and diagnosis of illness and name and full address of each physician or practitioner consulted and the dates consulted:

| Question Number | Dates | Details or Conditions Including Treatment and Result | Physician or Practitioner's Name, Address City, State, Zip Code |
|---|---|---|---|
| 33H | Jan - June #2 90 | Physical manipulation of spine - preventive maintenance. had back surgery in early 1980's | Dr. W. J. Mauer D.O. 3401 N. Kennicott Ave Arlington Heights, IL 60004 |

(Additional space for Remarks on reverse side)

### REMARKS CONT'D

| Question Number | Dates | Details or Conditions Including Treatment and Result | Physician's Name, Address City, State, Zip Code |
|---|---|---|---|
| | | | |

The insured consents to this application and declares that the answers and statements made on this application are correctly recorded, complete and true to the best of his knowledge and belief. Statements in this application are representations and not warranties.

It is agreed that:

(1) If the premium is not paid when the application is signed, no insurance will be in effect. The insurance will take effect at the time the policy is delivered and the premium is paid if the answers and statements in the application are still true to the best of the insured's knowledge and belief.

(2) If the premium is paid when the application is taken, no disability insurance will have been in effect if Section I. of the Conditional Disability Insurance Agreement applies.

(3) For each separate period of disability no benefits will be payable until the Beginning Date in question 9.

(4) Receipt of an outline of coverage for the policy applied for is acknowledged.

(5) No agent is authorized to make or alter contracts or to waive any of the Company's rights or requirements.

### INSUREDS AUTHORIZATION TO OBTAIN AND DISCLOSE INFORMATION

I authorize Northwestern Mutual Life, its agents, employees, reinsurers, insurance support organizations and their representatives to obtain information about me to evaluate this application. This information may be about: (a) age; (b) medical history, condition and care; (c) physical and mental health; (d) occupation; (e) income; (f) avocations; (g) driving record; (h) other personal characteristics; and (i) other insurance. It includes the use of alcohol, drugs and tobacco.

I authorize any physician, medical professional, hospital, clinic, medical facility, the Veterans Administration, the MIB, Inc., employer, consumer reporting agency or other insurance company, to release information about me to Northwestern Mutual Life or its representatives on receipt of this Authorization. Northwestern Mutual Life or its representative may also release this information about me to its reinsurer, to the MIB, Inc., or to another insurance company to whom I have applied or to whom a claim has been made. No other release may be made except as allowed by law or as I further authorize.

I have received a copy of the Medical Information Bureau and Fair Credit Reporting Act notices. I authorize Northwestern Mutual Life to obtain an investigative consumer report on me.

☑ I request to be interviewed if an investigative consumer report is done.

This form is valid for 30 months from the date it is signed. A copy of this form is as valid as the original and will be provided on request.

_____     _Donald E. Carter_
Signature of Insured (if other than Applicant)     Signature of Applicant

Signed at _DEERFIELD_   _COOK_   _IL_    Date _9 / 1 / 90_
City     County     State     Month Day Year

_____
Signature of Licensed Agent

**It is recommended that you ...**

read your policy.

notify your Northwestern Mutual agent or the Company at 720 E. Wisconsin Avenue, Milwaukee, Wis. 53202, of an address change.

call your Northwestern Mutual agent for information -- particularly on a suggestion to terminate or exchange this policy for another policy or plan.

**Election Of Trustees**

The members of The Northwestern Mutual Life Insurance Company are its policyholders of insurance policies and deferred annuity contracts. The members exercise control through a Board of Trustees. Elections to the Board are held each year at the annual meeting of members. Members are entitled to vote in person or by proxy.

**DISABILITY INCOME POLICY**

**Eligible For Annual Dividends.**

Non-Cancellable and
Guaranteed Renewable to Age 65

Conditionally Renewable to Age 75

MMD1

Countersigned by _____
                              Licensed Resident Agent

**Northwestern Mutual Life®**


COPY
FIELD

**Northwestern Mutual Life**

October 30, 1985

Donald E  Astar
D 429 516

Donald E  Astar
24140 Deer Ridge Ln
Antioch IL  60002

Thank you for your application.  Your Northwestern Mutual insurance has been mailed to your Agent, James P Noe, CLU, who may have reviewed it with you already.  Nevertheless, we wanted you to have a written explanation for your records.

Because of the back history, the insurance was issued with an Exclusion Rider. We will, at your request, consider possible removal of the Exclusion Rider on the third policy anniversary, assuming you have been symptom free during the interim. Your Agent will assist in signing any necessary forms.

Since the premium was paid with the application, there has been coverage under the Conditional Disability Insurance Agreement while the application was being considered.  This coverage will be in effect until November 17, 1985.  Signing the Exclusion Rider form on or before this date, will allow the coverage to continue.

If you should choose not to sign the Exclusion Rider form, the insurance benefits will terminate and all premiums paid will be refunded.

We encourage you to discuss this letter in depth with your Agent, who will be glad to answer or refer to us any additional questions you may have regarding your Northwestern Mutual insurance.

We look forward to serving you.

Cheryl Svehlek
New Business Department

CS:wa

cc:  021
     43501

The original of this letter
will be released to the
Applicant on the above date.

The Northwestern Mutual Life Insurance Company • 720 East Wisconsin Avenue, Milwaukee, Wisconsin 53202 • 414 271-1444

**Northwestern Mutual Life**

October 30, 1985

Donald E  Astar
D 429 516

Donald E  Astar
24140 Deer Ridge Ln
Antioch IL  60002

Thank you for your application.  Your Northwestern Mutual insurance has
been mailed to your Agent, James P Noe, CLU, who may have reviewed it with
you already.  Nevertheless, we wanted you to have a written explanation for
your records.

Because of the back history, the insurance was issued with an Exclusion
Rider. We will, at your request, consider possible removal of the Exclusion
Rider on the third policy anniversary, assuming you have been symptom free
during the interim. Your Agent will assist in signing any necessary forms.

Since the premium was paid with the application, there has been coverage
under the Conditional Disability Insurance Agreement while the application
was being considered.  This coverage will be in effect until November 17,
1985.  Signing the Exclusion Rider form on or before this date, will allow
the coverage to continue.

If you should choose not to sign the Exclusion Rider form, the insurance
benefits will terminate and all premiums paid will be refunded.

We encourage you to discuss this letter in depth with your Agent, who will
be glad to answer or refer to us any additional questions you may have
regarding your Northwestern Mutual insurance.

We look forward to serving you.

*Cheryl Svehlek*

Cheryl Svehlek
New Business Department

CS:wa

cc:  021
     43501

The Northwestern Mutual Life Insurance Company • 720 East Wisconsin Avenue, Milwaukee, Wisconsin 53202 •  414 271-1444



**Northwestern Mutual Life**

LINKGRAM          DATE  10/30/85          TIME SENT  12.43 PM

   TO:  AGENT  43501

ATTN:  JIM NOE

FROM:  DAWN FOR CHERYL SVEHLEK
       NEW BUSINESS
       RISK APPRAISAL CENTRAL.

   RE:  ASTAR, DONALD E.          NR  D429516

JIM,  WE DO NOT HAVE RIDERS COVERING EVERY PART OF THE

BODY AND THEREFORE THE RIDER TERMS ARE BROAD.  IF A

CLAIM WOULD OCCUR, THE CLAIMS AREA WILL DETERMINE IF THE

DISABILITY IS RELATED TO THE PART OF THE BACK CONTAINING

THE RIDER OR NOT.  THIS IS HOW EVERY RIDER IS TREATED.

0003

## THE NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY

### PRODUCTION AND COMMISSION CREDITS

1. Production and Commission Credits will be based on the designations below. (One vertical column per Writing Agent.)
2. Any changes required in the interest of the Writing Agent under current regulations on Policy Changes will be made by the Agency Department.

### PRODUCTION AND COMMISSION CREDITS

NUMBER OF AGENTS _____1_____

| AGENT NUMBER (Servicing Agent First) | AGENT'S FULL NAME (Last Name First) | % INTEREST | CONTRACT TYPE Primary or Secondary (P or S) | If Contract Type "S" enter secondary Appointing Agent Number |
|---|---|---|---|---|
| 4 4 5 4 8 | KRUEGER, DAVID E. | 100.0 | P | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

### TO BE COMPLETED BY AGENT AND INSURED FOR ALL CHANGES REQUIRING EVIDENCE OF INSURABILITY

**Agent: Complete and Sign**

A. Will the change applied for replace insurance on Insured's life in this Company or elsewhere?

☐ Yes   ☑ No   ☐ Not Applicable

(If "yes" explain and submit required papers.)

B. I have given the Insured the Medical Information Bureau and Fair Credit Reporting Act notices required by Federal regulation.

_Signature of Agent_

**Insured: Complete and Sign**

A. Will the change applied for replace insurance on your life in this Company or elsewhere?

☐ Yes   ☑ No   ☐ Not Applicable

B. I acknowledge receipt of the Medical Information Bureau and Fair Credit Reporting Act notices.

_Donald E. Astor_
_Signature of Insured_

Note: Complete Supplement to Application for Policy Change or Correction (90-1279-01), if applicable.

### AGENT'S ADDITIONAL REMARKS

Northwestern Mutual Life introduced disability insurance more than 17 years ago. Disability income insurance replaces a portion of income lost due to total or partial disability.

Since that time, the Company has become the leading mutual company in the sale of individual non-cancellable disability insurance. By adding policy improvements, we've continued to make a good thing even better.

## UNILATERAL IMPROVEMENTS

In 1987, we're doing it again. Continuing our long tradition of mutuality, Northwestern Mutual Life is offering several new enhancements to its previous disability income insurance policies, with no additional premium to the policyowner.

Northwestern Mutual Life is unilaterally extending the following features to owners of existing policies. These new improved benefits will take effect January 1, 1987, if the Insured is not disabled on that date. If the Insured is disabled on January 1, 1987, the enhancements will take effect on the date that the Insured recovers from disability and will only apply to any subsequent disability.

Since these features will improve the policy, we suggest that you file this brochure with your disability income policy.

These improvements apply to Insureds with Regular Long Term and Social Security Substitute Policies or Benefits under the following policy series: MM, LP, LL, KL, KK and JJ with Partial Benefits.

## BASE EARNED INCOME

Base Earned Income, prior to disability, is used to determine the Proportionate Benefit during a partial disability. The greater your prior monthly earnings are, compared to your earnings while disabled, the greater your Proportionate Benefit will be.

The definition of Base Earned Income has been amended to read as follows:

Base Earned Income. During the first twelve months of a disability, Base Earned Income is the average monthly earned income of the Insured for:

☐ a twelve consecutive month period during the twenty-four month period before the start of disability, or

☐ *any two of the five calendar years before the start of disability.

The period which generates the highest average (and therefore the highest benefit amount) will be used.

*This second provision is new. You now have alternative earning periods from which to choose.

## PROPORTIONATE BENEFIT

The Proportionate Benefit compensates for a Loss of Earned Income caused by the Insured's partial disability.

The Proportionate Benefit has been amended to read as follows for:

Regular Long Term Coverage — If the Insured has at least an 80% Loss of Earned Income, the Proportionate Benefit amount will be 100% of the Full Benefit.

Social Security Substitute Policies or Benefits — If the Insured has at least an 80% Loss of Earned Income, the Proportionate Benefit amount will be 100% of the Benefit (Full or Reduced) that is used to determine the Proportionate Benefit.

Your disability income policy always contained a Proportionate Benefit provision for a partial disability for policy series MM, LP, LL, KL, KK and JJ with Partial Benefits. However, the key to the enhancement is "80%". If the Insured has at least an 80% Loss of Earned Income, the Proportionate Benefit amount will be 100% of the Full Benefit for Regular Long Term coverage and 100% of the Benefit, Full or Reduced, for Social Security Substitute Policies or Benefits.

## TRANSITION BENEFIT

The Transition Benefit helps an individual to adjust to full-time work after a period of disability. It is payable as a Proportionate Benefit based on the Insured's actual Loss of Earned Income during the transition period.

The Transition Benefit has been amended to read as follows:

The Company will pay a Proportionate Benefit for up to the first twelve months after the Insured's recovery from a disability, provided:

☐ the Insured was disabled until the Beginning Date;

☐ the Insured has returned to full-time employment;

☐ **the Insured has at least a 20% Loss of Earned Income for the month for which the benefit is claimed, and

☐ the month for which the benefit is claimed is within the Maximum Benefit Period.

This benefit is payable for up to twelve months for each separate disability. For any month this benefit is payable, the premiums will be waived.

Prior to this change, the Transition Benefit would have only been payable for three months following recovery from a disability which lasted one year and a subsequent return to full-time work. Now this benefit can be payable for up to twelve months to help the Insured rebuild earnings after a return to full-time work.

**25% Loss of Earned Income requirement for policy series: LP, LL, KL, KK and JJ with Partial Benefits.

**Northwestern Mutual Life**

February 27, 1987

Donald E Astar
24140 Derr Ridge Ln
Antioch IL 60002

Dear Policyowner:

In our continuing effort to provide you with the finest coverage available, I am pleased to inform you of several important improvements in your Northwestern Mutual Life disability income policies. These improved benefits will be added automatically to your policies with no increase in premium to you.

These improvements are extended to owners of Regular Long Term and Social Security Substitute Policies or Benefits, at no increase in premium for the following policies series:  MM, LP, LL, KL, KK, and JJ with Partial Benefits.  These are explained in the enclosed brochure which should be filed with your policies.  These improvements apply to covered claims resulting from periods of disability originating on or after January 1, 1987.

These changes may already appear in your policies depending on your date of purchase.  In any event, you should review your policies and the brochure carefully to become familiar with these important changes.  We recommend that you file the brochure with your policies for ready reference.

Should you wish a further explanation of the policy improvements or should you feel your disability insurance program needs to be brought up to date, please consult your Northwestern Mutual Life insurance agent, or fill out and mail the enclosed reply card.

Northwestern Mutual Life is dedicated to quality products and services.  As the number one mutual company issuing non-cancellable and guaranteed renewable disability income coverage, our commitment is to you, our policyowner.

Sincerely yours,

Charles D. Whittier, CLU, RHU
Manager - Disability Income Sales

CDW:smw

Enclosures

The Northwestern Mutual Life Insurance Company agrees to pay the benefits provided in this policy, subject to its terms and conditions. Signed at Milwaukee, Wisconsin on the Date of Issue.

This disability income policy is guaranteed renewable upon timely payment of premiums to the first policy anniversary after the Insured's 65th birthday and, during that period, can neither be cancelled nor have its terms or premiums changed by the Company.

CHAIRMAN AND C.E.O.                    SECRETARY

## DISABILITY INCOME POLICY

**Eligible For Annual Dividends.**

Non-Cancellable and
Guaranteed Renewable to Age 65

Conditionally Renewable to Age 75

**Right To Return Policy --** Please read this policy carefully. The policy may be returned by the Owner for any reason within ten days after it was received. The policy may be returned to your agent or to the Home Office of the Company at 720 East Wisconsin Avenue, Milwaukee, WI 53202. If returned, the policy will be considered void from the beginning and any premium paid will be refunded.

MMD1


Northwestern Mutual Life®

```
INSURED        DONALD E  ASTAR              AGE AND SEX           38   MALE
POLICY DATE    MARCH 28, 1990               POLICY NUMBER         D 741 687
EXCLUSIONS AND LIMITATIONS--SEE SECTION 2 AND THE ATTACHED AGREEMENT FOR
LIMITATION OF COVERAGE.
MM D1 (0190)                                          Exhibit # 3
```

This policy is a legal contract between the Owner and The Northwestern Mutual Life Insurance Company. Read your policy carefully.

# GUIDE TO POLICY PROVISIONS

**BENEFITS AND PREMIUMS**

**SECTION 1. BENEFITS**

Description of general terms. Full Benefit payable for total disability. Proportionate Benefit payable for partial disability. How the Proportionate Benefit is determined. Transition Benefit. Lifetime benefit payable for Presumptive Total Disability. Waiver of Premium Benefit.

**SECTION 2. EXCLUSIONS AND LIMITATIONS**

**SECTION 3. CONDITIONAL RIGHT TO RENEW TO AGE 75**

**SECTION 4. CLAIMS**

How to notify the Company of a claim. Proof of disability. How the benefits will be paid. Physical examination may be required. Limits on when you may start a legal action. Financial examination may be required.

**SECTION 5. OWNERSHIP**

Rights of the Owner. Assignment as collateral.

**SECTION 6. PREMIUMS AND REINSTATEMENT**

Payment of premiums. Grace Period of 31 days to pay premiums. Refund of unused premium at death. How to reinstate the policy.

**SECTION 7. THE CONTRACT**

Changes. Time limit on certain defenses. Misstatement of age. Dividends. Definition of dates.

**ADDITIONAL BENEFITS (if any)**

**APPLICATION**

MMD.1.(0190)

BENEFITS AND PREMIUMS        SEE ATTACHED DOC. 1278
DATE OF ISSUE - MARCH 28, 1990

| PLAN AND ADDITIONAL BENEFITS | FULL BENEFIT PER MONTH | ANNUAL PREMIUM | PAYABLE FOR |
|---|---|---|---|
| DISABILITY INCOME | $   1,125   $ | 491.63 | 28 YEARS |

RENEWAL OF COVERAGE BEYOND AGE 65 MAY REQUIRE AN INCREASE IN THE PREMIUM. SEE SECTION 3.

A PREMIUM IS PAYABLE ON THE POLICY DATE AND EVERY 12 POLICY MONTHS THEREAFTER.

THE FIRST PREMIUM IS      $491.63.

THE PREMIUM FOR THIS POLICY IS ON A NONSMOKER BASIS FOR OCCUPATION CLASS 4A.

| | |
|---|---|
| BEGINNING DATE | 181ST DAY OF DISABILITY IN THE FIRST 360 DAYS AFTER THE START OF DISABILITY. |
| MAXIMUM BENEFIT PERIOD | TO MARCH 28, 2018, BUT NOT LESS THAN 24 MONTHS OF BENEFITS. |
| INITIAL PERIOD | TO MARCH 28, 2018, BUT NOT LESS THAN 24 MONTHS OF BENEFITS. |

OWNER          DONALD E  ASTAR, THE INSURED

| | | | |
|---|---|---|---|
| INSURED | DONALD E  ASTAR | AGE AND SEX | 38   MALE |
| POLICY DATE | MARCH 28, 1990 | POLICY NUMBER | D 741 687 |

EXCLUSIONS AND LIMITATIONS--SEE SECTION 2 AND THE ATTACHED AGREEMENT FOR LIMITATION OF COVERAGE.

MM D1 (O19O)                    PAGE 3                         O21

PC 013509

Send to your
General Agency
to Policyowner
Services Dept.

**DISABILITY INCOME**
**APPLICATION FOR POLICY CHANGE**
THE NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY
MILWAUKEE, WISCONSIN 53202

for reported
Policy
Changes

**POLICY NUMBER:** D74687          **INSURED:** DONALD E. PETER
(Complete one form for each policy, Except mergers)

## PLAN/AMOUNT CHANGES

**1.** New Base Policy **Amount**

$ _____

**2.** Change in **Base Policy Plan** to: (Any additional benefits not available on the new plan will automatically be terminated.)

☐ Disability Income — Level Premium

☐ Disability Income — Step Rate
   (Available only in 1st policy year)

☐ Social Security Substitute Policy — Level Premium
   (LL & MM Series Only)

☐ Social Security Substitute Policy — Step Rate
   (MM series only — Available only in 1st policy year)

☐ Small Business Disability Income — Level Premium

☐ Small Business Disability Income — Step Rate
   (Available only in 1st policy year)

☐ Interim Term _____
   Years of Coverage
   (Available only in 1st policy year)

**3.** New Maximum Benefit Period: _____

**4.** New Beginning Date:

   Base Policy _____

   Social Security Substitute Benefit _____
   (MN Series Only. SSS Benefit beginning date can be different from base policy only in CA, HI, NJ, NY, & RI)

**5.** New Occupation Class: 4A65

**6.** Initial Disability Period
   (AAAA Risks Only)

   Own Occupation Change:

   ☐ 5 years

   ☒ to age 65

   ☐ to age 70 (MM & MN Series Only)

## BENEFIT CHANGES

**7.** Additional Benefits:

Circle { A — to attach
   T — to terminate
   C — to change amount

A T C  Indexed Income Benefit

   Is this an exchange for MM Indexed Income?
   ☐ Yes  ☐ No

A T  Annually Indexing Benefit

A T  Future Increase Benefit
   (MN Small Business Disability Income Only)

T   Lifetime Accident Benefit

T   Lifetime Sickness Benefit

A T  Lifetime Benefit (LL & prior series only. Complete item 3 for MM and MN Series)

A T C  Additional Purchase Benefit $ _____
   New Amount
   Is this an exchange for the current series APB?
   ☐ Yes  ☐ No

A T C  Business Additional Purchase Benefit
   $ _____
   New Amount

A T  Proportionate Disability Benefit
   (JJ Series Only)

A T  Proportionate/Transition Benefit
   (MN Small Business Disability Income Only)

A T C  Social Security Substitute Benefit
   $ _____
   New Monthly Benefit

A T C  Small Business Social Security Substitute Benefit
   (Small Business Disability Only)
   ☐ Same as Base Policy (Level or Step Rate)
   ☐ Annually Renewable
   $ _____
   Monthly Benefit

A T C  Annually Renewable Disability Income Benefit
   $ _____
   Monthly Benefit

A T C  Other

PC 013509

NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY

POLICY NUMBER _____ INSURED _____

**Effective Date.** Attachment of a benefit, change of insured, increase in amount or any change which results in an increase in risk will take effect as of the Underwriting Date. The Underwriting Date is the later of: the date the application is signed, or the date of the required medical examination or nonmedical or paramedical declarations, whichever is required. The increase in risk will be acceptable only if Company requirements place the Insured in the same or a lower premium classification than this policy or if the Owner agrees to pay the extra premium and any reserve charge. Changes which do not result in an increase in risk will take effect on receipt by the Company of an acceptable Application for Policy Change. Applications for Policy Change will be deemed acceptable based on conditions determined by the Company.

**Incontestability.** The Incontestability section in the policy will apply to any increase in risk. For the purpose of that section and with regard to any increase in risk, the date of issue will be the date the change or attachment of a benefit takes effect, and the term "application" will be deemed to include the Application for Policy Change and any related medical information submitted over the insured's signature.

**Other Provisions and Assignments.** In all respects other than the changes stated above or requested in this form, the policy and any assignment will remain the same.

**Submission Waived.** Any provision in the policy about submitting the policy will be deemed complied with when the Company has recorded this form below.

## INSURED'S AUTHORIZATION TO OBTAIN AND DISCLOSE INFORMATION

I authorize Northwestern Mutual Life, its agents, employees, reinsurers, insurance support organizations and their representatives to obtain information about me to evaluate this application. This information may be about (a) age; (b) medical history, condition and care; (c) physical and mental health; (d) occupation; (e) income; (f) avocations; (g) driving record; (h) other personal characteristics; and (i) other insurance. It includes the use of alcohol, drugs and tobacco.

I authorize any physician, medical professional, hospital, clinic, medical facility, the Veterans Administration, the MIB, Inc., employer, consumer reporting agency or other insurance company, to release information about me to Northwestern Mutual Life or its representatives on receipt of this Authorization. Northwestern Mutual Life or its representative may also release this information about me to its reinsurer, to the MIB, Inc., or to another insurance company to whom I have applied or to whom a claim has been made. No other release may be made except as allowed by law or as I further authorize.

This form is valid for 30 months from the date it is signed. A copy may be provided on request. A copy of this Authorization will be as valid as the original. I have received a copy of the Medical Information Bureau and Fair Credit Reporting Act notices. I authorize Northwestern Mutual Life to obtain an investigative consumer report on me.

☐ I request to be interviewed if an investigative consumer report is done.

**No agent is authorized to make or alter contracts or to waive any of the Company's rights or requirements.**

REMARKS: _SEE ATTACHED POLICY CHANGE QUOTE_

K.A.B.

_____          ⊗ → _Donald E. Aster_
Signature of INSURED if other than Owner(s)              Signature of OWNER(S)*
                                                          _DONALD E. ASTER_

Date  _9_  /  _1_  /  _90_        Signed at  _DEERFIELD    COOK   IL_
      Month     Day      Year                   City, County, & State

* If the Owner is:

● a corporation — The president, vice president, secretary or treasurer must sign. Enter the name of the corporation and officer's title.

● a partnership — A partner other than the Insured must sign.

● a trustee — Enter the full name and official title of the trustee signing.

_____
Signature of LICENSED AGENT

**For Home Office Completion**

FORM RECORDED AND SUBMISSION OF POLICY WAIVED

The Northwestern Mutual Life Insurance Company

Date _____ SEP 1 9 1990 _____        By _____
                                          Director - Central Policy Services Dept.

PC 013509

POLICY NUMBER _____  INSURED _____

DISABILITY INSURANCE SUPPLEMENTAL APPLICATION FOR POLICY CHANGE

## 7. INSURED'S OCCUPATION

**A.** What is the Insured's primary occupation? _SR. ACCT. MGR._

**B.** List any other occupations of the Insured: _NONE_

**C.** What are the Insured's duties and the percent of time spent at each duty for each occupation? _____
_100% MANAGERIAL / ADMINISTRATIVE_
_NO SALES INVOLVED_

**D.** Employer's Name: _ALLSTATE LIFE INS. CO._
_1415 LAKE COOK RD._
Street & No. or RFD
_DEERFIELD          IL._
City          State          Zip Code

**E.** How long has the Insured been employed by this employer? _____

If less than 5 years, state the Insured's prior occupation(s) and employer(s). _____

**F.** What is the Insured's state of employment? _IL_
(Give name of state)

**G.** Is the Insured actively at work on a full-time basis without medical restrictions?
☑ Yes   ☐ No   If no, explain. _____

**H.** Does the Insured intend to change occupation(s) or employer(s) within the next six months?
☐ Yes   ☑ No   If yes, explain. _____

## 14. PREMIUM INFORMATION

**A.** Has the premium for the policy applied for been paid in exchange for the Conditional Disability Insurance Agreement with the same number as this application?   ☑ Yes   ☐ No

**B.** Payable:   ☑ Annually _MO. 15_   ☐ Semiannually   ☐ Quarterly

**C.** Will the Insured's employer pay the entire premium for this disability insurance?
☐ Yes   ☑ No   If yes, answer D. and E.

**D.** Will any part of the premium be included in the Insured's taxable income?   ☐ Yes   ☑ No

**E.** Will the Insured reimburse the employer for any part of the premium?   ☐ Yes   ☑ No

**15A.** The Insured's employer is a:   ☐ Sole Proprietor   ☐ Partnership   ☑ Corporation
☐ S Corporation — Date of election ___/___/___   ☐ Other, Specify _____
Month Day Year

**B.** Does the Insured have an ownership interest in the business?   ☐ Yes   ☑ No
If yes, what is the percent of ownership? ____ %.

Insured's signature required on page 5B.

Questions 16 to 19 are required because Northwestern Mutual Life's underwriting rules limit the amount of disability insurance on the insured in this company and elsewhere.

**A. DISABILITY COVERAGES** List and describe all disability benefits including:

- disability insurance in all companies, including Northwestern Mutual Life;
- group disability insurance in all companies, including Northwestern Mutual Life;
- private and government pension or retirement plans;
- salary continuation plans;
- association plans;
- credit insurance plans;
- overhead expense insurance; and
- any other coverage which provides disability benefits.

Also include any coverage for which the insured will become eligible within the next five years after a qualifying period of employment has been met.

Identify: **(I)** In force, **(P)** Pending or **(C)** Contemplated.      If none, check:   ☐ **NONE.**

| Insurer | Type Disability Income, Overhead, Buyout, Keyperson etc. | Benefit Amount | Benefit Period Accident | Benefit Period Sickness | I, P, C, or Date of Eligibility | Check if Offset by Social Security | Check if Non-contributory |
|---------|------|------|------|------|------|------|------|
| NML | LTD | 1550 | 65 | 65 | I | OK 1550, 800 is 555 | |
| NML | LTD | 700 | 65 | 65 | I | | |
| NML | LTD | 1,125 | 65 | 65 | I | | |

B. Will the insurance applied for replace any Northwestern Mutual Life disability insurance?   ☐ Yes   ☒ No
If yes, complete the Conditional Surrender form 17-0789, and the agent should submit any required papers.

C. Will the insurance applied for replace disability insurance from a source other than Northwestern Mutual Life?   ☐ Yes   ☐ No
If yes, complete the information below, and the agent should submit any required papers.

*When issuing any insurance as a result of this application, Northwestern Mutual Life will rely on the fact that the coverage listed below can and will be terminated on the stated date (usually the next premium due date). If the coverage listed below is not terminated on that date, any policy issued and accepted will be rescinded and all premiums will be returned. Northwestern Mutual Life may contact any listed insurer after the stated date to confirm that the coverage has been terminated.*

| Insurance Company | Type Disability Income, Overhead, Buyout, Keyperson etc. | Group or Association Name | Policy Number | Amount to be Replaced | Premium Due Date/ Termination Date |
|------|------|------|------|------|------|
| | | | | | |
| | | | | | |
| | | | | | |

Insured's signature required on page 5B.

PC 013509

**POLICY NUMBER**        **INSURED**

**17A. EARNED INCOME** For the prior calendar year, state the income and tax deductible business expense figures from the Insured's occupation(s) as reported on the individual and business income tax returns (including supporting schedules and forms). Figures for the current calendar year should be the Insured's best estimates of what will be reported for federal income tax purposes for the current year. Best estimates on this basis may also be used for the prior calendar year only if the Insured has not yet completed a tax return for that year. Entries which do not agree with tax return information should be explained in Remarks. NOTE: Do not list undeclared income. Limit fringe benefits to those which are asked for in 17A. 1 below.

| | Prior Calendar Year Jan. 1–Dec. 31 | Estimate Current Calendar Year Jan. 1–Dec. 31 |
|---|---|---|

**1. EARNED INCOME from primary occupation:**

If the Insured is salaried, state the actual salary earned last year and the current salary this year. If the salary has recently changed, show the date the change took effect in Remarks.    $ _60,000_    $ _64,200_

If the Insured is a commissioned salesperson, state the total commissions.    _N/A_    _N/A_

State any bonus(es) that the Insured receives on a regular basis. Do not state if included above.    _N/A_    _N/A_

If the Insured owns 20% or more of the corporation employing the Insured, state the Insured's share of before-tax net corporate earnings. If the corporation had a loss for the year, put parentheses around the figures in each column, i.e. (losses). Give details of any unusual losses in Remarks.    _N/A_    _N/A_

If the Insured is an unincorporated sole proprietor or a partner in an unincorporated partnership, state the Insured's share of gross income less the cost of goods sold.    _N/A_    _N/A_

State any pension plan contributions or deferred compensation amounts that would cease if the Insured were disabled. Give details and source of this income in Remarks.    _± 1,000_    _± 1,000_

**2. EARNED INCOME from other occupations listed in question 7B:** If none, so state.    _N/A_    _N/A_

**3. Total Earned Income:** Add amounts in 17A. 1 and 17A. 2.    _61,000_    _65,200_

**B. EXPENSES** State the Insured's tax deductible business expenses from all occupations. If none, so state.    _N/A_    _N/A_

**C. NET EARNED INCOME** Line 17A. 3 minus line 17B.    _61,000_    _65,200_

**D. UNEARNED INCOME** State the Insured's net personal unearned income. This includes capital gains, interest, dividends, tax exempt unearned income, income from other investments, net rental income, pensions, annuities, and alimony. If none, so state.    _± 500_    _± 500_

**E. NET WORTH** Is the Insured's net worth, exclusive of primary residence, greater than $4,000,000? (Include the insured's assets less liabilities such as mortgages, loans and debts.) ☐ Yes ☑ No

If yes, complete section below. State fair market value less any associated indebtedness.

| | | | |
|---|---|---|---|
| Cash savings, stocks, bonds | $ _____ | Real estate (Exclude primary residence) | $ _____ |
| Business equity (Exclude goodwill) | $ _____ | Other (Give details in Remarks) | $ _____ |
| Personal property | $ _____ | | |

**18.** Has the Insured or any business owned in whole or in part by the Insured ever been in bankruptcy or named as debtor in a credit committee, composition agreement, or receivership action? ☐ Yes ☑ No

If yes, give details in Remarks, including whether a bankruptcy or other action involved a business or was personal. If bankruptcy, also state whether proceedings involved Chapter 7, 11, or 13.

Date Discharged: ___ / ___ / ___ Where: _____

    Month  Day  Year       City      County      State

**The insured consents to this application and declares that the answers and statements made on this application are correctly recorded, complete and true to the best of his knowledge and belief. Statements in this application are representations and not warranties.**

Date _5 / 11 / 90_
    Month  Day  Year

_DEERFIELD_      _COOK_      _IL_
  City      County      State

_____ Signature of Insured

_____ Signature of Licensed Agent.

Case: 1:18-cv-04895 Document #: 1-1 Filed: 07/18/18 Page 97 of 121 PageID #:102

## UNDERWRITING QUESTIONS TO BE ANSWERED BY INSURED

☐ Check here if applying for
Life and Disability Insurance

**20.** Have you ever had life, disability, or health insurance declined, rated, modified, cancelled, or not renewed?
*(If yes, explain in REMARKS)* ☑ Yes ☐ No

**21.** When was your last previous examination or application for life, disability, or accidental death insurance?
Month 6  Year 90  Company N M C

**22.** (Do not complete for disability insurance)
Indicate below whether any other life insurance on your life is Individual (Ind) or Group (Grp) and identify In Force (I), Pending (P) or Contemplated (C).
If none, check: ☐ **NONE**

| Insurer | Ind or Grp | Life Insurance Amount | Accidental Death Amount | I, P, or C |
|---|---|---|---|---|
| Equitable | Ind | 100,000 | | I |
| | | | | |
| | | | | |

**23.** Marital Status: Single, Widowed ☐ or Divorced  ☒ Married

**24.** Citizen of: ☒ U.S.A. ☐ Other _____
If other: Visa Type _____ Visa No. _____

**25.** Do you contemplate leaving the United States of America for travel or residence?
*(If yes, explain in REMARKS)* ☐ Yes ☑ No

**26.** (Do not complete for disability insurance)
**A.** What is your occupation(s)? _____
What are your duties? _____
**B.** Employer(s) _____
Name
_____
Street & No. or R.F.D.
_____
City        State        Zip Code
**C.** How long so employed? _____
*(If less than 2 years, explain in REMARKS)*

**27.** Are you a member of, or do you contemplate joining any branch of the Armed Forces or reserve military unit?
*(If yes, complete Military Section 90-5)* ☐ Yes ☒ No

**28.** Except as a passenger on a regularly scheduled flight, have you flown within the past 2 years or do you contemplate flying in the future?
*(If yes, complete Aviation Section 90-5)* ☐ Yes ☒ No

**29.** Have you within the past 2 years participated in or do you contemplate participating in racing (automobile, snow-mobile, motorcycle, boat or go-kart) underwater or sky-diving, hang gliding, mountain or rock climbing or rodeos?
*(If yes, complete Avocation Section 90-6)* ☐ Yes ☒ No

**30. A.** What is your Automobile Driver's License Number?
# A 236 1855 2234  State IL
or, ☐ I do not have a driver's license.

**B.** In the past 5 years have you been in a motor vehicle accident, charged with a moving violation of any motor vehicle law, or had your license restricted or revoked?
*(If yes, explain in C, D. and/or REMARKS)* ☐ Yes ☒ No

**C.** Moving Violations within the past 5 years:

| Date | Type and Details (Speeding, Reckless Driving, Driving While Intoxicated, etc.) | Action (Citation, Fine, etc.) | Accident (Yes or No) |
|---|---|---|---|
| | N/A | | |

**D.** Details on any accidents: (Include date, citations, damage amounts, injuries.)

N/A

---

REMARKS. Give details of "Yes" answers. Identify question number.

20.

Has back rider on NMC DE Policies

90-1 D.L (0787)                                    (page 6)

PC 12509

**ADDITIONAL UNDERWRITING QUESTIONS TO BE ANSWERED BY INSURED - NONMEDICAL APPLICATIONS ONLY**

INSURED: D O N A L D | A S T A R

**31. A. Have you ever smoked cigarettes?** ☐ Yes ☐ No
- ☐ Current smoker
- ☐ Past smoker — Date last smoked a cigarette ___ Mo. Day Yr.

**B. Are you using tobacco in any other form?**
If yes, specify ___ ☐ Yes ☑ No

**32. Are you using any medication or drugs?** ☐ Yes ☑ No

**33. In the last 10 years, have you been treated for or had any indication of:**
A. Disorder of eyes, ears, mouth, nose or throat? ☐ Yes ☑ No

B. Fainting spells, seizures or convulsions, recurrent headaches, paralysis or stroke, mental, nervous or psychiatric disorder? ☐ Yes ☑ No

C. Persistent shortness of breath, cough, blood spitting; bronchitis, asthma, emphysema, tuberculosis or other lung or respiratory disorder? ☐ Yes ☑ No

D. Chest pain, discomfort or tightness, palpitation, high blood pressure, heart murmur, heart attack or other disorder of the heart or blood vessels? ☐ Yes ☑ No

E. Jaundice, intestinal bleeding; ulcer, hernia, colitis, diverticulitis, recurrent indigestion or other disorder of the stomach, intestines, liver, gall bladder or pancreas? ☐ Yes ☑ No

F. Sugar, albumin, blood in urine; venereal disease; stone or other disorder of kidney, bladder, prostate or reproductive organs? ☐ Yes ☑ No

G. Diabetes; thyroid or other endocrine disorders? ☐ Yes ☑ No

H. Rheumatism, arthritis, gout, or disorder of the muscles or bones, spine, back or joints? ☑ Yes ☐ No

I. Deformity, lameness or amputation? ☐ Yes ☑ No

J. Disorder of the skin or lymph glands, unexplained fevers, tumor or cancer? ☐ Yes ☑ No

K. Allergies; anemia or other disorder of the blood? ☐ Yes ☑ No

**34. A. In the last 10 years, have you sought or received advice or treatment for use of alcohol or drugs?** ☐ Yes ☑ No
B. In the last 10 years have you used cocaine, heroin or any other narcotic drug except as legally prescribed by a physician or practitioner? ☐ Yes ☑ No
C. In the last 10 years, have you used legally prescribed drugs in excess of dosages prescribed by a physician or practitioner? ☐ Yes ☑ No

**35. Are you pregnant?** ☐ Yes ☑ No

**36. Other than above, have you within the past 5 years:**
A. Had any physician or practitioner examine, advise or treat you? ☑ Yes ☐ No
B. Been a patient in a hospital, clinic or medical facility? ☑ Yes ☐ No
C. Had EKG, X-ray, other test? ☑ Yes ☐ No
D. Been advised to have any test, hospitalization, or surgery which was not completed? ☐ Yes ☐ No

**37. Have you ever requested or received a pension, benefits or payment because of an injury, sickness or disability?** ☐ Yes ☑ No

**38. A. Do you have a family history of diabetes, cancer, melanoma, heart or kidney disease, mental illness or suicide?** ☐ Yes ☑ No

**B. Family History**

| | Age if Living | Family History or Cause of Death | Age at Death |
|---|---|---|---|
| Father | 72 | | |
| Mother | 67 | | |
| Brothers and Sisters | 26 yrs. | | |

**39. A. Height** 5 ft. 8 in. **B. Weight** 175 lbs.
C. Have you lost weight in the past 6 months? ☐ Yes ☑ No
If yes, loss was ___ lbs.

**40.** If the Insured is under age 1, what was the weight at birth? ___ lbs. ___ ozs.

**41.** Have you ever had a medical diagnosis of or have you received medical advice or treatment for Acquired Immune Deficiency Syndrome (AIDS) or Aids Related Complex (ARC) or any disorder of the immune system? ☐ Yes ☑ No

**42.** Do you have a personal physician or practitioner? ☐ Yes ☑ No

Name ___
Address ___
City ___ State ___ Zip ___
Date last seen ___ / ___ / ___ Reason ___
Phone number ( ___ ) ___

**REMARKS.** Give details of "Yes" answers. Identify question number. State signs, symptoms and diagnosis of illness and name and full address of each physician or practitioner consulted and the dates consulted:

| Question Number | Dates | Details or Conditions Including Treatment and Result | Physician or Practitioner's Name, Address City, State, Zip Code |
|---|---|---|---|
| 33 H. | Thru June of 90 | Physical manipulation of spine - preventive maintenance. Had back surgery in early 1980s - | Dr. W. J. Mayer, D.O. 3401 N. Kennicott Ave. Arlington Heights, IL. 60004 |

(Additional space for Remarks on reverse side)

## REMARKS CONT'D

| Question Number | Dates | Details or Conditions Including Treatment and Result | Physician's Name, Address City, State, Zip Code |
|---|---|---|---|
| | | | |

**The Insured consents to this application and declares that the answers and statements made on this application are correctly recorded, complete and true to the best of his knowledge and belief. Statements in this application are representations and not warranties.**

It is agreed that:

(1) If the premium is not paid when the application is signed, no insurance will be in effect. The insurance will take effect at the time the policy is delivered and the premium is paid if the answers and statements in the application are still true to the best of the Insured's knowledge and belief.

(2) If the premium is paid when the application is taken, no disability insurance will have been in effect if Section I. of the Conditional Disability Insurance Agreement applies.

(3) For each separate period of disability no benefits will be payable until the Beginning Date in question 9.

(4) Receipt of an outline of coverage for the policy applied for is acknowledged.

(5) No agent is authorized to make or alter contracts or to waive any of the Company's rights or requirements.

### INSUREDS AUTHORIZATION TO OBTAIN AND DISCLOSE INFORMATION

I authorize Northwestern Mutual Life, its agents, employees, reinsurers, insurance support organizations and their representatives to obtain information about me to evaluate this application. This information may be about: (a) age; (b) medical history, condition and care; (c) physical and mental health; (d) occupation; (e) income; (f) avocations; (g) driving record; (h) other personal characteristics; and (i) other insurance. It includes the use of alcohol, drugs and tobacco.

I authorize any physician, medical professional, hospital, clinic, medical facility, the Veterans Administration, the MIB, Inc., employer, consumer reporting agency or other insurance company, to release information about me to Northwestern Mutual Life or its representatives on receipt of this Authorization. Northwestern Mutual Life or its representative may also release this information about me to its reinsurer, to the MIB, Inc., or to another insurance company to whom I have applied or to whom a claim has been made. No other release may be made except as allowed by law or as I further authorize.

I have received a copy of the Medical Information Bureau and Fair Credit Reporting Act notices. I authorize Northwestern Mutual Life to obtain an investigative consumer report on me.

☐ I request to be interviewed if an investigative consumer report is done.

This form is valid for 30 months from the date it is signed. A copy of this form is as valid as the original and will be provided on request.

| Signature of Insured (if other than Applicant) | (X) Donald E. Arter |
|---|---|
| | Signature of Applicant |

Signed at  DEERFIELD  /  COOK  /  IL.  Date  9 / 1 / 90
City / County / State / Month Day Year

Signature of Licensed Agent

**It is recommended that you ...**

read your policy.

notify your Northwestern Mutual agent or the Company at 720 E. Wisconsin Avenue, Milwaukee, Wis. 53202, of an address change.

call your Northwestern Mutual agent for information -- particularly on a suggestion to terminate or exchange this policy for another policy or plan.

**Election Of Trustees**

The members of The Northwestern Mutual Life Insurance Company are its policyholders of insurance policies and deferred annuity contracts. The members exercise control through a Board of Trustees. Elections to the Board are held each year at the annual meeting of members. Members are entitled to vote in person or by proxy.

**DISABILITY INCOME POLICY**

**Eligible For Annual Dividends.**

Non-Cancellable and
Guaranteed Renewable to Age 65

Conditionally Renewable to Age 75

MMD1

Countersigned by _____

Licensed Resident Agent

**Northwestern Mutual Life**®

The Northwestern Mutual Life Insurance Company agrees to pay the benefits provided in this policy, subject to its terms and conditions. Signed at Milwaukee, Wisconsin on the Date of Issue.

This disability income policy is guaranteed renewable upon timely payment of premiums to the first policy anniversary after the Insured's 65th birthday and, during that period, can neither be cancelled nor have its terms or premiums changed by the Company.

PRESIDENT AND C.E.O.                    SECRETARY

## IMPORTANT NOTICE CONCERNING STATEMENTS IN THE APPLICATION FOR YOUR INSURANCE

Please read the copy of the application attached in this policy. Omissions or misstatements in the application could cause an otherwise valid claim to be denied. Carefully check the application and write to THE NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY, 720 E. Wisconsin Avenue, Milwaukee, Wisconsin 53202, within 10 days, if any information shown on it is not correct and complete, or if any past medical history has been left out of the application. The application is a part of the policy and the policy was issued on the basis that the answers to all questions and the information shown on the application are correct and complete.

## DISABILITY INCOME POLICY

**Eligible For Annual Dividends.**

Non-Cancellable and
Guaranteed Renewable to Age 65

Conditionally Renewable to Age 75

**Right To Return Policy** -- Please read this policy carefully. The policy may be returned by the Owner for any reason within ten days after it was received. The policy may be returned to your agent or to the Home Office of the Company at 720 East Wisconsin Avenue, Milwaukee, Wisconsin 53202. If returned, the policy will be considered void from the beginning and any premium paid will be refunded.

QQ.DI



**Northwestern Mutual Life®**

| | | |
|---|---|---|
| INSURED | Donald E Astar | |
| POLICY DATE | August 28, 1997 | AGE AND SEX    45 Male |
| PLAN | Disability Income | POLICY NUMBER    DI 255 314 |
| Exclusions--See | Section 3. | |

QQ.DI

Exhibit # 4

This policy is a legal contract between the Owner and The Northwestern Mutual Life Insurance Company.
Read your policy carefully.

## GUIDE TO POLICY PROVISIONS

**BENEFITS AND PREMIUMS**

**SECTION 1. GENERAL TERMS AND DEFINITIONS**

Insured and Owner. Terms on schedule of Benefits and Premiums. Regular Occupation. Total Disability. Partial Disability. Licensed Physician. Consumer Price Index.

**SECTION 2. BENEFITS**

Disabilities covered. Full Benefit payable for total disability. Proportionate Benefit payable for partial disability. How the Proportionate Benefit is determined. Transition Benefit. Lifetime Benefit payable for Presumptive Disability. Waiver of Premium Benefit.

**SECTION 3. EXCLUSIONS AND LIMITATIONS**

**SECTION 4. CONDITIONAL RIGHT TO RENEW TOTAL DISABILITY COVERAGE TO AGE 75**

**SECTION 5. CLAIMS**

How to notify the Company of a claim. Proof of disability. How the benefits will be paid. Limits on when you may start a legal action.

**SECTION 6. OWNERSHIP**

Rights of Owner. Assignment as collateral.

**SECTION 7. PREMIUMS AND REINSTATEMENT**

Payment of premiums. Grace Period of 31 days to pay premiums. Refund of unused premium at death. How to reinstate the policy.

**SECTION 8. THE CONTRACT**

Changes. Time limit on certain defenses. Change of plan. Conversion to level premium disability insurance. Dividends. Definition of dates. Termination.

**ADDITIONAL BENEFITS** (if any)

**APPLICATION**

QQ.DI

BENEFITS AND PREMIUMS

Date of Issue - August 28, 1997

| PLAN AND ADDITIONAL BENEFITS | FULL BENEFIT PER MONTH | ANNUAL PREMIUM | PAYABLE FOR |
|---|---|---|---|
| Disability Income | $    1,400 | $    684.18 | 20 Years |

Renewal of coverage beyond age 65 may require an increase in the premium. See Section 4.

A monthly premium, plus an ISA administrative charge, is payable on August 28, 1997 and on the 28th day of every calendar month after that. The monthly premium equals the annual premium multiplied by .0856.

The first monthly premium is $58.57.

The premium for this policy is on a nonsmoker basis for Occupation Class 5A.

BEGINNING DATE                    181st day of disability in the first 360 days after the start of disability.

MAXIMUM BENEFIT PERIOD            To the first policy anniversary (August 28, 2017) following the Insured's 65th birthday, but not less than 24 months of benefits.

INITIAL PERIOD   (Coverage for the Insured's own occupation)

                                  To the first policy anniversary (August 28, 2017) following the Insured's 65th birthday, but not less than 24 months of benefits.

OWNER          Donald E Astar, The Insured
STATE OF ISSUE Illinois

| INSURED | Donald E Astar | AGE AND SEX | 45 Male |
| POLICY DATE | August 28, 1997 | POLICY NUMBER | DI 255 314 |
| PLAN | Disability Income | | |

Exclusions--See Section 3.

QQ.DI                              PAGE 3                                    90

# SECTION 1. GENERAL TERMS AND DEFINITIONS

This policy provides benefits when the Insured is totally or partially disabled. Section 1 gives information about or the meaning of several terms that are used in the policy.

## 1.1 INSURED AND OWNER

The Insured and Owner are named on page 3.

## 1.2 TERMS ON SCHEDULE OF BENEFITS AND PREMIUMS

The schedule of Benefits and Premiums (page 3) has a number of important terms that are used in this policy. These terms are:

**Full Benefit.** This is the maximum amount of monthly income payable under this policy.

**Beginning Date.** This is the date on which benefits begin to accrue after the Insured becomes disabled. Benefits are not payable for the time the Insured is disabled before the Beginning Date. Days of disability due to different causes will be accumulated to satisfy the Beginning Date.

**Maximum Benefit Period.** This is the longest period of time that benefits are payable for disability. In determining the maximum length of time for which benefits are payable, periods of total and partial disability are added together. If page 3 provides that the Maximum Benefit Period has a lifetime benefit for total disability, then see Section 2.7.

**Initial Period.** (Coverage for the Insured's own occupation). During the Initial Period the definition of total disability is based on the Insured's regular occupation at the time the disability starts. The Initial Period starts on the Beginning Date and continues, while the Insured is disabled, for the length of time shown on page 3.

## 1.3 REGULAR OCCUPATION

The words "regular occupation" mean the occupation of the Insured at the time the Insured becomes disabled. If the Insured is regularly engaged in more than one occupation, all of the occupations of the Insured at the time the disability starts will be combined together to be "the regular occupation."

If the Insured is exclusively engaged in:
- a medical or dental specialty for which board certification is available; or
- the specialty of trial law

that specialty is the "regular occupation."

## 1.4 TOTAL DISABILITY

Until the end of the Initial Period, the Insured is totally disabled when unable to perform the principal duties of the regular occupation. After the Initial Period, the Insured is totally disabled when both unable to perform the principal duties of the regular occupation and not gainfully employed in any occupation.

If the Insured can perform one or more of the principal duties of the regular occupation, the Insured is not totally disabled; however, the Insured may qualify as partially disabled.

If the Insured is retired when an accident occurs or a sickness first appears, the Insured is totally disabled when unable to perform the normal activities of a retired person who is the same age but in good health.

## 1.5 PARTIAL DISABILITY

The Insured is partially disabled when:
a. the Insured is unable:
- to perform one or more but not all of the principal duties of the regular occupation; or
- to spend as much time at the regular occupation as before the disability started;
b. the Insured has at least a 20% Loss of Earned Income; and
c. the Insured is gainfully employed in an occupation.

During a period of partial disability following the Beginning Date, the Proportionate Benefit may be payable. Until the Proportionate Benefit has been payable for six months, the Insured need not have a 20% Loss of Earned Income to be partially disabled if:
- the Insured is unable to perform one or more principal duties which accounted for at least 20% of the time the Insured spent at the regular occupation before the disability started; or
- the Insured has at least a 20% loss of time spent at the regular occupation.

## 1.6 LICENSED PHYSICIAN

Licensed Physician means a physician, other than the Insured, who is acting within the scope of his or her license. If disability is due to a mental or nervous condition, Licensed Physician means psychiatrist or licensed doctoral level psychologist other than the Insured.

## 1.7 REGULAR CARE OF A LICENSED PHYSICIAN

Regular Care of a Licensed Physician means personal care and attention appropriate to the condition causing disability. This care must be at such intervals and frequency as will lead to the Insured returning to the principal duties of the regular occupation.

If the Company determines that Regular Care of a Licensed Physician would be of no further use to the Insured, the requirement of such care will be waived.

## 1.8 CONSUMER PRICE INDEX

A consumer price index is used to determine the Indexing Factor as described in Section 2.4 of this policy. The consumer price index used in this policy is the Consumer Price Index for All Urban Consumers, United States City Average, All Items ("CPI-U"). The CPI-U is published by the Bureau of Labor Statistics. If the method for determining the CPI-U is changed, or if it is no longer published, it will be replaced by some other index found by the Company to serve the same purpose.

The "consumer price index for the year the disability started" is the CPI-U for the fourth month before the start of disability. The "consumer price index for the current year of disability" is the CPI-U for the fourth month before the most recent anniversary of the start of disability.

## 1.9 SOCIAL SECURITY SUBSTITUTE (SSS) BENEFIT

This policy may have the SSS Benefit. If so, the schedule of Benefits and Premiums will show the Full Benefit, Beginning Date and Maximum Benefit Period applicable to the SSS Benefit. The terms and conditions of the SSS coverage are set out in the SSS Benefit.

# SECTION 2. BENEFITS

## 2.1 DISABILITIES COVERED BY THE POLICY

Benefits are provided for the Insured's total or partial disability only if:

- the Insured becomes disabled while this policy is in force;

- the Insured is under the Regular Care of a Licensed Physician during disability;

- the disability results from an accident that occurs or a sickness that first appears while this policy is in force; and

- the disability is not excluded under Section 3.

## 2.2 FULL BENEFIT FOR TOTAL DISABILITY

The Full Benefit is payable at the end of the month for each month of total disability between the Beginning Date and the end of the Maximum Benefit Period. When a total disability lasts for a part of a month, 1/30th of the Full Benefit will be payable for each day of total disability.

## 2.3 PROPORTIONATE BENEFIT FOR PARTIAL DISABILITY

The Proportionate Benefit is payable at the end of the month for each month of partial disability between the Beginning Date and the end of the Maximum Benefit Period. When a partial disability lasts for a part of a month, 1/30th of the Proportionate Benefit will be payable for each day of partial disability.

## 2.4 HOW THE PROPORTIONATE BENEFIT IS DETERMINED

The Proportionate Benefit is intended to compensate for a loss of earned income caused by the Insured's disability. The amount of each monthly benefit is the Full Benefit multiplied by Loss of Earned Income and divided by Base Earned Income. Thus, the Proportionate Benefit amount equals:

$$\text{Full Benefit} \quad X \quad \frac{\text{Loss of Earned Income}}{\text{Base Earned Income}}$$

However, if the Insured has at least an 80% Loss of Earned Income, the Proportionate Benefit amount will be 100% of the Full Benefit. In no event will the amount payable be more than 100% of the Full Benefit.

**Choice Of Benefit Amount for First Six Months.** For each of the first six months in which a Proportionate Benefit is payable, the Owner may choose:

- to receive 50% of the Full Benefit; or

- to receive a Benefit based on Loss of Earned Income.

The Owner may alternate between these two choices as to each of the six months. However, the Owner may not change the choice after the Benefit is paid for that month.

The Choice of Benefit Amount does not apply to a Transition Benefit payable under Section 2.5.

**Loss Of Earned Income.** This is:

- the Insured's Base Earned Income; less

- the Insured's Earned Income for the month for which the Benefit is claimed.

The Loss of Earned Income must be caused by the disability for which claim is made.

**Earned Income.** For an Insured who is an employee, Earned Income is:

- the sum of salary, bonuses and commissions paid to the Insured as reported for federal income tax (FIT) purposes; plus

- amounts earned by the Insured which would have resulted in current taxable employee compensation, but instead were contributed by the Insured to a benefit or retirement plan; less

- unreimbursed employee business expenses as reported by the Insured for FIT purposes.

For an Insured who is an owner of a sole proprietorship or a partnership interest, Earned Income is based on amounts as reported for FIT purposes on individual and business tax returns and is:

- the share of gross income from each business, earned by the Insured or others under the Insured's supervision or direction; less

- the Insured's share of normal and customary business expenses. (However, any form of compensation for the Insured's spouse is not deducted as an expense unless the spouse was a paid employee working at least 30 hours per week in the business during the 30 day period before the start of disability.)

For an Insured who is an owner-employee of a corporation or who has Earned Income from more than one source, Earned Income is calculated using all five items of Earned Income as described above.

For amounts in the current or recently ended tax year which have not yet been reported on FIT returns, the calculations above will be based on amounts that will be reported for FIT purposes. Earned Income is determined before the deduction of federal, state and local income taxes. Earned Income does not include forms of unearned income such as: benefits from disability coverage, from deferred compensation, or from retirement plans; dividends; interest; or annuity payments.

At the time a claim for a Proportionate Benefit begins, the Owner must choose:

- to have all items of Earned Income, as described above, credited to the period in which they are earned (accrual basis); or

- to have all items of Earned Income, as described above, credited to the period in which they are received (cash basis). However, income received during a period of disability for work performed prior to the start of the period of disability will not be included in income during the period of disability.

The accounting basis chosen by the Owner will be used to determine both Base Earned Income and Earned Income during a period of disability.

**Base Earned Income.** During the first 12 months of a disability, Base Earned Income is the average monthly Earned Income of the Insured for:

- a 12 consecutive month period during the 24 month period before the start of disability; or

- any two of the five calendar years before the start of disability.

The period which generates the highest average (and therefore the highest benefit amount) will be used.

After the first 12 months of a disability, Base Earned Income is the average monthly Earned Income of the Insured multiplied by an Indexing Factor. The Indexing Factor is:

- the consumer price index for the current year of disability; divided by

- the consumer price index for the year the disability started.

Thus, after 12 months of a disability, Base Earned Income equals:

$$\text{average monthly Earned Income} \times \frac{\text{consumer price index for the current year of disability}}{\text{consumer price index for the year disability started}}$$

In the event the Indexing Factor is less than one, a value of one will be used.

**2.5 TRANSITION BENEFIT**

The Company will pay a Proportionate Benefit for up to the first 12 months after the Insured's recovery from a disability, provided:

- the Insured was disabled until the Beginning Date;

- the Insured has returned to continuous full-time employment;

- the Insured has at least a 20% Loss of Earned Income for the month for which the benefit is claimed; and

- the month for which the benefit is claimed is within the Maximum Benefit Period.

The amount of this Benefit will be determined under Section 2.4. A Loss of Earned Income is used to determine the amount of Transition Benefit to the extent that it is caused by the disability from which the Insured has recovered.

A disability occurring while the Transition Benefit is payable is considered as a continuation of the previous disability.

This Benefit is payable for up to 12 months for each separate disability. For any month this Benefit is payable, premiums will be waived.

## 2.6 TRANSPLANT DONOR

If the Insured donates an organ for transplant to another person, a disability caused by the donation will be considered as caused by sickness.

## 2.7 LIFETIME BENEFIT FOR TOTAL DISABILITY

If page 3 provides that the Maximum Benefit Period has a lifetime benefit for total disability, then the Full Benefit is payable as long as total disability continues during the lifetime of the Insured, provided:

- the Insured is totally disabled on the policy anniversary that follows the 60th birthday of the Insured;

- the total disability continues without interruption to the policy anniversary that follows the 65th birthday of the Insured; and

- the total disability continues without interruption beyond the policy anniversary that follows the 65th birthday of the Insured.

## 2.8 LIFETIME BENEFIT FOR PRESUMPTIVE TOTAL DISABILITY

Even if the Insured is able to work, the Insured will be considered totally disabled if the Insured incurs the total and irrecoverable loss of:

- sight in both eyes;

- use of both hands;

- use of both feet;

- use of one hand and one foot;

- speech; or

- hearing in both ears.

The Full Benefit is payable for this loss provided: the loss occurs while this policy is in force; the loss occurs before the first policy anniversary that follows the 65th birthday of the Insured; the loss results from an accident or sickness; and the loss is not excluded under Section 3. The Insured does not need to be under the care of a physician.

The Full Benefit for the loss:

- is payable monthly;

- starts with the date of loss, not the Beginning Date;

- is payable for as long as the loss continues during the lifetime of the Insured; and

- is in lieu of other benefits payable for total or partial disability.

## 2.9 WAIVER OF PREMIUM BENEFIT

The Company will waive premiums which become due on this policy while the Insured is totally or partially disabled if:

- the disability lasts for at least 90 days; or

- the disability lasts beyond the Beginning Date, if sooner.

The Waiver of Premium Benefit is not limited by the Maximum Benefit Period but is subject to the Limitation While Insured Outside The United States.

If premiums are waived, the Company will also refund that portion of a premium paid which applies to a period of disability beyond the policy month in which the disability began. If a premium is to be waived on a policy anniversary, an annual premium will be waived.

The Company will not waive the payment of premiums after the end of the disability (except where the waiver continues under Section 2.5). The Owner may then keep the policy in force by resuming the payment of premiums as they become due.

## 2.10 REHABILITATION BENEFIT

At the Insured's request, the Company will consider joining in a program to rehabilitate the Insured. The Company's role in the program will be determined by written agreement with the Insured. Benefits will continue during the program under the terms of the agreement.

## 2.11 DISABILITY WITH MULTIPLE CAUSES

If the Insured is disabled from more than one cause, the amount and duration of benefits will not be more than that for any one of the causes.

## 2.12 BENEFITS FOR SEPARATE DISABILITIES

Each separate time the Insured is disabled, a new Initial Period, Beginning Date and Maximum Benefit Period start. A disability is considered a separate disability if:

- Full, Proportionate, or Transition Benefits were, but no longer are, payable for the earlier disability; and either

  - the cause of the later disability is not medically related to the cause of the earlier one, and the Insured had resumed on a full-time continuous basis the principal duties of an occupation for at least 30 consecutive days; or

  - the cause of the later disability is related to the cause of the earlier one, and the later disability starts at least 12 months (or 6 months if this contract has a 24 month or 60 month Maximum Benefit Period) after Full, Proportionate, or Transition Benefits cease being payable for the earlier one.

All other disabilities are considered to be a continuation of the prior disability.

# SECTION 3. EXCLUSIONS AND LIMITATIONS

## 3.1 PRE-EXISTING CONDITIONS

There will be no benefits for a disability or loss that:
- results from an accident that occurred within two years before the Date of Issue;
- results from a sickness that was diagnosed or treated by a health care practitioner within two years before the Date of Issue; or
- results from a sickness that produced symptoms within one year before the Date of Issue that would have caused an ordinarily prudent person to seek medical diagnosis or treatment

if the accident or sickness was not disclosed or was misrepresented in the application.

## 3.2 OTHER EXCLUSIONS

There will be no benefits for a disability or loss that:
- is caused by an act or incident of war, declared or undeclared; or
- is excluded from coverage by an Agreement for Limitation of Coverage.

There will be no benefits for a disability or loss for any period the Insured is incarcerated.

## 3.3 LIMITATION REGARDING PREGNANCY AND CHILDBIRTH

For a disability caused by normal pregnancy or childbirth, the Beginning Date will be the 91st day of disability or the Beginning Date shown on page 3, if later. This limitation does not apply to a disability caused by complications of pregnancy or childbirth.

Complications are physical conditions physicians consider distinct from pregnancy even though caused or worsened by pregnancy. For purposes of this policy, a non-elective caesarian birth is a complication of pregnancy. Examples of conditions that are not complications include false labor, fatigue, and morning sickness.

## 3.4 LIMITATION WHILE INSURED OUTSIDE THE UNITED STATES

Benefits will not be provided for more than 6 monthly benefit periods in total for the life of the policy while the Insured is outside the United States.

# SECTION 4. CONDITIONAL RIGHT TO RENEW TOTAL DISABILITY COVERAGE TO AGE 75

On each policy anniversary between the Insured's 65th and 75th birthdays, the Owner may renew this policy for one year if:
- the Insured is actively and gainfully employed at least 30 hours per week; and
- premiums to renew this policy are paid.

This right to renew ends on the first anniversary on which the Insured is not so employed or on which the Owner chooses not to renew the policy.

For a policy that is renewed, benefits are provided only for total disability. The total disability must be one:
- which occurs while this policy is in force; or
- which commences within 30 days of an accident which occurred while this policy was in force, provided the disability results from the accident.

The premium for each year of renewal will be based on the Insured's age and the Company's rates in use at the time of renewal.

# SECTION 5. CLAIMS

## 5.1 CLAIM FOR POLICY BENEFITS

**Notice Of Claim.** To start a claim for benefits, written notice of claim must be given to the Company within 60 days after the start of any loss covered by this policy. If the notice cannot be given within 60 days, it must be given as soon as reasonably possible. The notice should:

- give the Insured's name and policy number; and
- be sent to the Home Office or be given to an authorized agent of the Company. Mail sent to the Home Office should be addressed as follows:

> The Northwestern Mutual Life Insurance Co.
> Attn: Disability Benefits
> 720 East Wisconsin Avenue
> Milwaukee, Wisconsin 53202

**Proof Of Loss.** For a claim to be payable, the Company must be provided with satisfactory written proof of loss. This is information that the Company deems necessary to determine whether benefits are payable, and if so, the amount of the benefits. The proof of loss will include information about the Insured's health, occupational duties, income both before and after the disability started (including income tax returns for the Insured and for businesses in which the Insured has or had an interest), overhead expenses and disability benefits along with other information as may be required by the Company from time to time. The Company will also need to be provided information as described below under "Other Requirements."

The Company will furnish claim forms for an initial written proof of loss within 15 days after receiving notice of claim. These forms will need to be completed by the Owner, the Insured and the Insured's physician. If these forms are not furnished within the 15 day period, this initial written proof of loss may be made without the use of the Company's forms.

The Company will furnish additional claim forms from time to time while a claim for monthly benefits continues.

Written proof of loss must be given to the Company within 90 days after the end of each monthly period for which benefits are claimed. If the proof is not given within the 90 days, the claim will not be affected if the proof is given as soon as reasonably possible. In any event, the proof required must be given no later than one year and 90 days after the end of each monthly period for which benefits are claimed unless the Owner was legally incapacitated.

**Other Requirements.**

- **Authorizations.** From time to time, the Company will furnish the Insured with authorizations to obtain information. These authorizations must be signed by the Insured and returned to the Company.
- **Medical Examination.** The Company may have the Insured examined by a health care practitioner.
- **Personal Interview.** The Company may conduct a personal interview of the Insured.
- **Financial Examination.** The Company may have the financial records of the Insured or the Owner examined.

Any examination or interview will be performed:

- at the Company's expense;
- by a health care practitioner, interviewer or financial examiner of the Company's choice; and
- as often as is reasonably necessary in connection with a claim.

## 5.2 TIME OF PAYMENT OF CLAIMS

When the Company has received satisfactory proof of loss and other information as required by section 5.1 and the Company has determined that benefits are payable, the Company will pay benefits on a monthly basis.

## 5.3 PAYMENT OF CLAIMS

Benefits will be paid to the Owner or to the Owner's estate.

## 5.4 LEGAL ACTIONS

No legal action may be brought for benefits under this policy within 60 days after written proof of loss has been given. No legal action may be brought after three years (or a longer period that is required by law) from the time written proof is required to be given.

# SECTION 6. OWNERSHIP

## 6.1 POLICY RIGHTS

All policy rights may be exercised by the Owner, or the Owner's successor or transferee.

## 6.2 TRANSFER OF OWNERSHIP

The Owner may transfer the ownership of this policy. Written proof of transfer satisfactory to the Company must be received at its Home Office. The transfer will take effect as of the date it was signed. The Company may require that the policy be sent to its Home Office for endorsement to show the transfer.

## 6.3 COLLATERAL ASSIGNMENT

The Owner may assign this policy as collateral security. The Company is not responsible for the validity or effect of a collateral assignment. The Company will not be responsible to an assignee for any payment or other action taken by the Company before receipt of the assignment in writing at its Home Office.

A collateral assignee is not an Owner. A collateral assignment is not a transfer of ownership. Ownership can be transferred only by complying with Section 6.2.

QQ.DI

# SECTION 7. PREMIUMS AND REINSTATEMENT

## 7.1 PREMIUMS

**Payment.** All premiums after the first are payable at the Home Office or to an authorized agent. A premium must be paid on or before its due date. A receipt signed by an officer of the Company will be furnished on request.

**Frequency.** Premiums may be paid annually, semi-annually or quarterly at the published rates of the Company. A change in premium frequency will take effect on the Company's acceptance of the premium for the new frequency. Premiums may be paid on any other frequency approved by the Company.

**Grace Period.** A grace period of 31 days will be allowed for payment of a premium that is not paid on its due date. This policy will be in full force during this period.

The policy will terminate at the end of the grace period if the premium is not paid.

**Premium Refund At Death.** The Company will refund that portion of any premium paid for a period beyond the date of the Insured's death.

## 7.2 REINSTATEMENT

**Within Late Payment Period.** The late payment period is the first 31 days after the grace period. Within the late payment period, the policy will be reinstated as of the date the overdue premium is paid. No evidence of insurability will be required.

**After The Late Payment Period.** After the late payment period, the cost to reinstate must be paid to the Company. The Company may also require an appli-

cation for reinstatement and evidence of insurability. The policy will be reinstated as of the date the cost to reinstate was paid to the Company if:

- the application is approved by the Company; or
- notice that the application has been disapproved is not given within 45 days from the date the Company receives the application.

The policy will be reinstated as of the date the Company accepts payment of the cost to reinstate if the Company does not require an application.

**Coverage.** If no evidence of insurability is required, the reinstated policy will cover only a disability that starts after the date of reinstatement. If evidence of insurability is required:

- the reinstated policy will cover only a disability that results from an accident that occurs, or from a sickness that first appears, after the date of reinstatement; and
- the Company may attach new provisions and limitations to the policy at the time of reinstatement. All other rights of the Owner and the Company will remain the same.

**Duty With Armed Forces.** If the policy terminates while the Insured is on active duty with the armed forces of any nation or group of nations, the policy may be reinstated without evidence of insurability. The policy will be reinstated as of the date a written request and the pro-rata premium for coverage until the next premium due date are received by the Company. The request must be received:

- no later than 90 days after the Insured's release from active duty; and
- no later than 5 years after the due date of the unpaid premium.

# SECTION 8. THE CONTRACT

## 8.1 ENTIRE CONTRACT; CHANGES

This policy with the application and attached endorsements is the entire contract between the Owner and the Company. No change in this policy is valid unless approved by an officer of the Company. The Company may require that the policy be sent to it to be endorsed to show a change. No agent has authority to change the policy or to waive any of its provisions.

## 8.2 TIME LIMIT ON CERTAIN DEFENSES

In issuing this policy, the Company has relied on the application. The Company may rescind the policy or deny a claim due to a misstatement in the application. However, after this policy has been in force for

two years from the Date of Issue, no misstatement, except a fraudulent misstatement, in the application may be used to rescind the policy or to deny a claim for a disability or loss that starts after the two year period.

In addition, a claim may be denied on the basis that a disability or loss is caused by a Pre-Existing Condition (see Section 3.1). However, the Company may not reduce or deny a claim on that basis if the disability or loss:

- starts after two years from the Date of Issue; and
- is not excluded from coverage by an Agreement for Limitation of Coverage.

QQ.DI                                                   11

## 8.3 CHANGE OF PLAN

The Owner may change this policy to any plan of disability insurance agreed to by the Owner and the Company. The change will be subject to:

- payment of required costs; and

- compliance with other conditions required by the Company.

All premiums and dividends after the date of change will be the same as though the new plan had been in effect since the Policy Date.

## 8.4 CONVERSION TO LEVEL PREMIUM DISABILITY INSURANCE

The Owner may convert the Annually Renewable Premium (ARDI) coverage, if any, shown on page 3 to a level premium disability income insurance policy. The conversion may be done on or before the conversion date shown on page 3. No evidence of insurability will be required. The right to convert is not available if the premiums are being waived for this policy.

A portion of the ARDI coverage may be converted, subject to conditions set by the Company.

The new policy will be in the form and have the same terms as policies being issued by the Company at the time of conversion. The terms available for the new policy will be based on the classification of risk of this policy. The new policy will have the following terms:

- the amount of the Full Benefit will be the amount of benefit converted;

- the Maximum Benefit Period and Initial Period will not be longer than the Maximum Benefit Period and Initial Period of this policy;

- the Beginning Date will be any Beginning Date offered at the time the new policy is purchased that is not earlier than the Beginning Date of this policy; and

- the new policy will be issued with additional benefits which are on the converted coverage and which are then available to new Insureds.

**Limitations Of Coverage.** The new policy will include any Agreement for Limitation of Coverage that is a part of this policy.

**Premium.** The premium for the new policy is determined as of its date of issue by:

- the Company's premium rates then in effect in the state where the Insured then resides;

- the Insured's age on the policy date of the new policy;

- the plan and amount of insurance issued; and

- the classification of risk of this policy.

**Cost Of Conversion.** The cost of conversion will be the first premium for the new policy less any dividend and premium credit for the benefit amount converted.

**Effective Date.** The new policy takes effect on the date the Company receives the application or the cost of conversion, whichever is later.

## 8.5 MISSTATED AGE OR SEX

If the age or sex of the Insured has been misstated, the benefits will be those which the premiums paid would have purchased at the correct age or sex.

## 8.6 CONFORMITY WITH STATE STATUTES

Any provisions of this policy which, on the Date of Issue, are in conflict with the statutes of the State of Issue on that Date are amended to conform to such statutes. The State of Issue is shown on page 3.

## 8.7 DIVIDENDS

This policy will receive its share, if any, of the divisible surplus of the Company. Divisible surplus is determined annually. This policy's share will be credited as an annual dividend.

Dividends will be:

- used to reduce premiums; or

- paid to the Owner when premiums are being waived.

## 8.8 DATES

Provided the first premium is paid, this policy will take effect on the Date of Issue. Policy months, years and anniversaries are computed from the Policy Date. Both dates are shown on page 3 of this policy.

## 8.9 TERMINATION

If premiums are paid when due, this policy will not terminate until the first policy anniversary following the 65th birthday of the Insured or, if later, when the right to renew the policy ends (see Section 4). However, if the Insured is disabled on the date determined above, the termination will not take effect until benefits are no longer payable due to that disability.

DI705767   **THE NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY**
MILWAUKEE, WISCONSIN

| D | o | N | A | L | D | | | | E | | | A | S | T | A | R | | | |

INSURED (First, Middle Initial, Last)

POLICY NUMBER: D | 2 | 1 | 5 | 3 | 1 | 4

## DISABILITY INSURANCE APPLICATION

*Complete entire application for individual business. Complete the application omitting the shaded areas for MultiLife Employer Sponsored Business.*

| ☐ MULTILIFE: Complete Supplement #17-1052.  Enter MultiLife Discount Plan Number: |
| CONVERSION: ☐ ARDI   ☐ Interim Term   ☐ Group LTD   Original Policy Number: |
| ☒ APB Option   ☐ Group LTD APB OPTION   ☐ Life & Disability Application   ☐ Exam (NM, PME, MD) in Home Office |

### INSURED

**1**  Has an application or informal inquiry ever been made to Northwestern Mutual Life for annuity, life, or disability insurance on the life of the Insured?  ☒ Yes  ☐ No  If yes, the last policy number is ___D429516___

A. ☒ Mr.  ☐ Mrs.  ☐ Ms.  ☐ Dr.  ☐ Other_____   B. ☒ MALE  ☐ FEMALE

C. BIRTHDATE: (M,D,Y) ___52___ | D. STATE OF BIRTH (or Foreign Country): ___IL___ | E. TAXPAYER IDENTIFICATION NUMBER: ___ _ 8 9 8 2___

F. PRIMARY RESIDENCE:   STREET OR PO BOX: ___27140 DEER RIDGE LANE___
CITY, STATE, ZIP (Country if other than U.S.A.) ___ANTIOCH, IL. 60002___

### APPLICANT

**2**  Select ONLY ONE: ☒ Insured  OR  ☐ Other (Complete A, B and C)

A. ☐ Mr.  ☐ Mrs.  ☐ Ms.  ☐ Dr.  ☐ Other_____   MALE / FEMALE

PERSONAL NAME: _____
FIRST   MIDDLE INITIAL   LAST

RELATIONSHIP TO INSURED: _____   BIRTHDATE: _____
MONTH DAY YEAR
OR
BUSINESS NAME: _____

B. TAXPAYER IDENTIFICATION NUMBER: _____

C. ADDRESS:   STREET OR PO BOX: _____
CITY, STATE, ZIP (Country if other than U.S.A.): _____

*RECEIVED SEP 1 1997*

### PREMIUM PAYER

**3**  Select ONLY ONE: ☒ Insurance Service Account Payer (ISA)   OR   Insured (Complete D only)   Applicant (Complete D only)
(Omit A through D below)   Owner (Complete D only)   Other (Complete A, B, C and D)

A. ☐ Mr.  ☐ Mrs.  ☐ Ms.  ☐ Dr.  ☐ Other_____   MALE / FEMALE

PERSONAL NAME: _____
FIRST   MIDDLE INITIAL   LAST

BIRTHDATE: _____
MONTH DAY YEAR
OR
BUSINESS NAME: _____

B. TAXPAYER IDENTIFICATION NUMBER:   C. DAYTIME TELEPHONE NUMBER
_____   (Area Code)

D. ADDRESS:   ☐ Insured's Address   ☐ Applicant's Address  OR
STREET OR PO BOX: _____
CITY, STATE, ZIP (Country if other than U.S.A.): _____

### OWNER – DO NOT COMPLETE FOR KEYPERSON OR BUYOUT

**4**  Select ONLY ONE: ☒ Insured   Applicant   Other (Complete A, B and C)

A. ☐ Mr.  ☐ Mrs.  ☐ Ms.  ☐ Dr.  ☐ Other_____   MALE / FEMALE

PERSONAL NAME: _____
FIRST   MIDDLE INITIAL   LAST

RELATIONSHIP TO INSURED: _____   BIRTHDATE: _____
MONTH DAY YEAR
OR
BUSINESS NAME: _____

B. TAXPAYER IDENTIFICATION NUMBER: _____

C. ADDRESS:   ☐ Insured's Address   ☐ Applicant's Address   ☐ Premium Payer's Address  OR
STREET OR PO BOX: _____
CITY, STATE, ZIP (Country if other than U.S.A.): _____

## OCCUPATION

**5**

A. Name of Employer or Business: *US LIFE AGENCY SERVICES*

B. Product or service the employer provides: *CREDIT LIFE INSURANCE*

C. Employer's Address: STREET OR PO BOX: *ONE WOODFIELD LAKE / SUITE 303*

CITY, STATE, ZIP (Country if other than U.S.A.): *SCHAUMBURG, IL. 60173-4793*

D. PRIMARY Occupation: *VICE PRESIDENT, DIRECT MARKETING*

E. Other Occupations: *N/A*

F. Professional Degree or Credentials: *N/A*

G. Professional Specialty, if any: *N/A*

H. Describe Insured's occupational duties by stating the percentage of time spent on these duties:

*100* % Managerial/Admin.     ____% Travel          ____% Sales

____% Keyboard work     ____% Physical/Manual     ____% Other:

I. Average number of hours worked per week *55* hrs.

J. Business located in the home? ☐ Yes ☒ No
Average hours per week worked in the home_____
If over 20 hours, complete Working From Place of Residence Supplement #90-1065 (or 17-1065).

K. Length of time: In current occupation *20+* With current employer *2.5 yr*
If less than 3 years, state prior occupation(s) and employer(s) for last 3 years:

L. State in which employed: *IL*

M. Does the Insured intend to change occupation, employer, or employment status in the next six months? ☐ Yes ☒ No
If yes, explain:

## ADDITIONAL REMARKS – OCCUPATION

*PRIOR W/ ALLSTATE - SAME OCCUPATION*

## ADDITIONAL PURCHASE BENEFIT OPTION – COMPLETE THIS SECTION IF EXERCISING AN APB OPTION

**6**

NOTE: If available, up to two Regular OR two Special/Advance options may be exercised. *ALLSTATE BENEFIT REMAINING IS 1400*

A. List the policy number(s) and purchase amount(s) for each option used:

Policy 1 *D429516*          Regular $ *2 x 700 = 1,400*     OR Special/Advance $ _____

Policy 2 _____     Regular $ _____     OR Special/Advance $ _____

Policy 3 _____     Regular $ _____     OR Special/Advance $ _____

B. Special or Advance Purchase applied for within 90 days after: (check one)

☐ Marriage*   ☐ Birth of child*   ☐ Adoption of child*   ☐ Employer discontinued group DI coverage   ☐ Increase in annual earned income

*Name of Spouse or Child:
First, Middle Initial, Last _____

*Date and place of marriage, birth or final decree of adoption: ___/___/___  City, State _____
MONTH   DAY   YEAR

DI705767

| | | | | | | | | | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

INSURED (First, Middle Initial, Last)

POLICY NUMBER

## SPECIAL DATING (POLICY DATE) / PREMIUM INFORMATION

**7**

A. Prepaid    ☐ Short term – Policy Date will coincide with ISA Payment Date. (For monthly ISA only)
☐ Short term to ___/___/___    MONTH DAY YEAR    ☐ Date to save age    ☐ Backdate to ___/___/___ MONTH DAY YEAR

B. Non-prepaid    ☐ Specified future date ___/___/___ MONTH DAY YEAR    ☐ Date to save age    ☐ Backdate to ___/___/___ MONTH DAY YEAR

C. Has the premium for the policy applied for been paid in exchange for the Conditional Disability Insurance Agreement?........☑ Yes ☐ No

D. Premium Frequency:                                  ☐ Annually ☐ Semiannually ☐ Quarterly

E. Will the Insured's employer pay the whole premium for this disability insurance ................................................☐ Yes ☑ No
If yes: 1) Will any part of the premium be included in the Insured's taxable income?.......................................☐ Yes ☐ No
        2) Will the Insured reimburse the employer for any part of the premium?.......................................☐ Yes ☐ No

### REMINDER: NOT ALL POLICIES OR BENEFITS ARE APPROVED IN ALL STATES

## POLICY APPLIED FOR

**8**

| | Monthly Benefit | Maximum Benefit Period | Beginning Date | Initial Period to Age |
|---|---|---|---|---|
| ☑ DISABILITY INCOME POLICY | | | | |
| Level Premium ................................... $ | 1400 | 65 | 181 | ☑ 65 ☐ 70 |
| Level Premium/Annually Renewable Premium ......... $ ____ / $ ____ (LEVEL / ARDI) | | | | ☐ 65 ☐ 70 |
| Step Rate Premium ......................... $ | | | | ☐ 65 ☐ 70 |
| Step Rate/Annually Renewable Premium................ $ ____ / $ ____ (STEP / ARDI) | | | | ☐ 65 ☐ 70 |
| Annually Renewable Premium........................... $ | | | | ☐ 65 ☐ 70 |
| ☐ LOSS OF EARNINGS POLICY | | | | |
| Level Premium ................................... $ | | | | |
| Level Premium/Annually Renewable Premium ......... $ ____ / $ ____ (LEVEL / ARDI) | | | | |
| Annually Renewable Premium........................... $ | | | | |
| ☐ INTERIM TERM POLICY (Term Period ____) .......... $ (1-5 years) | | | | ☐ 65 ☐ 70 |
| ☐ DISABILITY OVERHEAD EXPENSE POLICY | | | | |
| ☐ Business ☐ Professional | | | | |
| Aggregate Benefit ☐ 12 ☐ 24 (times maximum monthly benefit) | | | | |
| Level Premium ................................... $ | | | | |
| Level Premium/Annually Renewable Premium ......... $ ____ / $ ____ (LEVEL / ARDI) | | | | |
| Annually Renewable Premium........................... $ | | | | |
| ☐ KEYPERSON POLICY (Complete Keyperson Supplement, form #90-1927) | | | | |
| ☐ BUYOUT POLICY (Complete Buyout Supplement, form #90-1928) | | | | |

## ADDITIONAL BENEFITS

**9**

If more than one policy is applied for, indicate to which policy(ies) each benefit should be attached.

| | |
|---|---|
| ☐ Additional Purchase Benefit (APB) ........................... $ ____ (AMT ON EACH PURCHASE DATE) | ____ |
| ☐ Business Additional Purchase Benefit (BAPB) ...................... $ ____ (AMT ON EACH PURCHASE DATE) | ____ |
| ☐ Deferred Disability Benefit (DDB) ................................................. | ____ |
| ☐ Future Increase Benefit (FIB) ................................................... | ____ |
| ☐ Indexed Income Benefit (IIB-Cost of Living adjustment) ........................... | ____ |
| If less than 100% of the monthly benefit is to be indexed, specify percent to be indexed ____ . 0 % | ____ |
| ☐ Social Insurance Substitute Benefit (SISB) ........................... $ ____ (MONTHLY BENEFIT) | ____ |
| ☐ Social Security Substitute Benefit (SSSB) ........................... $ ____ (MONTHLY BENEFIT) | ____ |
| SSSB Beginning Date ____ (USED ONLY FOR CASH SICKNESS STATES) | |

**10** If Northwestern Mutual Life is not able to issue the policy and/or additional benefit(s) as applied for, should the Company issue a policy if it can do so in a smaller amount, or on a different plan, or without an additional benefit?    ☑ Yes ☐ No

**11** Fill in the amounts that are (or will be) shown on the Insured's individual and/or business income tax returns and supporting schedules. Do not list income that is not reported to the IRS. Use the "Remarks" section to explain significant changes between years or changes since the end of the last calendar year. Losses should be shown in parentheses. NOTE: The Company may request tax forms for underwriting or claim purposes.

A. INSURED'S EMPLOYER OR BUSINESS is a
☐ Sole Proprietorship  ☐ Partnership  ☐ Limited Liability Company (LLC)  ☐✓ Corporation
☐ S Corporation  ☐ Other _____

B. 1. Does the Insured have an ownership interest in the Business?.................................................................. ☐ Yes  ☐✓ No
   If yes, what is the percentage? _____%
   2. How long has the insured had ownership in the business? _____

C. Are the most recently filed tax returns or the most recent Form W-2 and pay stub being sent with this application?............. ☐✓ Yes  ☐ No

Column 3 is optional if tax returns have been filed with
the IRS for the most recently ended calendar year. →

| | 1<br>Current Year<br>Estimate<br>Jan. 1-<br>Dec. 31, 19 9 7 | 2<br>Most Recently<br>Ended Calendar<br>Year Jan. 1-<br>Dec. 31, 19 9 6 | 3<br>Two Calendar<br>Years Ago<br>Jan. 1-<br>Dec. 31, 19 5 |
|---|---|---|---|
| **D. EARNED INCOME** | | | |
| 1. Non-owner employee compensation. (Deduct unreimbursed business expenses reported on Form 1040, Schedule A.) Source: Form W-2 | $ 110,000 | $ 100,000 | $ 93,000 |
| 2. Owner employee compensation. Source: Form W-2. (Also see 3 or 4 below) | $ | $ | $ |
| 3. Share of after-tax C corporation net income or (loss) after expenses if the Insured owns at least 20% of the corporation. Source: Form 1120 or 1120A | $ | $ | $ |
| 4. Share of S corporation net income or (loss) after expenses if the insured is actively involved. Source: Form 1120S. Schedule K-1 | $ | $ | $ |
| 5. Sole proprietorship net profit or (loss) after expenses. Source: Form 1040, Schedule C | $ | $ | $ |
| 6. Share of partnership net profit or (loss) after expenses. Source: Form 1065, Schedule K-1 | $ | $ | $ |
| 7. Share of limited liability company net profit or (loss) after expenses. Source: Form 1065, Schedule K-1 | $ | $ | $ |
| 8. Other earned income (Explain source in Remarks) | $ | $ | $ |
| 9. Pension, profit sharing, or before-tax savings contributions (e.g., 401(K) plans) that would cease if the insured were disabled and **that the Insured had the option to receive as salary.** (Not for SEP, KEOGH, or other amounts not deductible as a business expense) | $ | $ | $ |
| 10. **TOTAL EARNED INCOME:** Enter total of 1 through 9. | $ 110,000 | $ 100,000 | $ 93,000 |

E. UNEARNED INCOME: State if more than $5,000. This includes taxable and tax-exempt interest, dividends, capital gains, net rental income, income from businesses in which the Insured is not actively involved, pensions, annuities, and alimony.

$ _____  $ _____  $ _____

F. NET WORTH: Is the Insured's net worth (assets minus liabilities) more than $5,000,000? If yes, complete a personal balance sheet for the Insured or use Supplement #17-0912. ....................................... ☐ Yes  ☐✓ No

G. In the last 5 years, has the Insured, or a business in which the Insured has had a 10% or greater ownership interest, been in bankruptcy or defaulted on any loans with an owed balance of more than $10,000? If yes, describe the circumstances and amounts owed in Remarks. ................. ☐ Yes  ☐✓ No

Date of Discharge ___/___/___  Bankruptcy Chapter _____  Personal  Business
MONTH  DAY  YEAR

---

**ADDITIONAL REMARKS -- INCOME**

N.C. PAY STUB AS WE WILL FILED SHORTLY.

(page 4)

**DI705757**

| D | O | N | A | L | D |  |  |  | E |  | A | S | T | A | R |  |  |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

INSURED (First, Middle Initial, Last)

|  |  |  |  |  |  |  |
|---|---|---|---|---|---|---|

POLICY NUMBER

## DISABILITY COVERAGES

**12** A. List and describe all disability benefits the Insured may be entitled to, including: Individual disability insurance and group disability insurance in all companies, including Northwestern Mutual Life; pension or retirement plans; salary continuation plans; association plans; credit insurance plans; overhead expense insurance; and any other coverage which provides disability benefits. Include coverage for which the Insured will become eligible within the next five years after a qualifying period of employment has been met.

NOTE TO AGENT: Type = DI (includes Individual DI and SBDI), Interim Term, SIS (includes SSS policy and DI SSBB or SISB rider),
LE, LE SISB, Group LTD, Group STD, Association DI, Overhead, Buyout, Keyperson, Other
I, P, C = (I) In force, (P) Pending or (C) Contemplated               CHECK HERE ☐ IF NONE

| Insurer | Type of Insurance | Benefit Amount | Beginning Date | Benefit Period Accident / Sickness | I, P, C or Date of Eligibility | Check if Offset by Soc. Sec. | Check if Employer pays 100% of the premium |
|---|---|---|---|---|---|---|---|
| N M L | LTD | 2,575 | 1/81 | 6C 6C | I | | |
| N M L | SSB | 800 | 1/81 | 6C 65 | I | | ✓ |

B. 1. Is additional contributory group DI coverage available through the Insured's employer?........................... ☐ Yes ☐ No
2. Does the Insured have plans to participate in the future? ................................................................. ☐ Yes ☐ No
   If yes, give details in Remarks.

C. Answer this question (12C) if the Insured is a last year medical resident/fellow. If the Insured is covered by a group disability plan, does the Insured intend to continue under the plan or to convert to an individual policy? .......... ☐ Yes ☐ No

D. Will the insurance applied for replace insurance with Northwestern Mutual Life? .................................. ☐ Yes ☐ No
   If yes, complete the Conditional Surrender form #17-0789. The agent should submit any required papers.

E. Will the insurance applied for replace insurance from a source other than Northwestern Mutual Life? .......... ☐ Yes ☐ No
   If yes, complete the information below. The agent should submit any required papers.

When issuing insurance as a result of this application, Northwestern Mutual Life will rely on the fact that the coverage listed below can and will be terminated by the next premium due date, which must be within 90 days of the date of this application. If the coverage listed is not terminated by that date, or it is terminated and later reinstated, any policy issued as a result of this application may be rescinded and all premiums will be returned. Northwestern Mutual Life may contact a listed insurer to confirm that the coverage has been terminated.

| Insurance Company | Type of Insurance | Group or Association Name | Policy Number | Amount to be Replaced | Next Premium Due Date Month | Day | Year |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

## DISABILITY OVERHEAD EXPENSE POLICY – IF APPLYING

**13** A. Using the Insured's percentage of ownership in the business, insert the Insured's share of the typical monthly tax deductible business expenses as reported on IRS forms and supporting schedules. (For principal on business loans, give the current monthly installment payment.)

Rent............................................................................................................................ $ _____
Heat............................................................................................................................ $ _____
Telephone.................................................................................................................... $ _____
Electricity.................................................................................................................... $ _____
Professional dues and license fees............................................................................ $ _____
Maintenance ............................................................................................................... $ _____
Real estate taxes........................................................................................................ $ _____
Other taxes (itemize) .................................................................................................. $ _____
Interest on business loans.......................................................................................... $ _____
Depreciation or principal on business loans (Enter the larger of monthly depreciation expense or monthly principal on business loans)........ $ _____
Insurance premiums ................................................................................................... $ _____
Legal and professional fees........................................................................................ $ _____
Employees' salaries (Professional DOE only) Do not include salaries of employees in the same occupation as the Insured ........ $ _____
Other normal expenses (itemize) ............................................................................... $ _____
**TOTAL**...................................................................................................................... $ _____

B. How many people are employed by this firm? (Include the Insured in the total.)
   Owners: Full-time_____ Part-time_____ Non-owners: Full-time_____ Part-time_____

C. How many of the employees are in the same occupation as the Insured? (Include the Insured in the total.)
   Owners: Full-time_____ Part-time_____ Non-owners: Full-time_____ Part-time_____

## ADDITIONAL REMARKS – DISABILITY COVERAGES/DISABILITY OVERHEAD EXPENSE

|  |
|---|
|  |

## PERSONAL HISTORY QUESTIONNAIRE

**14**

A. Has the Insured ever had life, disability or health insurance declined, rated, modified, issued with an exclusion rider, cancelled, or not renewed? If yes, explain in Remarks ................................................................................................................ ☐ Yes ☒ No

B. When was the Insured's last examination or application for life, disability, or accidental death insurance?
Month_____ Year _*90*_ Company_ *ML*_ _____ or ☐ None

C. Insured's Marital Status: ☐ Single, Widowed or Divorced ☒ Married

D. 1. Insured is a citizen of: ☒ U.S.A. ☐ Other
   If other:
   Type of Visa_____ Visa Number_____

2. How many years has the Insured resided in the U.S.A. immediately prior to completing this application? _*all*_ years

3. The Insured has read the following statement and agrees to its terms: ................................................................... ☒ Yes ☐ No
   "I intend to reside in the U.S.A. permanently and do not intend to travel to any location outside the U.S.A. for more than 90 days each year. If I am disabled while outside the U.S.A., I will return to the U.S.A."

E. Does the Insured regularly travel outside the U.S.A. or have plans to leave the U.S.A. for travel or residence?..................... ☐ Yes ☒ No
   If yes, explain in the chart below.

| Destination (List all Cities and Countries) | Number of Trips Last 12 Months | Number of Trips Next 12 Months | Duration of Each Trip (No. of Days) | Departure Date (Month/Year) | Purpose of Trip |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |

F. Is the Insured a member of, or does the Insured plan on joining any branch of, the Armed Forces or reserve military unit? If yes, complete the Military Section.......................................................................................................... ☐ Yes ☒ No

G. Except as a passenger on a regularly scheduled flight, has the Insured flown within the past 2 years, or does the Insured have plans to fly in the future? If yes, complete the Aviation Section.......................................................... ☐ Yes ☒ No

H. In the past 2 years, has the Insured participated in or does the Insured have plans to participate in: racing (automobile, snowmobile, motorcycle, boat or go-cart), underwater or sky diving, hang gliding, bungee jumping, mountain or rock climbing, or rodeos? If yes, complete the Avocation Section. ............................................................. ☐ Yes ☒ No

I. 1. What is the Insured's automobile driver's license number? #_____ *234*_____ State_ *IL*_.
   or, ☐ the Insured does not have a driver's license.

2. In the past 5 years, has the Insured been in a motor vehicle accident, has the Insured been charged with a moving violation of any motor vehicle law, or has the Insured's driver's license been restricted, suspended or revoked? If yes, complete the chart below. ................................................................................................................ ☐ Yes ☒ No

| Date | Type and Details (Speeding, Reckless Driving, Driving While Intoxicated, Etc.) | Action (Citation, Fine, Etc.) | Accident (Yes or No) |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

J. Has the Insured ever been convicted of violating any criminal law other than a traffic violation?......................................... ☐ Yes ☒ No
   If yes, provide full details in Remarks. Include dates, city and state, reason, charge convicted of, time served, and the date of parole termination.

## ADDITIONAL REMARKS – PERSONAL HISTORY

| | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| D | O | N | A | L | D | | | | E | A | S | T | A | R |

INSURED (First, Middle Initial, Last)

| | | | | | |
|---|---|---|---|---|---|
| | | | | | |

POLICY NUMBER

**15** The Insured consents to this application and declares that the answers and statements made on this application are correctly recorded, complete and true to the best of the Insured's knowledge and belief. Answers and statements brought to the attention of the agent, medical examiner, or paramedical examiner are not considered information brought to the attention of the Company unless stated in the application. Statements in this application are representations and not warranties.

It is agreed that:

(1) If the premium is not paid when the application is signed, no insurance will be in effect. The insurance will take effect at the time the policy is delivered and the premium is paid if the answers and statements in the application are still true to the best of the Insured's knowledge and belief.

(2) If the premium is paid when the application is taken, no insurance will be in effect except as provided in the Conditional Disability Insurance Agreement with the same number as this application.

(3) Receipt of an outline of coverage for the policy applied for is acknowledged.

(4) No agent is authorized to make or alter contracts or to waive any of the Company's rights or requirements.

The Owner of the policy applied for herein certifies, under penalties of perjury, (1) that the Taxpayer Identification Number given for the Owner on the first page of this application is the Owner's correct Taxpayer Identification Number (or the Owner is waiting for a number to be issued) and (2) the Owner is not subject to backup withholding either because the Owner has not been notified by the Internal Revenue Service (IRS) that the Owner is subject to backup withholding as a result of a failure to report all interest or dividends, or the IRS has notified the Owner that the Owner is no longer subject to backup withholding. (See Taxpayer Identification Number instructions.)

## INSURED'S AUTHORIZATION TO OBTAIN AND DISCLOSE INFORMATION

**16** I authorize Northwestern Mutual Life, its agents, employees, reinsurers, insurance support organizations and their representatives to obtain information about me to evaluate this application and to verify information in this application. This information will include: (a) age; (b) medical history, condition and care; (c) physical and mental health; (d) occupation; (e) income and financial history; (f) foreign travel; (g) avocations; (h) driving record; (i) other personal characteristics; and (j) other insurance. This authorization extends to information on the use of alcohol, drugs and tobacco; the diagnosis or treatment of HIV (AIDS virus) infection and sexually transmitted diseases; and the diagnosis and treatment of mental illness. During the time this authorization is valid it extends to information required to determine eligibility for benefits under any policy issued as a result of this application.

I authorize any person, including any physician, health care professional, hospital, clinic, medical facility, government agency including the Veterans and Social Security Administrations, the MIB, Inc., employer, business associates, consumer reporting agency, banker, accountant, tax preparer, or other insurance company, to release information about me to Northwestern Mutual Life or its representatives on receipt of this Authorization. Northwestern Mutual Life or its representatives may release this information about me to translators, to reinsurers, to the MIB, Inc., or to another insurance company to whom I have applied or to whom a claim has been made. No other release may be made except as allowed by law or as I further authorize.

I have received a copy of the Medical Information Bureau and Fair Credit Reporting Act notices. I authorize Northwestern Mutual Life to obtain an investigative consumer report on me.

I request to be interviewed if an investigative consumer report is done

This authorization is valid for 30 months from the date it is signed. A copy of this authorization is as valid as the original and will be provided on request

The signatures below apply to the authorization, the application and the certification of Taxpayer Identification Number.

The Internal Revenue Service does not require your consent to any provision of this document other than the certifications required to avoid backup withholding.

_____
Signature of INSURED (if other than Applicant)

_____
Signature of APPLICANT

Signed at _SCHAUMBURG____ _COOK___ _IL._
CITY          COUNTY          STATE

_____
Signature of OWNER (if other than Applicant or Insured)

Date _8_ / _28_ / _97_
MONTH   DAY   YEAR

_____
Signature of LICENSED AGENT

**It is recommended that you ...**

read your policy.

notify your Northwestern Mutual agent or the Company at 720 E. Wisconsin Avenue, Milwaukee, Wisconsin 53202, of an address change.

call your Northwestern Mutual agent for information -- particularly on a suggestion to terminate or exchange this policy for another policy or plan.

**Election Of Trustees**

The members of The Northwestern Mutual Life Insurance Company are its policyholders of insurance policies and deferred annuity contracts. The members exercise control through a Board of Trustees. Elections to the Board are held each year at the annual meeting of members. Members are entitled to vote in person or by proxy.

**DISABILITY INCOME POLICY**

**Eligible For Annual Dividends.**

Non-Cancellable and
Guaranteed Renewable to Age 65

Conditionally Renewable to Age 75

QQ.DI

Countersigned by _____
                        Licensed Resident Agent

**Northwestern Mutual Life®**

Donald Astar
24140 Deer Ridge Lane
Antioch, Illinois 60002
847-395-0542 (Home)

August 29, 2017

Ms. Mary Drew
Disability Benefits Division
Northwestern Mutual
PO Box 2918
Milwaukee, Wisconsin 53201-9831

Re: Donald Astar D1255314, D227462, D429516, D741687

Dear Ms. Drew,

I'm in receipt of your letter dated 3/1/2017. I wanted to let you know how much I have
valued the financial assistance Northwestern Mutual Life has provided me during a very
challenging time in my life. Without this financial assistance I am convinced that my life
in all aspects would be dramatically worse.

As you know, I have been basically totally disabled for over ten years. My disability,
first diagnosed in 2006, has dramatically impacted me on both a personal and
professional basis. This disease has in effect robbed me of the most productive years of
my life

When I took out my original disability policies I was a salaried employee, receiving
normal annual increases and enrolled in a defined pension plan with a normal retirement
age of 66. The policies sold to me were purchased by me to cover me as a white collar
employee as described above. These policies were not sold to me and I did not purchase
them as disability coverage for a personal business owner nor were these policies ever
suggested for amendment by Northwestern to cover a business ownership condition.

Each year of my disability, I have shared personal and business tax returns with the
company. I have also shared my business profit and loss statements. All of this
information clearly shows that my business essentially failed at the onslaught of the
disease/disability even though I continued to try to make the business work.

When I became disabled I was a personal business owner not a salaried employee. The
benefit base Northwestern established for me in 2007 was based on a historical look of
earnings from my personal business. The benefit base offered to me by Northwestern
Mutual Life I believe was developed on an historical average of income/profits. This
benefit did not fully considered the upside potential of my business as demonstrated in
several pre-disability years before the disability. I would have never considered these

Exhibit # 5

*2*

valid representations of my earning ability knowing now that the disability would last all the way to retirement.

As I go into retirement, my disease remains active and I continue to face all my previous disease related issues. Additionally, on my 65th birthday (███/2017) I suffered a further disabling Stroke. The real big difference for me now is that the financial help to get through day to day expenses from Northwestern Mutual Life has now ended on several of my policies when I need it even more and the other will be ending shortly.

In consideration of what I have presented above, is there any type of appeal process I can pursue with Northwestern where I can get a continuation of benefits to help offset the above?

Let me know your thoughts!

Sincerely,


Donald Astar